UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

ANGELA WISE and GIDEON ROMM, on
behalf of themselves and all others similarly
situated,

                      Plaintiffs,

    v.

ENERGY PLUS HOLDINGS LLC,

                 Defendant.

---

Civil Action No. 11-7345 (WHP)

<br>

## MEMORANDUM OF LAW IN OPPOSITION TO
## <u>DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT</u>

<br><br>

**MEISELMAN, DENLEA, PACKMAN,**
**CARTON & EBERZ P.C.**
*Attorneys for Plaintiffs*
1311 Mamaroneck Avenue
White Plains, New York 10605
(914) 517-5000

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................1

ARGUMENT.........................................................................................................2

   I.   Standards Under Rules 8(a) and 12(b)(6)............................................2

   II.  Plaintiffs Adequately Allege Claims Under N.Y. General
       Business Law § 349 ...........................................................................2

       A.    Standards On A Motion To Dismiss A N.Y.
            General Business Law § 349 Claim ........................................3

       B.    Plaintiffs Adequately Plead That Defendant's Practices Are Deceptive................3

            1.    Defendant's Omissions and Misrepresentations Are Misleading..................3

            2.   ` Defendant's Representation That Its Rates Are Competitive
               Is Not Mere Puffery ...................................................7

            3.    Defendant Is Obliged To Inform Consumers That Its Rates
               Are Substantially Higher Than Its Competitors' Rates...............................12

            4.    Defendant's Misrepresentations And Omissions Are Material...................14

   III.  Plaintiffs Adequately Plead Claims Under N.Y. General
       Business Law Section 349-d...............................................................16

   IV.  Plaintiffs' Unjust Enrichment Claims Should Not Be Dismissed ...................19

CONCLUSION ..................................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

Ashcroft v. Iqbal,
    556 U.S. 662, 129 S. Ct. 1937 (2009) ...................................................................2

Banks v. Consumer Home Mortg., Inc.,
    No. 01-8508, 2003 WL 21251584 (E.D.N.Y. Mar. 28, 2003) .......................................6

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) ...................................................................................................2

Bildstein v. MasterCard Int'l Inc.,
    329 F. Supp. 2d 410 (S.D.N.Y. 2004) ...............................................................15, 16

Bologna v. Allstate Ins. Co.,
    138 F. Supp. 2d 310 (E.D.N.Y. 2001) ....................................................................10

Brown v. Hambric,
    168 Misc. 2d 502, 638 N.Y.S.2d 873 (City Ct. 1995)................................................9

Chernis v. Swarzman,
    No. 05-3377, 2007 WL 2230078 (S.D.N.Y. Aug. 2, 2007) .....................................15

Cohen v. Koenig,
    25 F.3d 1168 (2d Cir. 1994) .......................................................................................9

Dank v. Sears Holding Mgmt. Corp.,
    59 A.D.3d 582 (2d Dep't 2009)...................................................................................5

Erickson v. Pardus,
551 U.S. 89, 93 (2007) ...................................................................................................2

F.T.C. v. Amy Travel Serv., Inc.,
    875 F.2d 564 (7th Cir. 1989)........................................................................................5

F.T.C. v. Windward Mktg., Inc.,
    No. 96-615F, 1997 WL 33642380 (N.D. Ga. Sept. 30, 1997) .................................15

Fink v. Time Warner Cable,
    No. 08-9628, 2011 WL 3962607 (S.D.N.Y. September 8, 2011) .............................10

Galvan v. KDI Distribuation Inc.,
    No. 08-0999, 2011 WL 5116585 (C.D. Cal. Oct. 25, 2011) ....................................15

# TABLE OF AUTHORITIES
## (Cont'd)

**Cases**                                                                      **Page**

Genesco Entm't, a Div. of Lymutt Indus., Inc. v. Koch,
   593 F. Supp. 743 (S.D.N.Y. 1984) .................................................................5

Gershon v. Hertz Corp.,
   215 A.D.2d 202 (1st Dep't 1995) ................................................................13

Greenberg v. Chrust,
   282 F. Supp. 2d 112 (S.D.N.Y. 2003) ...........................................................9

Guggenheimer v. Ginzburg,
   43 N.Y.2d 268 (1977)...................................................................................7

Hubbard v. Gen. Motors Corp.,
   No. 95-4362, 1996 WL 274018 (S.D.N.Y. May 22, 1996) .........................10

In re Static Random Access Memory (SRAM) Antitrust Litig.,
   No. 07-01819, 2008 WL 2610549 (N.D. Cal. June 27, 2008) ....................12

In re TFT-LCD (Flat Panel) Antitrust Litig.,
   586 F. Supp. 2d 1109 (N.D. Cal. 2008).........................................................6

Jones v. Corus Bankshares, Inc.,
   701 F. Supp. 2d 1014 (N.D. Ill. 2010)...........................................................8

Lacoff v. Buena Vista Pub., Inc.,
   183 Misc. 2d 600, 705 N.Y.S.2d 183 (Sup. Ct. 2000).................................11

Lipton v. Nature Co.,
   71 F.3d 464 (2d Cir. 1995) ..........................................................................10

Majewski v. Broadalbin-Perth Cent. Sch. Dist.,
   91 N.Y.2d 577 (1998)...................................................................................18

Man-Hung Lee v. Hartsdale Canine Cemetery, Inc.,
   28 Misc. 3d 234, 899 N.Y.S.2d 823 (City Ct. 2010)...................................15

Marder's Nurseries, Inc. v. Hopping,
   171 A.D.2d 63 (2d Dep't 1991) ...................................................................15

Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.,
   165 F. Supp. 2d 514 (S.D.N.Y. 2001) .........................................................10

## TABLE OF AUTHORITIES
### (Cont'd)

<u>Cases</u>                                                              <u>Page</u>

Novartis Corp. v. F.T.C.,
    223 F.3d 783 (D.C. Cir. 2000)................................................................15

Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,
    85 N.Y.2d 20 (1995)..........................................................................3, 12, 13

Pelman ex rel. Pelman v. McDonald's Corp.,
    396 F.3d 508 (2d Cir. 2005) ...............................................................16

Pelman v. McDonald's Corp.,
    237 F. Supp. 2d 512 (S.D.N.Y. 2003) ................................................10

Polonetsky v. Better Homes Depot, Inc.,
    185 Misc. 2d 282, 712 N.Y.S.2d 801 (N.Y. Sup. Ct. 2000).......................7

Publishers S.A. v. Am. Inst. of Physics,
    905 F. Supp. 169 (S.D.N.Y. 1995) .....................................................11

Silverman v. Motorola, Inc.,
    No. 07-4507, 2008 WL 4360648 (N.D. Ill. Sept. 23, 2008)......................9

Sims v. First Consumers Nat. Bank,
    303 A.D.2d 288 ..................................................................................7

St. John's Univ., New York v. Bolton,
    757 F. Supp. 2d 144 (E.D.N.Y. 2010) ...............................................14

Stern v. H. Dimarzo, Inc.,
    19 Misc.3d 1144(A), 867 N.Y.S.2d 20 (N.Y. Sup. Ct. June 11, 2008)....................19

Swierkiewicz v. Sorema N.A.,
    534 U.S. 506 (2002) ...........................................................................2

Veera v. Ambac Plan Admin. Comm.,
769 F. Supp. 2d 223 (S.D.N.Y. 2011) .....................................................2

Verizon Directories Corp. v. Yellow Book, Inc.,
    309 F. Supp. 2d 401 (E.D.N.Y. 2004)..............................................7, 9

Virginia Bankshares v. Sandberg,
    501 U.S. 1083 (1991) .........................................................................8

## TABLE OF AUTHORITIES
### (Cont'd)

**Cases**                                                                                                                  **Page**

Watts v. Jackson Hewitt Tax Serv. Inc.,
   579 F. Supp. 2d 334 (E.D.N.Y. 2008) ....................................................................5, 12

Welch v. TD Ameritrade Holding Corp.,
   No. 07-6904, 2009 WL 2356131 (S.D.N.Y. July 27, 2009).......................................11

Woods v. Maytag Co.,
   807 F. Supp. 2d 112 (E.D.N.Y. 2011) .......................................................2, 3, 8, 12

**Statutes**

R.I. Gen. Laws §§ 6-13.1-1 and 6-13.1-2 ............................................................passim

N.Y. Gen. Bus. Law § 349 ..................................................................................passim

N.Y. Gen. Bus. Law § 349-d ...............................................................................passim

**Rules**

Fed.R.Civ.P 8(a) ...................................................................................................2

**INTRODUCTION**

The New York legislature has consistently demonstrated its unwavering commitment to protect consumers from the machinations of unscrupulous businesses, particularly those who market and sell electricity (one of the most vital of consumer services). Until relatively recently, the rate a supplier of electricity could charge for residential electricity was strictly regulated. In 1996, however, the State concluded that competition in the market for retail electricity should result in lower prices, and the Public Service Commission opened the State's electric industry to competition, such that electricity consumers may now choose their supplier of electricity. Amended Complaint ¶ 8. The new electricity suppliers, who compete against local utilities, are known as energy service companies, or "ESCOs." While ESCOs supply the power, the delivery of electricity to homes remains the job of the local utilities. Amended Complaint ¶ 9.

Defendant callously takes advantage of the deregulated energy market to deceptively charge outrageously high electricity rates by luring consumers with promises of rewards points, while misrepresenting to consumers that its rates are competitive and reflective of prevailing market conditions. But Energy Plus fails to inform consumers that its rates are not, in fact, reflective of the market, but are instead substantially higher; not only are Energy Plus' rates as much as two or three times higher than the rates otherwise available in the market, but the representation that its rates reflect those in the market is belied by the fact that Energy Plus' rates rise or remain steady when market rates decline. Thus, Energy Plus engages in a blatantly deceptive practice, made more outrageous by the fact that it involves residential electricity. Utility payments are one of the largest expenses many New York families confront; to prey on these consumers is unconscionable, and this Court should not countenance Defendant's attempts to evade liability for its bad acts. Therefore, Defendant's motion should be denied.

## ARGUMENT

**I.     Standards Under Rules 8(a) and 12(b)(6).**

Under <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), only a complaint that fails to contain sufficient allegations of fact to state a claim for relief that is "plausible on its face" may be dismissed. <u>Id.</u> at 570. In considering a motion to dismiss for failure to state a claim, this "Court accepts all material facts alleged in the complaint as true and construes all reasonable inferences in the plaintiff's favor." <u>Veera v. Ambac Plan Admin. Comm.</u>, 769 F. Supp. 2d 223, 226 (S.D.N.Y. 2011) (denying motion to dismiss). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." <u>Woods v. Maytag Co.</u>, 807 F. Supp. 2d 112, 118-19 (E.D.N.Y. 2011) (denying motion to dismiss New York General Business Law § 349 claim) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009)).

