# Exhibit A

New York Sponsors Memorandum, 2009 A.B. 1558
Legislative History
Return to Folder
7 of 8 results

NY Spons. Memo., 2009 A.B. 1558
New York Sponsors Memorandum, 2009 A.B. 1558
April 7, 2009
New York Assembly
232nd Legislature, 2009 Regular Session

SPONSORS MEMO:

NEW YORK STATE ASSEMBLY

MEMORANDUM IN SUPPORT OF LEGISLATION

submitted in accordance with Assembly Rule III, Sec 1(e)

**BILL NUMBER:** A1558A

**SPONSOR:** Gianaris(MS)

**TITLE OF BILL**: An act to amend the general business law, in relation to establishing an energy service company consumers bill of rights

**PURPOSE OR GENERAL IDEA OF BILL**:

This bill establishes important consumer safeguards in the marketing and offering of contracts for energy services to residential and small business customers.

**SUMMARY OF SPECIFIC PROVISIONS**:

Bill § 1 adds a new §349-d to the General Business Law to set forth an energy services company consumers bill of rights. Subdivision 1 defines the terms "energy services" (electricity and/or natural gas), "energy services company" or "ESCO" (an entity eligible to sell energy services to end-use customers using the transmission or distribution system of a utility), "customer" (any person sold or offered an energy services contract by an ESCO for residential utility service or through "door-to-door sales", and "door to door sales."

Pursuant to subdivision 2, no person who sells or offers for sale any energy services for or on behalf of an ESCO shall (a) fail to properly identify himself or herself and the energy services company or companies which he or she represents and to explain that he or she does not represent a distribution utility; (b) engage in any deceptive acts or practices in the marketing of energy services; or (c) fail to provide each prospective customer with a statement of an "ESCO consumers bill of rights" developed by the public service commission and the Long Island power authority.

Subdivisions 3-6 set forth the following ESCO contract requirements:

* no required prepayment for energy services.

* no fee for termination or early cancellation of the contract in excess of $1 00 or twice the estimated bill for energy services for an average month (to charge a fee greater than $100, an ESCO must provide the customer or business when the contract is offered with an estimated average monthly bill for energy services.

* no material changes in the terms or duration of any contract for energy services without the express consent of the customer or business.

* all variable charges shall be clearly and conspicuously identified.

Per subdivision 7, any contract for energy services which does not comply with the applicable provisions of this section shall be void and unenforceable as contrary to

public policy and any waivers by a buyer shall be deemed void and unenforceable by the seller.

Subdivision 8 authorizes the Attorney General, upon his own motion or upon referral from the public service commission or the Long Island power authority, to bring a civil action against any energy services company that violates any provision of this section and may recover (a) a civil penalty not to exceed $1000 per violation and (b) costs and reasonable attorney's fees. In any such proceeding the court may direct restitution.

Subdivision 9 authorizes an additional right of private action by any person who has been injured by reason of any violation of §349-d to enjoin such unlawful act or practice and/or recover actual damages or $200, whichever is greater. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to $1000, if it finds a willful or knowing violation. The court may award reasonable attorney's fees to a prevailing plaintiff

Bill §2 provides that the Public Service Commission (PSC) and the Long Island Power Authority (LIPA) shall amend their consumer protection regulations to incorporate the provisions of bill §1.

Bill §3 makes clear that the "ESCO consumer bill of rights" does not limit the existing authority of the PSC or LIPA to limit, suspend or revoke the eligibility of an ESCO to sell or offer for sale any energy services for violations of any statute, regulation or policy they otherwise enforce.

Bill §4 charges the PSC and LIPA, in conjunction with the Consumer Protection Board and the Attorney General, to develop a short, plain language statement of an "ESCO consumers bill of rights" which shall summarize the protections afforded to consumers of energy services by this chapter and other applicable laws.

Bill §5 sets forth a severability clause for the provisions of the legislation.

**SUMMARY**: OF SPECIFIC AMENDMENTS:

New §349-d(1)(d) is amended to clarify that visits to a buyer's premises pursuant to a requested appointment are not considered "door-to-door sales."

