```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK
                    ------------------------------x

                    ANGELA WISE, on behalf of
                    herself and all others
                    similarly situated, et al.,

                             Plaintiffs,

                         v.                          11 CV 7345 (WHP)

                    ENERGY PLUS HOLDINGS LLC,

                             Defendant.

                    ------------------------------x
                                                     New York, N.Y.
                                                     March 23, 2012
                                                     11:15 a.m.
                    Before:

                               HON. WILLIAM H. PAULEY III,

                                                     District Judge

                                        APPEARANCES

                    MEISELMAN, DENLEA, PACKMAN, CARTON & EBERZ PC
                         Attorneys for Plaintiffs
                    BY:  JEFFREY I. CARTON
                         DOUGLAS G. BLANKINSHIP


                    LOWENSTEIN SANDLER PC
                         Attorneys for Defendant
                    BY:  ROBERT D. TOWEY
                         AURORA F. PARRILLA
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

---

Case 1:11-cv-07345-WHP   Document 23   Filed 03/29/12   Page 1 of 19      1

C3nWwisC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  ANGELA WISE, on behalf of
   herself and all others
4  similarly situated, et al.,

5              Plaintiffs,

6         v.                                  11 CV 7345 (WHP)

7  ENERGY PLUS HOLDINGS LLC,

8              Defendant.

9  ------------------------------x
                                              New York, N.Y.
10                                            March 23, 2012
                                              11:15 a.m.
11
   Before:
12
                     HON. WILLIAM H. PAULEY III,
13
                                              District Judge
14
                              APPEARANCES
15
   MEISELMAN, DENLEA, PACKMAN, CARTON & EBERZ PC
16      Attorneys for Plaintiffs
   BY:  JEFFREY I. CARTON
17       DOUGLAS G. BLANKINSHIP

18
   LOWENSTEIN SANDLER PC
19      Attorneys for Defendant
   BY:  ROBERT D. TOWEY
20       AURORA F. PARRILLA

21

22

23

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

C3nWwisC

1                (Case called)

2                MR. BLANKINSHIP:  Greg Blankinship and my colleague,
3     Jeff Carton, for the plaintiff, your Honor.
4                MR. TOWEY:  Good morning, your Honor.  Robert Towey
5     and Aurora Perrilla, from Lowenstein Sandler.  And I also have
6     with me today Jane Seely, general counsel of Energy Plus.
7                THE COURT:  Good morning.
8                This is oral argument on your motion to dismiss.  Do
9     you want to be heard?
10               MR. TOWEY:  Yes, please.  Thank you, your Honor.
11               Your Honor, years ago, when I moved my law practice to
12    my current firm, I told my clients that if they moved their
13    cases with me, they'd receive the same reliable service, me,
14    their legal entity.  It's the same type of representation
15    that's raised in this case against Energy Plus.  Our firm's
16    goal is to be competitive with other firms over the long run,
17    like most businesses.  We offer valuable rewards to our clients
18    such as opportunities to partner with us in pro bono cases.  We
19    offer free CLE courses to in-house counsel, and, like other
20    businesses, like Energy Plus, our firm acquires attorneys from
21    the legal market.  We incorporate these thoughts into our
22    services that we provide and our rates vary from month to
23    month.  Clients' bills fluctuate; sometimes higher, sometimes
24    lower.
25               THE COURT:  But if, as alleged in this case, price is

Case 1:11-cv-07345-WHP   Document 23   Filed 03/29/12   Page 3 of 19    3
C3nWwisC

1     the most important consideration for energy consumers and
2     Energy Plus' product is the same as its competitors' because
3     electricity is electricity wherever you get it, couldn't the
4     phrase "our goal is to be competitive over the long run"
5     reasonably be read as a representation about price?
6             MR. TOWEY:  No, your Honor.  Whether that
7     representation is made by a service provider, a manufacturer of
8     widgets, or a lawyer trying to compete in the market for
9     clients, the goal to be competitive is always the same.  I
10    can't think of any company, any supplier, or any service
11    provider that doesn't have the goal to be competitive.