Under Fed. R. Civ. P. 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," a requirement that the Supreme Court has repeatedly found satisfied if the complaint provides the defendant notice of the character of the claim and the grounds on which it rests. <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 514-15 (2002). Under the notice pleading requirements, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (citing <u>Twombly</u>).

**II.    Plaintiffs Adequately Allege Claims Under N.Y. General Business Law § 349.**

As alleged in the Amended Complaint, Energy Plus deceptively advertises that (i) its rates are "competitive" with local utility companies and other energy suppliers, (ii) it offers a

"market-rate product," and (iii) its rates are "up-to-date" and "reflect the current state" of each market.  Amended Complaint ¶¶ 13-15.  Contrary to Defendant's representations, however, the Amended Complaint alleges that Energy Plus' rates are <u>not</u> competitive with other suppliers and are <u>not</u> reflective of the market (as illustrated by numerous periods of time in which Energy Plus' rates are substantially higher than those offered by its competitors).  Amended Complaint ¶¶ 16-17.  The Amended Complaint also alleges that these misrepresentations are material, as no reasonable consumer would purchase Defendant's electricity, given that its rates are substantially more expensive than those otherwise available in the market, Amended Complaint ¶ 18, and that consumers are injured thereby.  Amended Complaint ¶¶ 16, 25, 32.  These allegations are more than sufficient to plead claims under section 349.

### A.   Standards On A Motion To Dismiss A N.Y. General Business Law § 349 Claim.

"To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."  <u>Maytag Co.</u>, 807 F. Supp. 2d at 128 (citations and quotations omitted).  Defendant only challenges the sufficiency of the Amended Complaint with respect to the second element.  Def. Mem. at 6-13.

### B.   Plaintiffs Adequately Plead That Defendant's Practices Are Deceptive.

### 1.   Defendant's Omissions and Misrepresentations Are Misleading.

Under section 349, a practice is deceptive if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances."  <u>Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.</u>, 85 N.Y.2d 20, 26 (1995).  The deceptiveness of a defendant's representations and omissions must be determined in the context in which they are made and in

relation to other statements.  See Cytyc Corp. v. Neuromedical Sys., Inc., 12 F. Supp. 2d 296,

300 (S.D.N.Y. 1998) (denying motion to dismiss section 349 claim).  A consumer, choosing

whether or not to enroll in Energy Plus' electricity service, would likely be misled into thinking

that the rates Defendant charges are competitive and reflective of market rates, because that is

precisely what Energy Plus uniformly informs consumers.  Moreover, the failure of Defendant to

"clearly and conspicuously" identify its variable charges, while being under a statutory duty to

do so, and its failure to disclose that Energy Plus' prices are substantially higher than its

competitors, is deceptive.

Energy Plus lures consumers into enrolling by offering "rewards," by representing that

they will enjoy the "same, reliable service" consumers already have, and by reassuring them that

"[t]he best part is that nothing about your service will change."  Amended Complaint ¶ 12.

Energy Plus then makes a number of additional misrepresentations, the intended effect of which

is to deceive consumers into believing that Energy Plus' rates are competitive with other

suppliers and reflective of changes in the market.  Amended Complaint ¶¶ 13-15.  To that end,

Energy Plus actively fosters the misimpression that it will seek out the cheapest electricity

available on the market so that it can charge a competitive rate consistent with those charged by

local utilities and other ESCOs.  Thus, Defendant represents that, "Energy Plus offers a market-

rate product, which means we buy electricity every day on the open market," Amended

Complaint ¶ 12, that its "approach is to purchase energy from each of these markets on a daily

and monthly basis, which allows us to incorporate the most up-to-date energy costs from each

market into our rates," Amended Complaint ¶ 14 (emphasis added), and that when setting its

rates, Energy Plus' "goal is to be competitive with other energy suppliers and your local utility

company over the long run." Amended Complaint ¶ 15. Energy Plus also represents that "[a]s with all variable rate plans, your supply price may fluctuate on a monthly basis – lower or higher – to reflect <u>the current state of each market</u> and other factors." (emphasis added)

In attempting to parse Energy Plus' representations, Defendant fails to address altogether the statement that it incorporates the "most up-to-date costs" into its rates, a representation that is specifically intended to lead reasonable consumers to believe that Energy Plus buys the cheapest electricity in the market so that its rates will be competitive with other suppliers. Yet the claim that Energy Plus' rates are competitive and reflective of up-to-date market rates is belied by the fact that Energy Plus' rates are substantially higher than its competitors' and by the fact that its rates either increase or remain steady during periods in which the market rate declines. Amended Complaint ¶¶ 16-17.

It is well settled that misrepresentations and omissions regarding the price or cost of a good or service form the basis of claims for deceptiveness under consumer protections laws. See, e.g., <u>Watts v. Jackson Hewitt Tax Serv. Inc.</u>, 579 F. Supp. 2d 334, 348-49 (E.D.N.Y. 2008); <u>Dank v. Sears Holding Mgmt. Corp.</u>, 59 A.D.3d 582, 583 (2d Dep't 2009) (denying motion to dismiss proposed class action under section 349 where the plaintiff alleged the defendant failed to honor price matching guarantee).