Clarifications are made to new §349-d(2) as follows: requirements pertaining to ESCO marketer identification and provision of a copy of the ESCO consumers bill of rights are made applicable to residential customers and door-to-door sales, while the ban against engaging in deceptive acts and practices is relocated to a new subdivision 3 and remains applicable to all marketing activities. (The ensuing subdivisions are renumbered accordingly.)

Renumbered §349-d(6) is amended to permit renewal of contracts, with additional consumer protections where the renewal is automatic (i.e., without the customer's express consent).

**EFFECTS OF PRESENT LAW WHICH THIS BILL WOULD ALTER**:

Chapter 686 of 2002 extended the provisions of the Home Energy Fair Practices Act (HEFPA) to cover ESCOs, but its protections only apply after a contract has been executed. No substantive protections exist to prevent deceptive marketing and unfair or misleading contract provisions. As recently noted by the Consumer Protection Board and the New York City Department of Consumer Affairs, the PSC's guidelines for ESCO marketing are strictly voluntary - this bill would make fair marketing standards enforceable and would extend protections to small business customers who are currently not covered under HEFPA.

**JUSTIFICATION**:

Over the past decade, New York has promoted a competitive retail model for the provision of electricity and natural gas. Consumers have been encouraged to switch service providers from traditional utilities to energy services companies. Unfortunately, consumer protection appears to have taken a back seat in this process. The pressing

need for consumer protections in dealing with ESCOs is highlighted by recent news items from around the state:

* Stopped outside her home in Flushing by a uniformed salesman promising her utility bills will be cut in half, a senior citizen signs a contract with an energy services company (ESCO). When she finds out later that the contract is for 5 years and her monthly bills are $200 higher, she tries to cancel- only to be told that she must pay an $1800 "exit fee".

* A small business owner in Brooklyn is convinced to sign an energy services contract by a sales agent's assurances that the price would be fixed and he could save at least $200 a month. After a few months, his monthly bill had doubled, and he learned that the contract had a variable charge that fluctuated wildly -- and that canceling it would cost him $7000.

* Complaints from various communities cite ESCO marketing reps masquerading as utility employees, making misleading statements to induce people to sign a contract, and even switching consumers' energy suppliers without their knowledge or consent.

High-pressure and misleading sales tactics, onerous contracts with unfathomable fine print, short-term "teaser" rates followed by skyrocketing variable prices -- many of the problems recently seen with subprime mortgages are being repeated in energy competition. However, the Public Service Commission (PSC) has taken a laissez-faire approach to these problems, offering only a voluntary set of guidelines with no teeth. The fact is, competition in supplying energy cannot succeed without a meaningful set of standards to weed out companies whose business model is to take unfair advantage of consumers.

This bill will require the Public Service Commission (PSC) and the Long Island Power Authority (LIPA) to adopt regulations including the following mandatory consumer protections:

*requiring ESCO marketing reps to identify themselves as such and explain that they don't represent a utility;

*limiting prepayments to not more than a customer's estimated bill for an average month;

*limiting cancellation fees to an amount twice the initial estimated average monthly bill;

*all variable charges will be clearly and conspicuously identified;

*no contract terms could be changed without the consumer's affirmative consent (this would apply to both post-teaser rates and renewals); and

* a short, plain language "ESCO consumer bill of rights to be developed by the PSC and LIPA (in collaboration with CPB and the Attorney General) and given to prospective customers in writing or repeated in telephone sales pitches.

These safeguards would apply to small businesses as well as residential customers. The Attorney General could prosecute violations of marketing standards referred by the PSC and LIPA, or consumers could enforce the standards themselves through third-party actions.

These provisions will go a long way toward restoring an orderly marketplace where consumers can make informed decisions on their choices for gas and electric service with the confidence that state government will prevent fraudulent practices and ensure a level playing field.

**PRIOR LEGISLATIVE HISTORY:**

A.10180-B (2008) - passed Assembly, referred to Senate Rules Committee.

**FISCAL IMPLICATIONS FOR STATE AND LOCAL GOVERNMENTS**: Minimal.

**EFFECTIVE DATE:**

150th day after becoming law and applicable to all energy services sold or offered for sale on or after such date; provided, however, that the PSC and LIPA are immediately authorized and directed to take any and all actions, including but not limited the promulgation of any necessary rules, necessary to fully implement the provisions of this bill on such date.

---

**End of Document**  © 2012 Thomson Reuters. No claim to original U.S. Government Works.