12            THE COURT:  But there's a wide range in quality among
13    lawyers and absolutely no variation in the quality of the
14    electricity that comes through the wire.  Right?  Either it's
15    110 or 220.  And your client is selling electricity, not legal
16    services.
17            MR. TOWEY:  Your Honor, I would say to your Honor that
18    one could try to draw that distinction with regard to any
19    service or product but that when you focus on the words that
20    are used, regardless of what industry, that the goal to be
21    competitive is a general marketing goal and general statement
22    of aspiration of any person, company, or provider who is trying
23    to get customers and keep customers.
24            The difference here with regard to Energy Plus is that
25    not only does Energy Plus provide energy, it also provides

          SOUTHERN DISTRICT REPORTERS, P.C.
                   (212) 805-0300

1     other rewards to its customers, and while the plaintiffs argue
2     that those rewards have no moment and shouldn't be considered,
3     that is one of the distinctions of Energy Plus from other
4     competitors.  Energy Plus, for example, partners with 150, or
5     so, other airlines, hotels, and service providers and offers to
6     its customers various ways to put its energy dollars to work so
7     that while customers pay for energy service, they're also
8     either earning frequent flier miles or earn those miles when
9     they become a customer, or they earn reward privileges at
10    restaurants and hotel chains.  They can opt for a plan that
11    allows them to put their energy savings to use for college
12    savings.  They can opt instead to have energy completely green
13    so that the sources of energy come solely from green sources to
14    the consumer.  Those have value.
15           So while the goal is to be competitive, a general
16    marketing goal, that particular statement also says that their
17    goal is to be competitive over the long run while offering
18    valuable rewards.  And to me, the focus, at least with regard
19    to that particular statement, which is challenged as puffery,
20    is that it's indistinguishable from other cases and other
21    words, marketing words that, frankly, I think, make the goal to
22    be competitive pale by comparison.  Words like "most
23    dependable, long-lasting truck on the planet," "blazing fast,"
24    "very high productive trades," "most cost effective prices,"
25    "prices as low as possible," and even the word "competitive" in

1    a case which the plaintiff cited which I think is, frankly,
2    distinguishable as an antitrust case, Silverman, but even in
3    that case, the word "competitive," product being competitive,
4    and I think when you add the word "goal," I think it suggests,
5    your Honor, you even further attenuate the word "competitive"
6    from anything that could be deemed actionable.
7             So if your most dependable, long-lasting truck on the
8    planet, instead you say it's your goal to be the most
9    dependable, long-lasting truck on the planet, in either
10   instance, that would be nonactionable puffery as was found with
11   regard to that representation.
12            The same is true with regard to the offer of prices as
13   low as possible.  In that case, your Honor,
14   manufacture/supplier said, "Our prices are as low as possible,"
15   found to be nonactionable puffery.  Put a qualifier on that,
16   "our goal is to have prices as low as possible," I argue that
17   that further attenuates any finding that that particular phrase
18   or in our case the phrase "competitive" could be found to be
19   actual puffery.
20            In every instance cited with regard to the language
21   that's found to be nonactionable puffery, every manufacturer,
22   every supplier of service was comparing their product to the
23   market in in some way to attract customers, and in every
24   instance those language uses were found to be nonactionable.
25            As to the plaintiffs' claim with respect to

1   plaintiffs' use of the following wording, "Energy Plus offers a
2   market rate product, which means we buy electricity every day
3   on the open market, our approach is to purchase energy from
4   each of these markets on a daily and monthly basis, which
5   allows us to incorporate the most up-to-date energy costs from
6   each market into our rates.  As with all variable rate plans,
7   your supply price may fluctuate on a monthly basis lower or
8   higher to reflect the current state of each market and other
9   factors."
10            Considering this market statement as a whole and in
11  full context rather than as cherry-picked words as the
12  plaintiffs do in their brief, there is nothing misleading as a
13  matter of law about this statement.  First, Energy Plus
14  explicitly defines market rate in this very statement to mean
15  we, Energy Plus, buy electricity every day on the open market.
16            Second, Energy Plus expressly discloses that it
17  incorporates the most up-to-date energy costs into its rates
18  along with other factors.