<u>F.T.C. v. Amy Travel Serv., Inc.</u>, 875 F.2d 564 (7th Cir. 1989), in which the Seventh Circuit affirmed a judgment for the F.T.C, is particularly instructive.[1] There, the trial court

---

[1] Precedent established under the Federal Trade Commission Act is persuasive authority when determining deceptiveness under section 349. See <u>Genesco Entm't, a Div. of Lymutt Indus., Inc. v. Koch</u>, 593 F. Supp. 743, 752 (S.D.N.Y. 1984) ("Section 349(h) is substantially modeled on the Federal Trade Commission Act. Hence, in interpreting the phrase 'deceptive practices,' the New

found that the defendants' representation that an air fare would be at the "economy" rate was

deceptive where the fare was in fact quite expensive:

> The main consumer complaint about the defendants' pitch was a misunderstanding about the true cost of the vacation package . . . "the use of the word 'economy' suggested a low cost fare." *FTC v. Amy Travel,* No. 87 C 6776, slip op. at 27 (N.D.Ill. Feb. 10, 1987). The Y-class airfare, although described as a "full-economy" fare, is actually the highest-priced coach fare available. This was never disclosed to the purchasers of the vacation passports and the magistrate found this was deceptive. Only after a prospective traveler had booked a vacation was the true price disclosed.

Id. at 569. Similarly, Energy Plus' use of terms such as "competitive" and "market-rate" create

the impression that Defendant's rates will not be two to three times higher than the actual market

rate, a falsity that consumers only discover after they receive their bill.

Courts also hold that misrepresenting that a good or service is priced at "market rates"

when it is not is deceptive. See In re TFT-LCD (Flat Panel) Antitrust Litig., 586 F. Supp. 2d

1109, 1129 (N.D. Cal. 2008) (holding that "Defendants'. . . misrepresentations and omissions

concerning the price of LCD, likely misled all consumers acting reasonably under the

circumstances to believe that they were purchasing LCD at prices born by a free and fair market .

. . The Court finds plaintiffs' allegations sufficient to state a claim under the Rhode Island

statute.")[2]; see also Banks v. Consumer Home Mortg., Inc., No. 01-8508, 2003 WL 21251584, at

---

York courts have in large measure relied on the Federal Trade Commission Act's definition of such practices.").

[2] Rhode Island's Deceptive Trade Practices statute is similar to New York's, see R.I. Gen. Laws Ann. § 6-13.1-2 ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful."), and like New York courts, Rhode Island courts look to precedent established under the Federal Trade Commission Act to determine whether practices are deceptive. See R.I. Gen. Laws Ann. § 6-13.1-3 ("It is the intent of the legislature that in construing §§ 6-13.1-1 and 6-13.1-2 due consideration and great weight

*10 (E.D.N.Y. Mar. 28, 2003) (misrepresentations regarding fair market value are deceptive); Polonetsky v. Better Homes Depot, Inc., 185 Misc. 2d 282, 290, 712 N.Y.S.2d 801, 806 (N.Y. Sup. Ct. 2000) ("[T]he complaints allege deceptive practices in connection with the sale of such services. These include false advertising or misrepresentations that the homes were sold 'at below market rates.'") (citing Guggenheimer v. Ginzburg, 43 N.Y.2d 268 (1977)).

Plaintiffs have sufficiently alleged specific statements and omissions that would likely lead reasonable consumers to believe that Energy Plus' rates were commensurate with those otherwise available from local utilities or other ESCOs. Whether or not Defendant's practices are deceptive is a question of fact that is not properly resolved on this motion. See Sims v. First Consumers Nat. Bank, 303 A.D.2d 288, 289 (1st Dep't 2003). As Senior District Judge Weinstein held:

> A federal trial judge, with a background and experience unlike that of most consumers, is hardly in a position to declare [whether reasonable consumers are deceived] . . . Analytical transparency begins with an accurate assessment of the facts-here what the defendant-communicator intended to communicate and what was communicated to the intended communicant, not what a communication means to a judge. In the present case the court is not prepared to say how users and advertisers would be affected by these commercials.

Verizon Directories Corp. v. Yellow Book, Inc., 309 F. Supp. 2d 401, 407-08 (E.D.N.Y. 2004). Therefore, Defendant's motion should be denied.

### 2. Defendant's Representation That Its Rates Are Competitive Is Not Mere Puffery.

Defendant's "puffery" argument is only made with respect to the representation that it's "goal is to be competitive with other energy suppliers and your local utility company over the

---

shall be given to the interpretations of the federal trade commission and the federal courts relating to § 5(a) of the Federal Trade Commission Act.").

long run." Def. Mem. at 6. However, for a consumer, that statement, made in the context of a disclosure concerning rates, is more than mere puffery. It is instead a specific, affirmative representation that Energy Plus' rates are competitive with other rates available in the market; yet the Amended Complaint alleges that Energy Plus' rates are often two or three times the rates charged by other ESCOs and local utilities. Amended Complaint ¶ 16. No reasonable consumer would expect "competitive" rates to be two or three times higher.

There are four reasons Defendant's puffery argument should be denied. <u>First</u>, a statement that is capable of objective measure is not puffery. <u>See</u> <u>Virginia Bankshares v. Sandberg</u>, 501 U.S. 1083, 1094-95 (1991) (statement that stock price was "high" and "fair" was material as it was subject to objective evaluation and the statement was false). Given that objective evidence will be presented regarding the disparity between Defendant's rates and prevailing market rates, Defendant's statements are more than mere puffery and are actionable. <u>See</u> <u>Maytag Co.</u>, 807 F.Supp.2d at 123 ("If a defendant's misrepresentation comes in the form of a positive assertion, then it is likely that defendant will be responsible if it happens to be false.") (citation and alterations omitted).