19            Finally, Energy Plus advises customers that as with
20  all variable rate plans, the price fluctuates on a monthly
21  basis lower or higher to reflect the market and those other
22  factors.
23            This disclosure specifically satisfies the
24  requirements of GBL 349-e(7), which requires that all variable
25  rate charges shall be clearly and conspicuously identified in

C3nWwisC

1   marketing material.  The act does not require energy suppliers
2   to explain the basis or effect of its variable charges or how
3   much they will vary or why, as the plaintiff suggests.
4   Instead, the plaintiffs ask this Court to rewrite this
5   legislation and to impose disclosure obligations greater than
6   the law itself.
7           The plaintiffs equate Energy Plus' disclosure and
8   position in this motion with regard to the clear and
9   conspicuous disclosure of its variable rate product to the
10  argument of Greek philosophers, and I confess I chuckled when I
11  read that, and surely it was meant as a compliment.  However,
12  some may credit Yogi Berra, but actually it was the same Greek
13  philosophers who were credited with the phrase "It is what it
14  is," and that applies in this instance to a variable rate
15  product.  There is simply nothing more specific that a supplier
16  with a variable rate energy product must disclose with regard
17  to its rates other than the very fact that it's variable.
18          THE COURT:  I think I understand your argument there.
19  Let me ask you this.  Is Energy Plus challenging the
20  plaintiffs' allegations regarding whether the allegedly
21  deceptive statements caused injury?
22          MR. TOWEY:  Yes.
23          THE COURT:  Anything further?
24          MR. TOWEY:  Yes.
25          THE COURT:  I'd like to hear from your adversary.

C3nWwisC

1             MR. TOWEY:  Yes, your Honor.
2             With regard to that very issue, which ties very much
3   into the materiality issue, the complaint fails to connect the
4   plaintiffs' status as former customers of Energy Plus with any
5   exposure to the marketing statements.
6             THE COURT:  That could be easily cured though by a
7   repleading, couldn't it?
8             MR. TOWEY:  It could, although your Honor was not shy
9   about making that same ruling in Bildstein I, and, frankly, I'd
10  rather see the plaintiffs put up or shut up on that issue.
11  These were customers for very short periods of time, and all
12  they say in their pleading is that they were customers and now
13  the rates were too much.  But there's no linkage between those
14  two claims in terms of exposure to any specific marketing
15  statement or certainly any change in their consumer conduct,
16  and nor can they rely upon broad based allegations that somehow
17  there's this amorphous group out there that did rely upon it or
18  changed their conduct based upon exposure to those very
19  statements.
20            THE COURT:  All right, Mr. Towey.
21            MR. TOWEY:  Lastly is the unjust enrichment claim.
22            THE COURT:  I don't need to hear you on that.
23            MR. TOWEY:  Thank you, your Honor.
24            THE COURT:  Thank you.
25            Mr. Blankinship.

1             MR. BLANKINSHIP:  Thank you, your Honor.

2             This case is simple, your Honor.  Energy Plus lures

3    consumers with promises of frequent flier rewards and same

4    reliable service they've already enjoyed and any reasonable

5    consumer would jump at that chance so long as the rates were

6    the same or at least competitive.  To that end, Energy Plus

7    uniformly states that it offers a market rate, and any consumer

8    would understand that to mean that Energy Plus' rates are

9    consistent with those in the market.

10            To reinforce that impression, Energy Plus makes a

11   series of representations, the effect of which, when taken in

12   context and in totality, is to impress upon consumers the

13   notion that Energy Plus actively seeks out the best and most

14   up-to-date market prices so that it can incorporate them into

15   that rate.  To that end, Energy Plus represents that it offers

16   a market rate product, which means you buy electricity every

17   day on the open market.  They claim their approach to buy

18   energy on the market which allows us to incorporate the most

19   up-to-date energy costs into our rate.  They say the rates

20   reflect the current state of each market and that their goal is

21   to be competitive over a long run.