<u>Second</u>, Energy Plus <u>knows</u> that its rates are neither competitive nor reflective of market prices, Amended Complaint ¶¶ 1, 11, 17, and therefore its representations to the contrary are not insulated from liability as "mere puffery." <u>See</u> <u>Jones v. Corus Bankshares, Inc.</u>, 701 F. Supp. 2d 1014, 1027-28 (N.D. Ill. 2010) ("[S]tatements that would otherwise amount to puffery can be actionable if the speaker is aware that the statement is deceptive.") (citations omitted); <u>Silverman v. Motorola, Inc.</u>, No. 07-4507, 2008 WL 4360648, at *10 (N.D. Ill. Sept. 23, 2008) (statements regarding Motorola's "strong balance sheet," that Motorola was "upbeat," "confident" were

8

puffery, but statements that the "competitive" products are "on track," "quite on track," or "keyed up," would be material if in fact defendants knew that those products were not on track).

Third, Plaintiffs allege that Energy Plus knows that its rates are not competitive, and that its rates are consistently higher than those of its competitors. Amended Complaint ¶¶ 1, 11, 17. Thus, the statement that "its goal is to be competitive" is objectively false because Energy Plus has no intention of being competitive or of fulfilling its representation to that effect. Where a defendant makes a promise it does not intend to fulfill, such a promise constitutes deception. See Brown v. Hambric, 168 Misc. 2d 502, 509, 638 N.Y.S.2d 873, 877 (City Ct. 1995); Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994) ("The failure to fulfill a promise to perform future acts is not ground for a fraud action unless there existed an intent not to perform at the time the promise was made.").

Fourth, claims of non-actionability owing to puffery are generally not amenable to dismissal on a motion directed to the pleadings. See Verizon Directories, 309 F. Supp. 2d at 407-08 (E.D.N.Y. 2004) ("The motion to dismiss on the pleadings on the theory of puffery cannot be granted.").

Defendant cites to no persuasive authority supporting its assertions that its representations are mere puffery. Defendant's citation to Greenberg v. Chrust, 282 F. Supp. 2d 112, 121 (S.D.N.Y. 2003) for the proposition that mere puffery is not actionable is curious, as that case involved only common law fraud and not a claim under section 349. Greenberg is also inapposite as it concerned claims by an executive regarding his own professional successes. Id. ("Chrust believed he successfully worked with small companies in the past, and an objective standard to measure this "success" is lacking."). Fink v. Time Warner Cable, 810 F. Supp. 2d

9

633 (S.D.N.Y. 2011) is likewise inapposite.  There, the court unsurprisingly held that "terms like 'blazing fast' and 'fastest, easiest' are classic examples of generalized puffery." Id. at 644. Tellingly, the court specifically declined to dismiss as puffery a more concrete representation that the defendant's internet access speed was "up to" that of competing services. Id.

Other cases cited by Defendant involve classic puffery, not concrete and verifiable claims such as Energy Plus' representation that its rates are "competitive."  See Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc., 165 F. Supp. 2d 514, 530 (S.D.N.Y. 2001) ("Terms like 'very high productive traits,' which do not set forth a concrete representation as to the company's future performance, are in the nature of commercial puffery and cannot form the basis for a fraud claim here."); Pelman v. McDonald's Corp., 237 F. Supp. 2d 512, 528 (S.D.N.Y. 2003) ("Merely encouraging consumers to eat its products 'everyday' is mere puffery, at most, in the absence of a claim that to do so will result in a specific effect on health."); Lipton v. Nature Co., 71 F.3d 464, 474 (2d Cir. 1995) ("[G]eneral assertions that he conducted thorough research in compiling his list of terms is mere 'puffing.'"); Hubbard v. Gen. Motors Corp., No. 95-4362, 1996 WL 274018, at *7 (S.D.N.Y. May 22, 1996) ("[P]roclamations that Suburbans are 'like a rock', 'popular' and 'the most dependable, long-lasting trucks on the planet', are generalized and exaggerated claims, which a reasonable consumer could not rely upon as statements of fact.); Bologna v. Allstate Ins. Co., 138 F. Supp. 2d 310, 323 (E.D.N.Y. 2001) ("Here, Allstate's assertion, "You're in good hands with Allstate," is general, subjective, and cannot be proven true or false."); Lacoff v. Buena Vista Pub., Inc., 183 Misc. 2d 600, 610, 705 N.Y.S.2d 183, 191 (Sup. Ct. 2000) ("The remaining language on the cover—'How We Beat the Stock Market—and How You Can Too'—and references to the Beardstown Ladies' 'secret

recipe for investment success,' is not actionable, as it is simply puffery or opinion."); Welch v.

TD Ameritrade Holding Corp., No. 07-6904, 2009 WL 2356131, at *6 (S.D.N.Y. July 27, 2009)

("TD Ameritrade's statements about its 'outstanding personal service,' 'impartial guidance,' and

'great' Cash Sweep Options constituted immaterial puffery.").

Unlike these cases, Defendant's claim that its "goal is to be competitive" is objectively

verifiable.  Not only will evidence demonstrate that Defendant's goal is not to be competitive (as

exemplified by the fact that its rates are as much as two to three times higher than the

competition's), but evidence will show the falsity of the obvious implication that reasonable

consumers draw from this statement, namely that Energy Plus' rates for the most vital of all

consumer services, electricity, will in fact be fair and competitive.