22            Any reasonable juror could conclude that these

23   representations taken in totality would lead a consumer to

24   understand that the rates that they will be getting from Energy

25   Plus will be commensurate with those available in the market,

1  certainly not two to three times as much.  And the specific
2  notion, the specific representation that their rates reflect
3  those in the market is belied by the fact that Energy Plus'
4  rates actually increase or remain steady when the rates in the
5  market decline.  That's a concrete allegation in the complaint
6  as to a misrepresented statement.  And, of course, Energy Plus
7  fails to inform consumers that its rates are substantially
8  higher than the market, that its rates do not reflect the
9  market, and that the rates are not, in fact, competitive at
10 all.
11           Of course, your Honor, we're here on the motion to
12 dismiss and whether reasonable consumers are deceived is
13 normally a question of fact to be left to a properly instructed
14 jury.  Under Twombly, so long as it's plausible that reasonable
15 consumers would be misled by defendant's misrepresentations and
16 omissions into believing that Energy Plus' rates were
17 reflective of the market and competitive rather than two to
18 three times the going rate, the motion should be denied.
19           THE COURT:  Why should the equitable remedy of unjust
20 enrichment be available?
21           MR. BLANKINSHIP:  Your Honor, we pled unjust
22 enrichment in the alternative.  Under 349-d(8), any violation
23 of Section 349 invalidates the contract.
24           THE COURT:  And that would entitle you to statutory
25 damages, wouldn't it?

C3nWwisC

1            MR. BLANKINSHIP:  It certainly would, your Honor.

2            THE COURT:  How would it entitle you to unjust
3   enrichment?

4            MR. BLANKINSHIP:  Your Honor, the violations we've
5   alleged in the complaint, namely 349-d(3), use of unfair and
6   deceptive practices, and d(7), failure to properly disclose
7   variable charges, those would cause injury to a plaintiff which
8   is the requirement under 349-d to be able to bring a claim.  We
9   certainly do expect to recover on this basis on behalf of the
10  class.

11           As discovery progresses and the case moves on, it may,
12  as unlikely as it is, end up that there are other violations of
13  349-d that don't necessarily cause in the same direct way an
14  injury to consumers, but that would nonetheless invalidate the
15  contract, thus allowing for an unjust enrichment claim.  We're
16  certainly not intending to seek recovery under both claims, but
17  we would suggest that it's a little early in the litigation to
18  dismiss the unjust enrichment claim.

19           THE COURT:  All right.  Anything further?

20           MR. BLANKINSHIP:  Your Honor, I would just like to
21  address the issue of 349-d and whether it's sufficient to
22  clearly and conspicuously identify variable charges by saying
23  "all of our charges vary," and that's all.

24           THE COURT:  349 doesn't require that they be
25  explained, does it?

1          MR. BLANKINSHIP:  Your Honor.

2          THE COURT:  It requires disclosure.

3          MR. BLANKINSHIP:  It does require disclosure, your
4     Honor.

5          THE COURT:  Not explanation.

6          MR. BLANKINSHIP:  Your Honor, I respectfully disagree.
7     I think when the statute says you have to clearly and
8     conspicuously identify your variable charges, one can't say
9     that all of our charges are variable, and that was clearly not
10    the intent of the legislature.  If you look at the sponsoring
11    memo for 349-d, that memo indicates that the purpose of the
12    statute was to ensure fair marketing by ESCO's and to ensure
13    that consumers were able to make informed decisions as to what
14    their rates were going to be.  And to that end, the sponsoring
15    memo also identifies the use of variable charges as one of the
16    mechanisms by which consumers are unjustly charged exorbitant
17    rates.  To rule that one could identify variable charges by
18    saying all of our charges vary would be to eviscerate the
19    purpose of that statute.

20         Similarly, the Public Service Commission, in issuing
21    implementing regulations pursuant to 349-d, clearly stated that
22    it imposed additional obligations to make disclosures in simple
23    and clear language, and it requires, regarding price of
24    electricity, and that all variable rates be identified.  I
25    would suggest that that indicates that the legislature intended

1   more than just a reductive statement that our rates vary.  It
2   certainly doesn't protect consumers from the potential ravages
3   of improperly charged variable rates.