Defendant's reliance on Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics,

905 F. Supp. 169 (S.D.N.Y. 1995) is misplaced, as the language at issue there did not contain

concrete comparisons to other products.  As the Gordon court held, "[t]he language employed,

'the most cost-effective prices' and 'subscription prices as low as possible,' is but general

puffery, common to many advertisements."  Id. at 182.  Defendant's representation that its rates

are "competitive" is a direct comparison to the prices of its competitors, namely that Energy

Plus' prices are equal to or lower than local utilities or other ESCOs, whereas "the most cost-

effective prices" is not capable of comparison or concrete verification but is rather a vague and

ambiguous representation of non-specific quality.  Similarly, the vague phrase "as low as

possible" is not capable of verification.

Defendant represents that its prices are competitive over the long run, Amended

11

Complaint ¶ 15, a clear and false statement that its prices compare favorably to its competitors. This is not puffery but the use of concrete comparative language that is deceptive.

### 3. Defendant Is Obliged To Inform Consumers That Its Rates Are Substantially Higher Than Its Competitors' Rates.

This Court need not credit Defendant's argument that it was under no obligation to inform consumers that its prices were substantially higher than its competitors. Def. Mem. at 13. First, Energy Plus was under an obligation to so inform consumers because it affirmatively misrepresented that its rates were competitive and reflective of the market. See In re Static Random Access Memory (SRAM) Antitrust Litig., No. 07-01819, 2008 WL 2610549, at *2 (N.D. Cal. June 27, 2008) (denying motion to dismiss section 349 claim where the plaintiffs alleged that the "Defendants provided information that they knew would be seen by IP Plaintiffs and failed to provide other material information necessary to prevent the provided information from being misleading.").

Second, it is well settled that "[w]hen a defendant exclusively possesses information that a reasonable consumer would want to know and could not discover without difficulty, failure to disclose can constitute a deceptive or misleading practice." Jackson Hewitt, 579 F. Supp. 2d at 347 (citing to Oswego Laborers', 85 N.Y.2d at 26). See also Maytag Co., 807 F. Supp. 2d at 129 (denying motion to dismiss and holding that "when a defendant exclusively possesses information that a reasonable consumer would want to know and could not discover without difficulty, failure to disclose can constitute a deceptive or misleading practice."). Energy Plus is in possession of the fact that it charges consumers substantially more than local utilities or other ESCOs charge, Amended Complaint ¶¶ 1, 11, 17, and consumers only discover this information

12

after they have been charged Energy Plus' exorbitant rates.  Amended Complaint ¶ 18.  Energy

Plus' failure to disclose this information is deceptive.

Defendant cites to <u>Oswego</u> for the proposition that Energy Plus is under no obligation to

ascertain all consumers' individual needs for information.  Def. Mem. at 13.  Defendant

purposefully ignores, however, the holding in <u>Oswego</u> that defendants are obliged to disclose

material information <u>that consumers do not possess</u>:

> In the case of omissions in particular -- the subject of the present case -- the
> statute surely does not require businesses to ascertain consumers' individual needs
> and guarantee that each consumer has all relevant information specific to its
> situation. The scenario is quite different, however, where the business alone
> possesses material information that is relevant to the consumer and fails to
> provide this information.

<u>Oswego Laborers'</u>, 85 N.Y.2d at 26.[3]

<u>Third</u>, N.Y. G.B.L. § 349-d(7) imposes on Defendant an affirmative obligation to "clearly

and conspicuously" identify its variable charges, and the implementing regulation specifies that

Energy Plus is under an affirmative duty to "[u]se reasonable efforts to provide accurate and

timely information about services and products.  Such information will include information

about rates."  <u>Re Retail Access Business Rules</u>, No. 98-M-1343, 2010 WL 5188980, at *51 (New

York Public Service Commission, December 17, 2010).  Energy Plus fails to provide any

information, much less accurate information, concerning its variable charges that could lead

consumers to understand that Energy Plus' rates would be as much as two or three times higher

---

[3]  Defendant's reliance on <u>Gershon v. Hertz Corp.</u>, 215 A.D.2d 202 (1st Dep't 1995) is
unfounded.  There, the plaintiff, a Hertz customer, complained that the defendant did not inform
him that there were cheaper ways to make a rental car reservation at Hertz.  <u>Id.</u> at 202.  <u>Gershon</u>
is inapposite, as it does not address misrepresentations or omissions concerning competitors'
pricing.  Moreover, unlike the case at bar, there were no allegations that the defendant provided
misleading representations concerning the prices it did charge the plaintiff, nor was the defendant
under a statutory obligation to clearly and conspicuously disclose its charges.

than its competitors' rates.  It is well settled that a party under an affirmative duty to disclose

critical information regarding its service or products is liable when it makes false representations

or omits material information.  See St. John's Univ., New York v. Bolton, 757 F. Supp. 2d 144,

174-75 (E.D.N.Y. 2010).

Energy Plus has a legal obligation to disclose to consumers that its rates are substantially

higher than those of its competitors'; it failed to do so, and therefore Defendant's motion should

be denied.