4              THE COURT:  I think I understand your arguments.
5   Thank you, Mr. Blankinship.
6              MR. BLANKINSHIP:  Thank you, your Honor.
7              THE COURT:  Anything further, Mr. Towey?
8              MR. TOWEY:  Just briefly, your Honor.
9              Again, just focusing on the issue of puffery and the
10  goal of being competitive, whether there is an energy company
11  or a runner or a race car driver or a lawyer looking to be
12  competitive in a market, there's always going to be a top, a
13  bottom, and a middle range.  The goal of being competitive
14  doesn't mean you have to be by definition anywhere in there.
15  You could be the fastest, the slowest, but if your goal is to
16  be the fastest, you do your best to be the fastest.  Does it
17  mean you'll win every race?  No.  And again, it goes back to
18  the intentional use of the word "goal," as a corporate goal as
19  opposed to a commitment that you are the lowest and even in
20  instances where companies have said we are the lowest and
21  courts have said even that is not actionable puffery.
22             The other arguments, your Honor, are what they are.
23  The puffery argument really requires this Court to look at this
24  language and to make a judgment call, and I believe there's a
25  substantial body of case law that supports the motion to

1    dismiss on all of the issues, but especially on the puffery
2    issue.
3              THE COURT:  Thank you, Mr. Towey.
4              This Court has reviewed all the parties' motion papers
5    and considered their arguments and I'm prepared to rule.
6              Plaintiffs Angela Wise and Gideon Romm bring this
7    putative class action on behalf of New York consumers who
8    purchased household electricity from defendant Energy Plus
9    Holdings LLC, between October 18, 2008 and the present.
10   Plaintiffs assert claims under the New York General Business
11   Law sections 349 and 349-d and a claim for unjust enrichment.
12   Energy Plus moves to dismiss.
13             On a motion to dismiss, this Court accepts all factual
14   allegations in the complaint as true and construes all
15   reasonable inferences in plaintiff's favor.  ECA Local 134 IBEW
16   Joint Pension Trust of Chicago v. J.P. Morgan Chase & Co., 553
17   F.3d 187, 196 (2d Cir. 1989).  Nevertheless, "a complaint must
18   contain sufficient factual matter, accepted as true, to state a
19   claim for relief that is plausible on its face."  Ashcroft v.
20   Iqbal, 129 S.Ct. 1937, 1949 (2009).
21             To state a claim under 349 or 349-d, a plaintiff must
22   plead, one, that the defendant's challenged act, practice was
23   consumer-oriented, two, that it was misleading or deceptive in
24   a material way, and, three, that the plaintiffs suffered injury
25   as a result of the deceptive practice.  Bildstein v. MasterCard

Int'l, Inc., 329 F.Supp.2d 410, 413 (S.D.N.Y. 2004).

A deceptive act or practice under sections 349 and 349-d is one that is "likely to mislead a reasonable consumer acting reasonably under the circumstances." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 26 (1995). A deceptive practice is material if it "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." Bildstein, 329, F.Supp.2d at 414.

Puffery, however, is not actionable. Verizon Directors Corp. v. Yellow Book, Inc., 309 F.Supp.2d 401, 405-06 (E.D.N.Y. 2004). "Puffery includes generalized or exaggerated statements which a reasonable consumer would not interpret as a factual claim upon which he could rely." Fink v. Time Warner Cable, 810 F.Supp.2d 633, 644 (S.D.N.Y. 2011). And while it is appropriate to dismiss claims of deceptive business practices in certain circumstances, generally "whether defendants' conduct was deceptive or misleading is a question of fact." Sims v. First Consumers National Bank, 303 A.D.2d 288, 289 (1st Dep't 2003).

Energy Plus argues that the challenged statements are either puffery or are not misleading. In cases involving deceptive marketing material, the "entire mosaic should be viewed rather than each tile separately." Time Warner Cable, Inc. v. DirecTV, Inc., 475 F.Supp.2d 299, 305 (S.D.N.Y. 2007).

1  Viewed together the allegedly deceptive statements plausibly
2  may be read by a reasonable consumer as a representation that
3  Energy Plus' prices are at least relatively comparable both to
4  competitors' prices and to prevailing market rates.  Given that
5  the plaintiffs have alleged that Energy Plus' rates in fact are
6  two to three times greater and that Energy Plus' rates rise or
7  remain steady during some periods when market prices decline,
8  the plaintiffs have stated a plausible claim that the
9  challenged statements are deceptive.  Further, Energy Plus'
10 failure to disclose the alleged truth about its prices
11 plausibly renders its other statements misleading.