**4.     Defendant's Misrepresentations And Omissions Are Material.**

Defendant's assertion that Plaintiffs' failure to specifically plead that they would not have

enrolled in Energy Plus' service had they known that its rates were substantially higher than

those otherwise available in the market, Def. Mem. at 9, is not a basis to dismiss the Amended

Complaint.[4]

The Amended Complaint alleges the plain and unremarkable fact that the most important

consideration for any reasonable consumer, such as Ms. Wise and Mr. Romm, when choosing an

electricity supplier is price, and that no reasonable consumer who knows the truth about Energy

Plus' exorbitant rates would choose Energy Plus as an electricity supplier.  Amended Complaint

¶18.  The Amended Complaint also alleges that Energy Plus' statements that consumers will

receive the same reliable service is "materially misleading because consumers do not receive the

same energy services but instead receive energy services that are substantially more costly,"

Amended Complaint ¶ 12, and that "Energy Plus' rates do not reflect prevailing market rates but,

---

[4] Should this Court find such further specification necessary, both Plaintiffs can and will plead
that they would not have enrolled in Energy Plus' service but for Defendant's deceptive
practices, and that the rates charged by the utility company or ESCO that provided Plaintiffs with
electricity before they switched to Energy Plus were lower than those charged by Energy Plus.

rather, are substantially higher than market rates . . . Energy Plus fails to disclose this material

fact to its customers." Amended Complaint ¶ 13.  Moreover, the Amended Complaint pleads

that electricity service at competitive, market rates are available to consumers like Ms. Wise and

Mr. Romm from both local utilities and other ESCOs.  Amended Complaint ¶¶ 11, 16.

  These allegations are more than sufficient to allege materiality.  See Bildstein v.

MasterCard Int'l Inc., 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004) ("[A] material claim is one that

involves information that is important to consumers and, hence, likely to affect their choice of, or

conduct regarding, a product.") (citation and quotation omitted).  Indeed, the FTC considers

representations concerning cost to be per se material:

> Under the Commission's test, a material claim is one that involves information
> that is important to consumers and, hence, likely to affect their choice of, or
> conduct regarding, a product.  The Commission has historically *presumed*
> materiality for . . . a claim that concerns the purpose, safety, efficacy, or cost of
> the product or service.

Novartis Corp. v. F.T.C., 223 F.3d 783, 786 (D.C. Cir. 2000) (citations and quotations omitted;

emphasis in original).  See also Galvan v. KDI Distribution Inc., No. 08-0999, 2011 WL

5116585, at *10 (C.D. Cal. Oct. 25, 2011) ("[R]epresentations regarding price are material to a

purchase"); F.T.C. v. Windward Mktg., Inc., No. 96-615F, 1997 WL 33642380, at *10 (N.D. Ga.

Sept. 30, 1997) ("[A]ny representations concerning the price of a product or service are

presumptively material.").  C.f, Marder's Nurseries, Inc. v. Hopping, 171 A.D.2d 63, 70 (2d

Dep't 1991) ("[P]urchase price is a material term of a real estate contract."); Man-Hung Lee v.

Hartsdale Canine Cemetery, Inc., 28 Misc. 3d 234, 242-43, 899 N.Y.S.2d 823, 829 (City Ct.

2010) ("[P]rice is a material term of every contract for services"); Chernis v. Swarzman, No. 05-

3377, 2007 WL 2230078, at *9 (S.D.N.Y. Aug. 2, 2007) ("Price is a material term of every service contract.").

Defendant's reliance on <u>Bildstein</u> is misplaced, as there, unlike the case at bar, there was no allegation that other credit cards existed without a foreign transaction charge, or that the amount of the charge was material in relation to the overall charge, or that any reasonable consumer would consider the charge material. 329 F. Supp. 2d at 414. Here, the Amended Complaint alleges that local utilities and other ESCOs offer substantially lower rates, Amended Complaint ¶ 16, for a service that every household must purchase (unlike credit cards used for foreign transactions). The Amended Complaint also alleges that the excessive charge at issue was as much as two to three times the amount local utilities and other ESCOs charge, <u>id.</u>, a patently material amount (unlike a nominal foreign transaction charge). Such allegations are more than sufficient to plead materiality.[5]

### III.   Plaintiffs Adequately Plead Claims Under N.Y. General Business Law Section 349-d.

Employing a rhetorical syllogism that would make Greek sophists proud, Defendant argues that it "clearly and conspicuously" identifies its variable charges by the reductive statement that its rate is "variable" and that its variable charges include "other factors." Def. Mem at 13-14. Such an interpretation, allowing an ESCO to identify its variable charges by merely stating that its rates are variable and that they vary according to the market "and other

---

[5]  Defendant in essence argues that Plaintiffs fail to allege that they enrolled in Energy Plus in reliance on its representations and omission regarding rates. Of course, it is beyond peradventure that a plaintiff need not plead or prove reliance to recover under section 349. <u>See</u> <u>Pelman ex rel. Pelman v. McDonald's Corp.</u>, 396 F.3d 508, 511 (2d Cir. 2005) ("[A] private action brought under § 349 does not require proof of actual reliance.").

factors," is contrary to the plain language of section 349-d and the purpose for which it was promulgated.

As an ESCO, Energy Plus is required, under section 349-d(7), to "clearly and conspicuously" identify "all variable charges" in "in all marketing materials." The purpose of this and other provisions of section 349-d is to protect consumers from the very unscrupulous behavior presented at bar. Thus, the "bill establishe[d] important consumer safeguards in the marketing and offering of contracts for energy services to residential and small business customers . . . this bill would make fair marketing standards enforceable." New York Sponsors Memorandum, 2009 A.B. 1558, at 1-2 (2009) (attached as Exhibit A).