12 Accordingly, the plaintiffs have stated a claim based on Energy
13 Plus' omissions.  See Henry v. Rehab Plus, Inc., 404 F.Supp.2d
14 435, 445 (E.D.N.Y. 2005).
15           The plaintiffs also adequately allege that Energy
16 Plus' misstatements are material by alleging that price is the
17 most important consideration for energy consumers.  The
18 plaintiffs need not plead reliance on Energy Plus' statements.
19 Stutman v. Chemical Bank, 95 N.Y.2d 24, 29 (2000).  However,
20 the plaintiffs have failed to adequately plead that Energy
21 Plus' misstatements caused their injury because there's no
22 allegation that the named plaintiffs believed that they would
23 be charged less than they actually were.  See Stutman, 95
24 N.Y.2d at 30.  Accordingly, the plaintiffs' sections 349 and
25 349-d(3) claims are dismissed without prejudice to replead that

1     Energy Plus' misstatements caused their injury.

2             With regard to plaintiff's allegation that Energy Plus
3     has failed to clearly and conspicuously identify its variable
4     charges as required by Section 349-d(7), Energy Plus' motion to
5     dismiss is granted.  The statute requires that variable charges
6     be "identified," not that they be "explained," or that their
7     "basis" be identified.  Section 349-d elsewhere makes a
8     distinction between the obligation to identify and the
9     obligation to explain.  See N.Y. General Business Law Section
10    349-d(2).  Further, there is little in the legislative history
11    of the statute or in the Public Service Commission's
12    regulations (known as the Uniform Business Practices) to
13    clearly suggest that Section 349-d(7) is meant to address the
14    content of an energy supply company's identification of its
15    variable charges rather than the plain fact that they are
16    variable.  Most of the references to Section 349-d(7) and the
17    legislative history merely mimic the language of the statute.
18    In any event, where, as here, the proper interpretation of a
19    statute is "dependent only on accurate apprehension of
20    legislative intent" rather than on an agency's specialized
21    knowledge or expertise, an agency's interpretation of the
22    statute is afforded little weight.  Kurcsics v. Merchants
23    Mutual Insurance Co., 403 N.E.2d 159, 163 (N.Y. 1980).  And
24    while the purpose of Section 349-d is to protect consumers and
25    allow them to make informed decisions, it is not unreasonable

1    to think that the New York legislature believed that those
2    roles could be advanced when a consumer is clearly made aware
3    that a particular charge is variable.
4           There is no allegation here that Energy Plus'
5    statements are buried in fine print, illegible, or otherwise
6    hidden from consumers, and, for whatever the statements lack in
7    detail, they plainly identify that Energy Plus' supply prices
8    are variable.  Under these circumstances, the plaintiffs have
9    failed to state a claim that Energy Plus violated its
10   obligation to clearly and conspicuously identify its variable
11   charges.
12          Finally, Energy Plus' motion to dismiss the
13   plaintiffs' unjust enrichment claim is granted.  "Unjust
14   enrichment is an equitable claim that is unavailable where an
15   adequate remedy at law exists."  Fed. Treasury Enter.
16   Sojuzplodoimport v. Spirits Int'l N.V., 400 F.App'x 611, 613
17   (2d Cir. 2010).  Here, the plaintiffs have an adequate remedy
18   at law under the consumer protection statutes.  Thus, their
19   unjust enrichment claim is dismissed.
20          This constitutes the decision of this Court.  I will
21   enter a short order on the docket.  You have a discovery
22   schedule that's in place.  So continue to proceed with it, and
23   to the extent that the plaintiff repleads on the reliance issue
24   as directed by this Court, that amended complaint should be
25   filed within two weeks.  And because I've dismissed certain

C3nWwisC

1   claims, don't replead them.
2            Anything further?
3            MR. TOWEY:  No.  Thank you, your Honor.
4            MR. BLANKINSHIP:  No.  Thank you, your Honor.
5            THE COURT:  All right.  Have a good weekend.
6            (Proceedings adjourned)