To that end, the purpose of the "clearly and conspicuously" requirement is to allow consumers to make informed choices: "These provisions will go a long way toward restoring an orderly marketplace where consumers can make informed decisions on their choices for gas and electric service with the confidence that state government will prevent fraudulent practices and ensure a level playing field." New York Sponsors Memorandum at 3. Indeed, the purpose of the variable charge identification clause was to prevent ESCOs like Energy Plus from charging rates with undisclosed "variables" that effectively cause rates to increase substantially. As the sponsoring memorandum notes:

> [S]hort-term "teaser" rates followed by skyrocketing variable prices -- [are an example of] many of the problems recently seen with subprime mortgages [that] are being repeated in energy competition . . . competition in supplying energy cannot succeed without a meaningful set of standards to weed out companies whose business model is to take unfair advantage of consumers. This bill will require the Public Service Commission (PSC) and the Long Island Power Authority (LIPA) to adopt regulations including the following mandatory consumer protections . . . all variable charges will be clearly and conspicuously identified.

17

New York Sponsors Memorandum at 3.

The New York Public Service Commission, in implementing regulations under section 349-d, also provides that ESCOs like Energy Plus must clearly disclose the price for services and all variable charges, requiring "[d]isclosure, in simple and clear language, of the terms and conditions of the agreement between [consumers] and the ESCO including . . . price and all variable charges or fees." Retail Access Business Rules, No. 98-M-1343, 2010 WL 5188980, at *11 (N.Y.P.S.C. Dec. 7, 2010). Thus, the implementing regulation imposes an affirmative duty on ESCOs to "[u]se reasonable efforts to provide accurate and timely information about services and products. Such information will include information about rates." Id. at *51.

Notwithstanding the clear language of the statute, its implementing regulations, and the express purpose of section 349-d, Defendant offers an interpretation of section 349-d(7) that would allow ESCOs to charge whatever rate they wished on whatever basis they chose, so long as they reductively state that their rates are "variable." Indeed, Defendant's argument that these representations are "isolated," Def. Mem. at 2, and its argument that its disclosures concerning the rate it charges are merely ambiguous "puffery," Def. Mem. at 5, reinforces the extent to which it fails to comply with section 349-d(7)'s requirement that Energy Plus "clearly and conspicuously," rather than ambiguously and in an "isolated" fashion, identify its variable charges. A much more reasonable statutory construction requires ESCOs to identify the variable charges -- that is, what the variables are and how they will affect the overall rate charged to consumers. This Court should afford section 349-d a construction that effectuates its purpose. See Majewski v. Broadalbin-Perth Cent. Sch. Dist., 91 N.Y.2d 577, 583 (1998) ("It is

fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature.") (citation and quotation omitted).

Not only does section 349-d(3) prohibit deceptive practices by ESCOs, but section 349-d(7) provides that Defendant must "clearly and conspicuously" identify all variable charges. Instead, Defendant misleadingly and confusingly states that it offers a "market-rate product" when its rates do not reflect the market, and that it offers "competitive" rates, when in fact its rates are often two to three times higher than rates otherwise available. Defendant's inclusion of the opaque statements that its rates are also based on "other factors" and that the "price may fluctuate," hardly constitutes a "clear and conspicuous" statement of all of Energy Plus' variable charges; to the contrary, the use of the term "other factors" is the antithesis of a clear identification of the variables that are part of Energy Plus' charges. Plaintiffs' claims under section 349-d should not be dismissed.

**IV.    Plaintiff's Unjust Enrichment Claims Should Not Be Dismissed.**

Defendant does not contest that Plaintiffs' claim for unjust enrichment is adequately plead, nor could it. See Stern v. H. Dimarzo, Inc., 19 Misc.3d 1144(A), 867 N.Y.S.2d 20, at *14 (N.Y. Sup. Ct. June 11, 2008). Instead, Defendant argues that a claim for unjust enrichment may not lie where there is an express contract between the parties. Def. Mem. at 14-15. However, Defendant's violations of section 349-d voids those contracts: "Any contract for energy services which does not comply with the applicable provisions of this section shall be void and unenforceable as contrary to public policy." N.Y. Gen. Bus. Law § 349-d(8). Therefore, Plaintiffs' unjust enrichment claim should not be dismissed.

19

## **CONCLUSION**

Plaintiffs' claims are more than adequately plead, and therefore this Court should deny

Defendant's motion to dismiss and allow this case to proceed expeditiously to trial, together with

such other and further relief as the Court deems just and proper.

Dated:   White Plains, New York
         March 1, 2012

                                    Respectfully submitted,

                                    MEISELMAN, DENLEA, PACKMAN,
                                    CARTON & EBERZ P.C.

                         By:        /s D. Greg Blankinship
                                    Jeffrey I. Carton
                                    D. Greg Blankinship
                                    1311 Mamaroneck Avenue
                                    White Plains, New York 10605
                                    Tel: (914) 517-5000
                                    Fax: (914) 517-5055
                                    jcarton@mdpcelaw.com
                                    gblankinship@mdpcelaw.com

                                    *Attorneys for Plaintiffs*

00247238.doc

20

**Certificate of Service**

I certify that on the 1st day of March, 2012, I caused a true copy of Plaintiffs'

Memorandum Opposing Defendant's Motion To Dismiss to be served by e-mail and overnight

mail upon the following:

> Jason E. Halper
> Lowenstein Sandler PC (NYC)
> 1251 Avenue of The Americas
> New York, NY 11020
> (973)-597-6144
> Fax: 973)-597-6145
> Email: jhalper@lowenstein.com
> LEAD ATTORNEY
> ATTORNEY TO BE NOTICED
>
> Robert D. Towey
> Lowenstein, Sandler, P.C.
> 65 Livinston Ave
> Roseland, NJ 07068
> (973)597-2500
> Fax: (973)597-2400
> Email: rtowey@lowenstein.com

> /s D. Greg Blankinship
> D. Greg Blankinship