UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANGELA WISE and GIDEON ROMM, on
behalf of themselves and all others similarly
situated,

                  Plaintiffs,

    v.

ENERGY PLUS HOLDINGS LLC,

                Defendant.

Civil Action No. 11-7345

**MEMORANDUM OF LAW IN SUPPORT OF UNCONTESTED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. iii

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND OF THE LITIGATION ...........................................................3

III.    SUMMARY OF THE SETTLEMENT ...............................................................7

IV.     STANDARDS FOR APPROVAL OF A CLASS ACTION SETTLEMENT .................11

V.      THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE
        SETTLEMENT AGREEMENT .........................................................................13

        A.    The Litigation Is Complex And Will Be Expensive And Lengthy ......................13

        B.    The Reaction Of The Class Will Likely Be Positive .............................................14

        C.    The Late Stage Of The Instant Litigation And The Extensive
              Discovery That Has Occurred Favors Preliminary Approval................................14

        D.    Plaintiffs Face Substantial Hurdles In Establishing Liability................................15

        E.    Plaintiffs Face Substantial Hurdles In Proving Damages.......................................16

        F.    Maintaining The Class Action Through Trial May Be Challenging.....................17

        G.    The Defendant May Not Be Able To Withstand A Substantially
              Greater Judgment...................................................................................................18

        H.    The Settlement Amounts Are Reasonable In Light Of The Best
              Possible Recovery And In Light Of All The Attendant Risks
              Of Litigation .........................................................................................................18

VI.     THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASS .........................20

        A.    The Settlement Class Satisfies Rule 23(a).............................................................21

              1.    The Class Is So Numerous That Joinder Of All Members
                    Is Impracticable .........................................................................................21

              2.    There Are Questions Of Law Or Fact Common To
                    The Class .....................................................................................................21

# TABLE OF CONTENTS
## (Cont'd)

|  |  | | Page |
|---|---|---|---|
| 3. | The Plaintiffs' Claims Are Typical Of The Claims Of The Class | 22 | |
| 4. | Plaintiffs Will Fairly And Adequately Protect The Interests Of The Class | 23 | |
| 5. | Class Members Are Readily Identifiable And Ascertainable | 24 | |
| B. | The Settlement Class Satisfies Rule 23(b)(3) | 24 | |
| 1. | Common Questions Predominate Over Individual Issues | 24 | |
| 2. | A Class Action Is A Fair And Efficient Method For Adjudicating This Controversy | 25 | |
| VII. | PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL | 26 | |
| VIII. | THE PROPOSED CLASS NOTICE IS APPROPRIATE | 27 | |
| IX. | CONCLUSION | 28 | |

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

Amchem Products, Inc. v. Windsor,
    521 U.S. 591 (1997) ..................................................................................................24

Ayzelman v. Statewide Credit Services Corp.,
    238 F.R.D. 358 (E.D.N.Y. 2006) ...........................................................................20

Bildstein v. MasterCard Int'l Inc.,
    329 F. Supp. 2d 410 (S.D.N.Y. 2004) .....................................................................22

Brooklyn Ctr. for Independence of the Disabled v. Bloomberg,
    No. 11-6690, 2012 WL 5438849 (S.D.N.Y. Nov. 7, 2012) ......................................23

Cagan v. Anchor Sav. Bank FSB,
    No. 88-3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990)........................................18

City of Detroit v. Grinnell Corp.,
    495 F.2d 448 (2d Cir. 1974) ..........................................................................13, 18

Consol. Rail Corp. v. Town of Hyde Park,
    47 F.3d 473 (2d Cir. 1995) ......................................................................................21

D'Alauro v. GC Services Ltd. P'ship,
    168 F.R.D. 451 (E.D.N.Y. 1996) ............................................................................22

Danieli v. IBM,
    No. 08-3688, 2009 WL 6583144 –5 (S.D.N.Y. Nov. 16, 2009) ...............................12

deMunecas v. Bold Food, LLC,
    No. 09-00440, 2010 WL 2399345 (S.D.N.Y. Apr. 19, 2010).................................26

Denney v. Deutsche Bank AG,
    443 F.3d 253 (2d Cir. 2006) ...................................................................................20

Dura–Bilt Corp. v. Chase Manhattan Corp.,
    89 F.R.D. 87 (S.D.N.Y. 1981)................................................................................22

F.T.C. v. Windward Mktg., Inc.,
    No. 96-615, 1997 WL 33642380 (N.D. Ga. Sept. 30, 1997) ...................................23

**TABLE OF AUTHORITIES**
(Cont'd)

**Cases**                                                                    **Page**

Galvan v. KDI Distribution Inc.,
    No. 08-0999, 2011 WL 5116585 (C.D. Cal. Oct. 25, 2011) ......................................................23

Guzman v. VLM, Inc.,
    No. 07-1126, 2008 WL 597186 (E.D.N.Y. Mar. 2, 2008) ...................................................24, 25

In re "Agent Orange" Prod. Liab. Litig.,
    611 F.Supp. 1396 (E.D.N.Y. 1985) ........................................................................................19

In re Austrian & German Bank Holocaust Litig.,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ..........................................................................15, 13, 18

In re EVCI Career Colleges Holding Corp. Sec. Litig.,
    No. 05-10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .................................................12

In re Joint Eastern and Southern Asbestos Litigation,
    129 B.R. 710 (S.D.N.Y. 1991) ................................................................................................21

In re Med. X-Ray,
    No. 93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ......................................................18

In re Michael Milken and Associates Sec. Lit.,
    150 F.R.D. 57 (S.D.N.Y. 1993) ...............................................................................................18

In re PaineWebber Ltd. Partnerships Litig.,
    171 F.R.D. 104 (S.D.N.Y. 1997) .............................................................................................15

In re Traffic Executive Ass'n,
    627 F.3d 631, 634 (2d Cir. 1980) ............................................................................................12

In re Visa Check/MasterMoney Antitrust Litig.,
    280 F.3d 124 (2d Cir. 2001) ....................................................................................................24

Jankowski v. Castaldi,
    No. 01-0164, 2006 WL 118973 (E.D.N.Y. Jan. 13, 2006).....................................................25

Marisol A. v. Giuliani,
    126 F.3d 372 (2d Cir. 1997) ....................................................................................................20

Martens v. Smith Barney, Inc.,
    181 F.R.D. 243 (S.D.N.Y. 1998)..............................................................................................15

Plummer v. Chemical Bank,
668 F.2d 654 (2d Cir. 1982) ..................................................................................15

## TABLE OF AUTHORITIES
### (Cont'd)

**Cases**                                                                                           **Page**

Port Authority Police Benevolent Ass'n v. Port Authority,
698 F.2d 150 ...........................................................................................................21

Reade–Alvarez v. Eltman, Eltman & Cooper, P.C.,
237 F.R.D. 26 (E.D.N.Y. 2006) .....................................................................20, 27

Robidoux v. Celani,
987 F.2d 931 (2d Cir. 1993) .................................................................................22

Rossini v. Ogilvy & Mather, Inc.,
798 F.2d 590 (2d Cir. 1986) .................................................................................25

Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.,
No. 01-11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004).............................19

Trief v. Dun & Bradstreet Corp.,
144 F.R.D. 193 (S.D.N.Y. 1992)..........................................................................21

Wal-Mart Stores v. Visa U.S.A.,
396 F.3d 96 (2d Cir. 2005) .............................................................................11, 12

Weinberger v. Kendrick,
698 F.2d 61 (2d Cir. 1982) ...................................................................................12

**Statutes**

New York General Business Law § 349...............................................................2,4

New York General Business Law § 349d..........................................................2,4,19

**Rules**

Fed. R. Civ. P. 23 ............................................................................... *passim*

Plaintiffs Angela Wise and Gideon Romm hereby submit this Memorandum of Law in support of their motion for preliminary approval of the class action settlement pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3).

## I.    INTRODUCTION.

Plaintiffs respectfully request that the Court grant preliminary approval of the proposed settlement of this consumer class action.   After extensive and hard-fought litigation, which included motion practice and substantial discovery, and after extended settlement negotiations that took place over an eight-month span, the Plaintiffs and Energy Plus Holdings LLC have agreed to settle this action.  In addition to the parties in the instant action, counsel for the Plaintiffs in the remaining Energy Plus Lawsuits have indicated that their clients also agree to the Settlement, which includes Energy Plus's wholly-owned subsidiary, Energy Plus Natural Gas LLC, f/k/a Energy Plus Natural Gas L.P.[1]  Energy Plus Holdings LLC, together with Energy Plus Natural Gas LLC, are collectively referred to herein as "Energy Plus."  Plaintiffs' goals in this consumer protection lawsuit were to end what they viewed as misleading representations regarding the rates charged by Energy Plus for electricity and natural gas and to provide appropriate monetary relief to customers of Energy Plus.  Plaintiffs believe that the Settlement Agreement substantially achieves those goals without the risks inherent in continued litigation.

Plaintiffs alleged that Energy Plus, an independent energy supply company (or "ESCO"), made misleading representations, contrary to its obligations under New York General Business

---

[1] The "Energy Plus Lawsuits" refers collectively to the following related actions: Fortney v. Energy Plus Holdings LLC, No. 12-8119-WHP (S.D.N.Y.); Yu v. Energy Plus Holdings LLC, No. 2:12-cv-02627 (D. N.J.); Faistl v. Energy Plus Holdings LLC, No. 8:12-cv-02355 (D.N.J.) (consolidated with Yu action); Harley v. Energy Plus Holdings LLC, No. 121000077 (Phila. C.P.); and Taylor v. Energy Plus Holdings LLC, No. 121000704 (Phila. C.P.).  The Settlement Agreement will resolve the claims in these five other Energy Plus Lawsuits.  Both of the two consolidated cases in New Jersey also sought relief against Energy Plus Natural Gas LLC, f/k/a Energy Plus Natural Gas L.P.  Counsel for all of the named plaintiffs in these suits have indicated that their clients support the Settlement Agreement (a copy of which is attached as Exhibit A) and agree to dismiss their claims.

Law ("G.B.L.") § 349 and § 349-d.  Second Amended Complaint ("Complaint") ¶¶ 1-3.
Plaintiffs also alleged that Energy Plus's rates were not "market-rate," but were higher than
prevailing market rates.  Complaint ¶ 16.  Plaintiffs also alleged that Energy Plus's rates were not
reflective of the market because rates sometimes rose or remained steady when prevailing
average market rates declined.  Complaint ¶ 17.

 Energy Plus denied these allegations and contended that its rates were adequately
disclosed and reasonably related to the relevant markets for electric and gas service, especially in
light of the valuable rewards, such as airline miles and cash-back programs, that Energy Plus
makes available to these consumers.

 The parties conducted extensive formal discovery relating to the allegations contained in the
Complaint, and Energy Plus voluntarily provided substantial additional informal discovery in
connection with the parties' settlement negotiations, including detailed information regarding the
number of potential class members, the average rates they paid over time in each of the states in
which Energy Plus sells electricity and natural gas, and the average monthly charge customers paid
for electricity and natural gas supplied by Energy Plus.  Defendant also provided detailed information
regarding the composition of the class in terms of the number of invoices customers received for
electricity and natural gas supplied by Energy Plus and information regarding rewards programs.
This information allowed Plaintiffs to assess the potential damages incurred by the class, as well as
the fairness of the settlement.  Following numerous and detailed discussions, the parties entered into
the Settlement Agreement, resolving all of the claims asserted in the action.

 Thus, Plaintiffs hereby apply for the entry of an order that will:  (1) preliminarily approve the
settlement; (2) conditionally certify the proposed class described in the Settlement Agreement (the
"Settlement Class") for purposes of the settlement; (3) name Plaintiffs and their counsel, D. Greg

Blankinship and Meiselman, Packman, Nealon, Scialabba & Baker P.C. ("Meiselman Packman"), respectively, as Representative Plaintiffs and Class Counsel for the Settlement Class; (4) direct that notice be given to all Settlement Class Members of the settlement pursuant to the terms of the Settlement Agreement; (5) find that such notice constitutes the best notice practicable under the circumstances; (6) schedule various dates for requirements and/or obligations of the parties and Settlement Class members as more fully described in the proposed Order filed concurrently herewith; and (7) set a hearing date for the final approval of the proposed settlement and an award of attorneys' fees and costs.

Plaintiffs submit that the Court has good cause to grant preliminary approval of this settlement, which is the product of several months of arm's-length negotiations by experienced counsel. The resulting settlement is a fair, reasonable and adequate resolution of all claims. Preliminary approval of the settlement and conditional certification of the Settlement Class will allow the parties to notify putative class members of the settlement and of their right to object or opt out. Preliminary approval does not require the Court to rule on the ultimate fairness of the settlement, but only to make a "preliminary determination" of the "fairness, reasonableness, and adequacy" of the proposed settlement. See Federal Judicial Center, Manual for Complex Litigation, § 21.632 (4th ed. 2004). As set forth herein, the Court should order notice of the settlement to be sent to class members, as the settlement is fair and reasonable, and the form of the notice is the most practicable under the circumstances and comports with due process.

## II.    BACKGROUND OF THE LITIGATION.

Before bringing the instant action, Plaintiffs' counsel exhaustively investigated Plaintiffs' claims and independently obtained copies of the relevant contractual terms and conditions, as well as samples of Defendant's marketing materials. Plaintiffs' counsel also identified the

relevant energy markets and the rates available from local utilities and other independent ESCOs.
Declaration of D. Greg Blankinship ("Blankinship Dec.") ¶ 3.

With this information in hand, Plaintiff Angela Wise filed a class action complaint
against Energy Plus on October 18, 2011, and an Amended Complaint on January 11, 2012,
which named Gideon Romm as a second representative plaintiff. Defendant filed a motion to
dismiss Plaintiffs' complaint, which this Court granted without prejudice as to Plaintiff's G.B.L.
§ 349 claim and with prejudice as to Plaintiffs' G.B.L. § 349-d(7) and unjust enrichment claims.

On April 5, 2012, Plaintiffs filed a Second Amended Complaint, and on April 19, 2012,
Defendant filed an Answer. Plaintiffs' Second Amended Complaint alleges causes of action for
violation of G.B.L. § 349 and § 349d(3,10).

On August 8, 2012, plaintiff Jim Fortney filed a class action complaint styled <u>Fortney v.
Energy Plus Holdings LLC</u>, Civil Action No. 12-cv-02355, in the United States District Court
for the District of Maryland, Greenbelt Division (the "Fortney Action"). Plaintiff Fortney filed
an Amended Complaint on or about October 25, 2012, in which he alleges that Energy Plus
violated state consumer protection laws entitling him and the class to damages and injunctive
relief. The parties agreed to voluntarily transfer the Fortney Action to this Court, after which it
was accepted as a related case to the Wise Action and where it bears the docket number 12-cv-
08119 (WHP). The parties were preparing a motion to consolidate the Wise and Fortney Actions
when they reached an agreement on the proposed settlement.

The parties timely commenced formal discovery including written interrogatories and
document requests. Blankinship Dec. ¶¶ 4, 11.

Defendant responded to Plaintiffs' discovery requests, initially providing representative
samples of Defendant's advertising during the proposed class period, records relating to Plaintiffs,

information regarding Defendant's electronic records and reservation systems, and the roles of Defendant's relevant personnel. Blankinship Dec. ¶ 4. The parties held a number of discovery conferences aimed at refining the information requests, which culminated in Defendant's providing a large ESI production of more than 829,000 files, containing additional examples of Energy Plus's marketing materials, customer agreements, and internal emails and other communications regarding Energy Plus's marketing and the process by which it sets its rates. Blankinship Dec. ¶ 6. Plaintiffs' counsel expended significant time and effort to review this ESI production to identify documents they intended to rely upon in their prosecution of this action. Blankinship Dec. ¶ 7.

As part of their investigation, and in preparation for their class certification motion and for a trial on the merits, Plaintiffs also engaged the services of Dr. Frank Felder, who is the Director of the Center for Energy, Economic & Environmental Policy at the Rutgers University Edward J. Bloustein School of Planning and Public Policy. Blankinship Dec. ¶ 8. Dr. Felder provided his expertise with respect to the manner in which Energy Plus determined its rates, and he assisted Plaintiffs in determining the extent to which Energy Plus's rates were in excess of other ESCOs and local utilities. Blankinship Dec. ¶ 8. In preparation for Dr. Felder's expert report, and to collect pricing data in anticipation of a class certification motion and to determine class-wide damages, Plaintiffs' counsel took the deposition of Hugh Scott, Energy Plus's Chief Information Officer, to identify the availability and reliability of Energy Plus's relevant electronic data, as well as the most efficient means by which such data could be collected and utilized. Blankinship Dec. ¶ 9. The parties subsequently expended substantial effort to establish a protocol for the production of the millions of lines of data necessary for Dr. Felder's analysis and for Plaintiffs' damages calculations. Blankinship Dec. ¶ 10.

Defendant served interrogatories and document demands on Plaintiffs, who responded to the discovery, providing information regarding their purchases of electricity from Energy Plus and the rewards they received. Blankinship Dec. ¶ 11. Defendant also served a subpoena on a third party, Consolidated Edison Company of New York, the utility that provided billing and delivery service for Plaintiffs' residential electricity accounts. Blankinship Dec. ¶ 12. Furthermore, the parties engaged in informal discovery in connection with settlement negotiations, which, as detailed above, included the provision of the number of potential class members, the average rates they paid over time in each of the states in which Energy Plus sells electricity and natural gas, and the average monthly charge customers paid for electricity and natural gas supplied by Energy Plus, as well as information regarding the number of invoices customers received for electricity and natural gas supplied by Energy Plus. Blankinship Dec. ¶ 14. As a result of their discovery efforts, both sides were able to enter into settlement negotiations with an informed view of the strengths and weaknesses of their prospective cases, and with a basis for determining what form of monetary and injunctive relief would be reasonable and appropriate in the settlement context.

The parties conducted a series of detailed negotiations regarding possible settlement terms, beginning in the spring of 2012 and continuing through December 2012, including two all-day face-to-face sessions in August and December respectively. Blankinship Dec. ¶¶ 14-15. These negotiations culminated in a tentative settlement agreement, which was finalized and signed on February 28, 2013. Altogether, the proposed settlement is the result of several months of arm's-length and rigorous negotiations between experienced counsel, with the benefit of their clients' involvement, all of whom are thoroughly familiar with the issues involved in this action.

III.   **SUMMARY OF THE SETTLEMENT.**

The gravamen of Plaintiffs' Complaint is that Energy Plus represented that its rates reflected competitive prices in the market when those rates were often higher than average market rates. Energy Plus contends that its disclosures with regard to rates were accurate and not misleading, and also that its rates were commensurate with rates charged in the relevant markets. Both parties have investigated the facts and analyzed the relevant legal issues. While Plaintiffs and their counsel believe that the claims asserted have merit, Defendant disputes the factual allegations made by Plaintiffs, denies liability with respect to any of the claims alleged by Plaintiffs, and will contest class certification should the case proceed. Plaintiffs have weighed the costs and benefits to be obtained under the Settlement Agreement as balanced against the costs, risks and delays associated with the continued prosecution of this complex and time-consuming litigation and the likely appeals of any rulings in favor of either the Settlement Class or the Defendant. As a result, Plaintiffs believe that the Settlement Agreement provides substantial benefits to the Settlement Class, and is fair, reasonable, adequate and in the best interests of Plaintiffs and the Settlement Class. Against this backdrop, and in the interest of avoiding protracted and costly litigation, the parties have agreed to a proposed settlement as described below.

Depending on the choices Settlement Class members may make between various alternatives, the Settlement Agreement commits Energy Plus to making between $9,178,451.00 and $11,014,142.00 available for claims made by Settlement Class members. Based on the state in which class members reside and the number of bills they received from Energy Plus, class members (other than those who only received one bill from Energy Plus) are eligible to receive

up to $101 dollars in cash (the "Cash Option").[2]  <u>See</u> Settlement Agreement pp. 6-7.  Class

members in New York (the state in which plaintiffs determined that Energy Plus's rates during

the Class Period were the highest in relation to some local utilities and certain other ESCOs, and

the state with the largest number of class members) receive a minimum of $20.00.  <u>Id.</u>  The

average settlement amount for the entire class of approximately 400,000 is approximately

$23.00.

    While every class member can choose a cash payout, the Settlement Agreement offers

added value to class members who choose other available options, each of which offers a

significant premium over the Cash Option.  <u>First</u>, Settlement Class members may choose a gift

certificate redeemable for merchant gift cards at a value equal to the Cash Option rounded up to

the nearest $5.00.  Settlement Agreement p.13.  For example, a class member from Connecticut

eligible for $16.00 under the Cash Option, could choose to receive a gift card for $20.  The result

is an average premium of 8.25% over the Cash Option should all class members choose the gift

certificate option.  Given that many Energy Plus customers choose to participate in merchant

rewards programs, this option is anticipated to be especially attractive to Settlement Class

members.

    <u>Second</u>, Settlement Class members can choose to participate in a "cash back" program

through which they will receive, at the end of 12 consecutive months of future service from

Energy Plus, a 15% (in the case of electric supply) or 20% (in the case of gas supply) premium

over the Cash Option.  Settlement Agreement p. 13.  For example, a New York class member

---

[2]  The vast majority of Energy Plus customers received a "bonus" in the form of airline miles or other reward points
for enrollment.  Because that bonus was in almost every case more valuable than any alleged overcharge incurred
from just one Energy Plus bill, and because most customers received an introductory rate that was below
comparable market rates, the parties concluded that class members who paid just one bill could not have been
injured, even if Plaintiffs' factual allegations are correct.  Such class members who are current customers
nevertheless receive a benefit from the Settlement Agreement in as much as they receive notice that their rates in the
future may be higher than expected.

eligible for $89.00 under the Cash Option, could elect to receive $102.35 under the cash back option.  Numerous Energy Plus customers already participate in similar "cash-back" programs.  Settlement Class members choosing this option will have to remain customers of Energy Plus for one year; former customers will be allowed to re-enroll with Energy Plus under its fixed rate program and take advantage of this "cash-back" option.[3]

Third, for Energy Plus's electricity customers, a "green" option is available that will give such class member a 20% premium over the Cash Option, valued at Energy Plus's retail rate for its "green" product add-on, to be fulfilled through renewable energy credit purchases used to offset actual customer usage.  Settlement Agreement pp. 13-14.  This is a valuable option to many class members concerned about the environmental impact of electricity generation by fossil fuels.  Should all class members choose the options offering the greatest value, the potential aggregate value of the Settlement Agreement will be $11,014,142.00.

Energy Plus has also agreed to make changes to its disclosures with regard to its rates.  In particular, beginning on August 1, 2012, and for twenty-four consecutive months thereafter:

- Energy Plus will delete the Frequently Asked Question ("FAQ") entitled "Will I save money with Energy Plus", which previously referenced  sales tax based savings in a manner that Plaintiffs contend resulted in consumer confusion regarding potential overall savings.

- Energy Plus will no longer state that it buys electricity every day at the best possible price when providing an answer to the FAQ that typically appears in its solicitations entitled "What will my rate be with Energy Plus?"  Instead, Energy Plus will answer any such question by describing the variable nature of the rate and shall include the following phrase or language substantially similar thereto:  "The price may be higher than your local utility."  Energy Plus will also cease answering this question with the statement that customers are "getting the best possible price."

---

[3]  Through post-settlement discovery and investigation, Plaintiffs' counsel will confirm that the rates offered by Energy Plus under its fixed rate program are in fact competitive with applicable market rates.

- Energy Plus shall cease use of the phrase "no risk," unless it is clear that the statement relates only to the process of switching from the utility to Energy Plus.  Plaintiffs contend that reasonable consumers would otherwise believe that the phrase "no risk" means that they are not at risk of paying high prices.

- Energy Plus will also conduct annual compulsory training for its marketing staff, to be conducted by outside counsel.

The Settlement Agreement also provides value to existing Energy Plus customers, because the class notice will alert them to the need to review Energy Plus's disclosures and to verify that Energy Plus's service and rates best meet their needs.  This is a real and tangible benefit to hundreds of thousands of Energy Plus's current customers.

In addition, Defendant has agreed to separately pay the costs of providing notice and administering the Settlement Agreement up to $300,000.00, including processing requests for exclusion ("Administration Costs").  With the consent of Energy Plus, Plaintiffs have selected Kurtzman Carson Consultants LLC as the settlement administrator ("Settlement Administrator").

Furthermore, Defendant has agreed not to object to an application by Plaintiffs' counsel for up to three million, three hundred thousand dollars ($3,300,000) in attorneys' fees, costs and other litigation expenses, and to pay an award the Court approves up to that amount, which is separate and apart from the benefit to be received by class members and in no way diminishes their recovery.  The allowance or disallowance by the Court of the application by class counsel for attorneys' fees will not be a basis for rescinding the Settlement Agreement.  Defendant has also agreed to pay an incentive award to Plaintiffs Angela Wise and Gideon Romm in the amount of four thousand dollars ($4,000),[4] and awards of two thousand ($2,000) for the remaining named plaintiffs in the Energy Plus Lawsuits, in recognition of their time and effort in this action, subject to Court approval.  These amounts will

---

[4] The proposed incentive awards for Plaintiffs Angela Wise and Gideon Romm are higher than the proposed awards for other plaintiffs because they were involved in the litigation for a longer period of time and because they participated in discovery.

also be separate and in addition to the amount Defendant has agreed to make available to pay claims of Settlement Class members, and will in no way diminish their recovery.  Settlement Agreement pp. 15-16.

In return for making these settlement benefits available to all Settlement Class members, the Settlement Class members' claims against Energy Plus will be dismissed with prejudice and all Settlement Class members (other than those who opt-out of the Settlement Class) will release and be permanently barred from pursuing any claims in accordance with the provisions of the Settlement Agreement.

The benefits to Settlement Class members set forth above are commensurate with the facts of the case.  The terms of the proposed settlement constitute a fair and reasonable settlement of Plaintiffs' and the Settlement Class's claims.

## IV.    STANDARDS FOR APPROVAL OF A CLASS ACTION SETTLEMENT.

Rule 23(e) governs the settlement of class actions. The Rule provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).  Compromise and settlement of class actions suits is favored.  See Wal-Mart Stores v. Visa U.S.A., 396 F.3d 96, 116 (2d Cir. 2005) (emphasizing the "strong judicial policy in favor of settlements, particularly in the class action context") (quotation omitted); see also Herbert B. Newberg & Alba Conte, Newberg on Class Actions ("Newberg"), § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").  Thus, at the preliminary approval stage, the Court need only "make a preliminary determination of the fairness, reasonableness and adequacy of the settlement" so that notice of the settlement may be given to the Class and a fairness hearing may be scheduled to make a final determination regarding the fairness of the

Settlement.  See Newberg § 11.25; Manual for Complex Litigation §21.632.   The Court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." In re Traffic Executive Ass'n, 627 F.3d 631, 634 (2d Cir. 1980); Newberg § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members); see also Danieli v. IBM, No. 08-3688, 2009 WL 6583144, at *4–5 (S.D.N.Y. Nov. 16, 2009) (granting preliminary approval where settlement "has no obvious defects" and proposed allocation plan is "rationally related to the relative strengths and weaknesses of the respective claims asserted.").

Moreover, "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." Wal-Mart Stores, 396 F.3d at 116 (quoting Manual for Complex Litigation (Third) § 30.42 (1995)) (internal quotations marks omitted).  Where a settlement is achieved through arm's-length negotiations by experienced counsel and there is no evidence of fraud or collusion, "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." In re EVCI Career Colleges Holding Corp. Sec. Litig., No. 05-10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).  "The central question raised by the proposed settlement of a class action is whether the compromise is fair, reasonable and adequate.  There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation." Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982) (citation omitted).

## V. THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE SETTLEMENT AGREEMENT.

When evaluating the fairness and adequacy of a proposed class settlement, courts in this

Circuit are guided by the factors enunciated in City of Detroit v. Grinnell Corp., 495 F.2d 448

(2d Cir. 1974) (abrogated on other grounds).  Those factors are:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class; (3) the stage of the proceedings and
> the amount of discovery completed; (4) the risks of establishing
> liability; (5) the risks of establishing damages; (6) the risks of
> maintaining the class action through the trial; (7) the ability of the
> defendant to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible
> recovery; and (9) the range of reasonableness of the settlement
> fund to a possible recovery in light of all the attendant risks of
> litigation.

Grinnell, 495 F.2d at 463.  These factors heavily weigh in favor of granting preliminary approval

to the Settlement Agreement.

### A. The Litigation Is Complex And Will Be Expensive And Lengthy.

The Settlement Agreement provides substantial monetary and prospective benefits to the

Settlement Class while avoiding the significant expenses and delays attendant to discovery and

motion practice related to summary judgment and class certification.  Indeed, "[m]ost class

actions are inherently complex and settlement avoids the costs, delays and multitude of other

problems associated with them." In re Austrian & German Bank Holocaust Litig., 80 F. Supp.

2d 164, 174 (S.D.N.Y. 2000).  The Settlement Class includes approximately 400,000 consumers

who are current or former Energy Plus customers during a period of almost seven years in nine

different states.  Having to engage in motion practice with respect to the consumer protection

laws of nine states would be extremely time consuming and expensive.  Moreover, while

Defendant has produced more than 800,000 files in this litigation, not counting information

informally shared in the settlement negotiations, Defendant has not yet produced data relating to each of the billing periods for the estimated 400,000 class members. That exercise alone, and the subsequent related expert reports and potential discovery disputes, will result in expenditure of substantial time and expense by both parties. While Plaintiffs are confident that the result of that exercise would support its legal theories, such a result is not certain.

Moreover, continued litigation would necessitate numerous additional depositions of both named plaintiffs and Defendant's personnel. Indeed, absent an approved settlement, Defendant and the plaintiffs in the Energy Plus Lawsuits will be forced to continue litigation, which will burden the three different courts hearing those cases. The resulting fact-intensive trials will also result in significant expenses to all parties. Any judgment will likely be appealed, extending the costs and duration of the litigation. The Settlement Agreement, on the other hand, will result in prompt and equitable payments to the Settlement Class. Thus, this factor weighs in favor of settlement.

**B.      The Reaction Of The Class Will Likely Be Positive.**

While the reaction of absent class members cannot be conclusively gauged until notice has been sent, the fact that all of the named plaintiffs and their experienced counsel in this case and the five Energy Plus Lawsuits support the Settlement Agreement is a strong indication that members of the Settlement Class will also view it positively.

**C.      The Late Stage Of The Instant Litigation And The
          Extensive Discovery That Has Occurred Favors Preliminary Approval.**

The legal issues in this case have been thoroughly vetted through Defendant's aggressive motions to dismiss in the instant litigation and in the Energy Plus Lawsuits. Moreover, Plaintiffs' counsel and Defendant have engaged in extensive discovery, including initial disclosures, the exchange of written discovery (and Defendant's subsequent supplementation of

14

its interrogatory responses), and the deposition of Defendant's Chief Information Officer regarding the form and reliability of Defendant's data (required for the parties' expert reports and damages analyses). Plaintiffs' counsel conducted a detailed review of Defendant's document production, and the parties engaged in numerous discovery conferences relating to the adequacy of the parties' production and the scope of future productions. Indeed, the discovery required in this case was so extensive that the parties were forced to seek two extensions of time. Thus, the amount of discovery exceeded that required by the case law. See In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) ("'To approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery . . . it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.' Additionally, 'the pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit.'") (citing Plummer v. Chemical Bank, 668 F.2d 654 (2d Cir. 1982) and quoting Martens v. Smith Barney, Inc., 181 F.R.D. 243, 263 (S.D.N.Y. 1998)).

**D.    Plaintiffs Face Substantial Hurdles In Establishing Liability.**

The Settlement Agreement should be preliminarily approved because Plaintiffs face substantial hurdles in establishing liability. Indeed, "[l]itigation inherently involves risks." In re PaineWebber Ltd. Partnerships Litig., 171 F.R.D. 104, 126 (S.D.N.Y. 1997).

First, Energy Plus argues that its disclosures with regard to its rates, particularly those contained in the customer agreements that were provided to class members, adequately disclose the variable nature of its rates. Second, Energy Plus argues that a consumer has no right to pay "competitive" or "market rate" prices in a free market place, and that its rates are reasonable in light

15

of the valuable rewards its customers enjoy.  Third, Energy Plus successfully moved to dismiss Faistl

v. Energy Plus Holdings LLC, No. 8:12-cv-02355 (D.N.J.), on the basis that it does not promise that

consumers will enjoy savings, and therefore its advertising materials are not deceptive.  Fourth,

Defendant argues that its customers who have been enrolled with Energy Plus for considerable time

should not recover, because they value the Energy Plus rewards and have voluntarily paid the rates in

question, of which they must be aware.   If Defendant can prove these claims, establishing liability

will be quite difficult.

Plaintiffs' counsel is confident in its ability to prove Plaintiffs' case.  Nonetheless, the

Settlement Agreement avoids the risks inherent in further litigation, and therefore this factor weighs

in favor of preliminary approval.

**E.      Plaintiffs Face Substantial Hurdles In Proving Damages.**

In order to prove damages, Plaintiffs must prove that Defendant's rates are not competitive or

commensurate with those otherwise available in the relevant markets; that Energy Plus's marketing

materials represented falsely that they would be; and that the disclosures made by Energy Plus in

connection with its marketing and contracts were insufficient.  This is an expensive and challenging

task.  First, while Plaintiffs are confident that their expert can collect and collate pricing data in such

a way that class and individual damages can be determined, that task is immense.  Not only are there

nine states involved, but rates vary within states based on the local utility, and rates vary over time.

Not only must Plaintiffs' expert collect and collate data from Energy Plus with regard to its rates, but

he must also collect data regarding the historical rates charged by local utilities and other ESCOs to

identify what the applicable "market rate" should have been.  While much of this information is

publicly available, some pricing data would have to be obtained via third party subpoenas which

might be contested, given the sensitivity that many companies have regarding pricing data.  Second,

16

Defendant contends that the relevant market for its rates is not determined by the rates local utilities charge but instead by what other ESCOs charge. There are at least some ESCOs that charge higher rates than Energy Plus, thus lending credence to the claim that its rates are commensurate with relevant market rates. Third, any calculation of damages must take into account the rewards Energy Plus customers receive, and those rewards vary over time and in value. Thus, there are substantial obstacles Plaintiffs must overcome to prove damages in this case, a factor favoring approval of the Settlement Agreement.

**F.      Maintaining The Class Action Through Trial May Be Challenging.**

Plaintiffs are confident in their ability to maintain this action as a class through trial. Nonetheless, they recognize that there are substantial hurdles in being able to do so. First, Energy Plus has used a variety of advertisements and solicitations to enroll its customers. While Plaintiffs' confidence is based upon careful review of Energy Plus's advertisements used during the Class Period in the various states in which it sold energy (Blankinship Dec. ¶ 5), Energy Plus points to differences between the advertisements that it asserts preclude certification of a class and disputes the extent to which those advertisements raise common questions of law and fact that predominate over individual issues, making the proposed settlement a fair and adequate alternative to continued litigation. Second, each class member may have been damaged in differing amounts, depending on the rewards program chosen, the amount of energy used, the supplier from which that class member switched, and their geographic location. Thus, demonstrating that damages can be handled on a class-wide basis will be challenging (although Plaintiffs are confident that their expert can develop a data set demonstrating each class members' damages). The instant motion aside, Plaintiffs have not yet moved to certify a class. A class determination outside of settlement proceedings will require

extensive and expensive briefing by both parties, the outcome of which is by no means assured.  This factor therefore favors preliminary approval.

G.    **The Defendant May Not Be Able
      To Withstand A Substantially Greater Judgment.**

The ability of Defendant to withstand a substantially greater judgment is by no means assured.  While Plaintiffs have no concern that Energy Plus has the ability to pay all claims made in the context of this Settlement Agreement, there is no certainty that Energy Plus, or any company, could bear the enormously large statutory and compensatory damages award that could be assessed were the case to proceed through trial.  In any event, a "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."  In re Austrian and German Bank Holocaust Litig., 80 F. Supp. 2d at 178 n.9.

H.    **The Settlement Amounts Are Reasonable In Light Of The Best
      Possible Recovery And In Light Of All The Attendant Risks Of Litigation.**

The adequacy of a settlement amount offered should be judged "in light of the strengths and weaknesses of the plaintiff[s'] case."  In re Med. X-Ray, No. 93-5904, 1998 WL 661515, at *5 (E.D.N.Y. Aug. 7, 1998).  That the settlement amount is less than the maximum potential recovery is not a barrier to approval.  See Grinnell Corp., 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even an thousandth part of a single percent of the potential recovery."); see also Cagan v. Anchor Sav. Bank FSB, No. 88-3024, 1990 WL 73423, at *12 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement where maximum potential recovery was approximately $121 million).  Indeed, judging whether a settlement is reasonable "is not susceptible of a mathematical equation yielding a particularized sum."  In re Michael Milken and Associates Sec. Lit., 150 F.R.D. 57, 66 (S.D.N.Y. 1993).

18

Here, there is a broad range of potential recovery if the case were to be litigated to judgment by trial. On the one hand, Plaintiffs could prevail on their claims and recover the difference in what Energy Plus charged for electricity and natural gas and what local utilities and ESCOs charged. In addition, New York consumers can receive a statutory penalty of $500.00 under G.B.L. § 349d, and there are smaller statutory penalties in other states in which class members reside. Accordingly, statutory damages owed the Settlement Class could be substantial. On the other hand, Defendant could prevail on its legal arguments to defeat liability entirely, resulting in no recovery for class members. Given this broad range of possible damages, the Settlement Agreement provides a substantial recovery, including substantive injunctive relief and effective notice to the class alerting them to the possibility that their rates may be high, that falls well within the range that courts have traditionally found to be fair and adequate under the law.

Moreover, the fact that the Settlement Agreement provides for a prompt payment to claimants favors approval of the settlement. See Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd., No. 01-11814, 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004) ("[T]he proposed Settlement provides for payment to Class members now, not some speculative payment of a hypothetically larger amount years down the road. Given the obstacles and uncertainties attendant to this complex litigation, the proposed Settlement is within the range of reasonableness, and is unquestionably better than the other likely possibility – little or no recovery.") (citing In re "Agent Orange" Prod. Liab. Litig., 611 F.Supp. 1396, 1405 (E.D.N.Y. 1985) ("[M]uch of the value of a settlement lies in the ability to make funds available promptly.") (modified on other grounds)). Therefore, these factors militate in favor of approving the Settlement Agreement.

## VI.    THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASS.

"Under Federal Rule 23(c)(1) 'the court can make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date.'" Ayzelman v. Statewide Credit Services Corp., 238 F.R.D. 358, 362 (E.D.N.Y. 2006) (citation and quotation marks omitted).  "Certification of a class for settlement purposes only is permissible and appropriate."  Reade–Alvarez v. Eltman, Eltman & Cooper, P.C., 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (citation omitted).  Where a class is proposed in connection with a motion for preliminary approval, "a court must ensure that the requirements of Rule 23(a) and (b) have been met."  Denney v. Deutsche Bank AG, 443 F.3d 253, 270 (2d Cir. 2006).  Courts in this circuit employ a "'liberal rather than restrictive construction' of Rule 23, 'adopt[ing] a standard of flexibility' in deciding whether to grant certification."  Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997).

Plaintiffs seek the conditional certification of the following Rule 23 class for purposes of effectuating the settlement:

> All persons who were customers of Energy Plus Holdings LLC or Energy Plus Natural Gas LLC in New York, Maryland, Connecticut, New Jersey, Pennsylvania, Texas, Illinois, Ohio, or Massachusetts, at any time up to October 15, 2012.

Excluded from the Settlement Class are Energy Plus Holdings LLC and Energy Plus Natural Gas LLC; any of their respective parents, subsidiaries, or affiliates; any entity controlled by either of them; any officer, director, employee, legal representative, predecessor, successor, or assignee of either Energy Plus Holdings LLC or Energy Plus Natural Gas LLC; and any present or former customer who already made a similar claim and whose claim was resolved by a payment from Energy Plus.

Because all of the certification requirements for settlement purposes are met and Defendant consents to conditional certification of a class action, Plaintiffs respectfully request that the Court conditionally certify the Settlement Class.

**A.     The Settlement Class Satisfies Rule 23(a).**

There are five Rule 23(a) requirements (numerosity, commonality, typicality, adequacy and ascertainability), all of which the Settlement Class satisfies.

**1.     The Class Is So Numerous That Joinder Of All Members Is Impracticable.**

The class is estimated to exceed 390,000 members (Settlement Agreement, Exhibit **add)**, rendering joinder impracticable. See Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members.") (citation omitted).

**2.     There Are Questions Of Law Or Fact Common To The Class.**

Rule 23(a)(2) provides that there must be "questions of law or fact common to the class" for a suit to be certified as a class action.  Fed. R. Civ. P. 23(a)(2).  "Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members.  Generally, courts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members." Trief v. Dun & Bradstreet Corp., 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992) (citing Port Authority Police Benevolent Ass'n v. Port Authority, 698 F.2d 150, 153–54 (2d Cir. 1983) and In re Joint Eastern and Southern Asbestos Litigation, 129 B.R. 710, 818 (S.D.N.Y. 1991).

Here, there are many common issues of fact and law, to wit, whether Energy Plus's representations regarding its rates are misleading and deceptive and whether its electricity and natural gas rates are commensurate with, or substantially higher than, the rates charged by Energy Plus's competitors in the market.

21

**3.      The Plaintiffs' Claims Are Typical Of The Claims Of The Class.**

Rule 23(a)(3) provides that the claims of the Plaintiffs must be "typical of the claims of
. . . the class." Fed. R. Civ. P. 23(a)(3).  Rule 23(a)(3) is satisfied "when each class member's
claim arises from the same course of events and each class member makes similar legal
arguments to prove the defendant's liability."  Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir.
1993) (citation omitted).  "When the same 'unlawful conduct was directed at both the named
plaintiff and the class to be represented, the typicality requirement is usually met irrespective of
varying fact patterns which underlie individual claims.'"  D'Alauro v. GC Services Ltd. P'ship,
168 F.R.D. 451, 456-57 (E.D.N.Y. 1996) (citing Newberg § 3.13 and Dura–Bilt Corp. v. Chase
Manhattan Corp., 89 F.R.D. 87, 99 (S.D.N.Y. 1981)).

Here, the claims of the Plaintiffs and those of the members of the Settlement Class arise
from the same conduct.  Energy Plus represents that it offers a market rate that is the result of its
buying electricity and natural gas on the open market.  Complaint ¶¶ 3-4.  Plaintiffs allege that
these are material misrepresentations that caused them injury because they believed they would
be charged less than they actually were, and that they were damaged to the extent that otherwise
available market rates are much lower than Energy Plus's rates.  Complaint ¶¶ 19-20.  This same
conduct caused the same injury to members of the Settlement Class.  While Energy Plus's
advertisements varied somewhat over time, they all contained essentially the same statements
with regard to its market rate.  Blankinship Dec. ¶ 5.  Moreover, Defendant's alleged
misrepresentations and omissions regarding its rates would be material to any reasonable
consumer.  See Bildstein v. MasterCard Int'l Inc., 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004)

("[A] material claim is one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.") (citation omitted).[5]

### 4.    Plaintiffs Will Fairly And Adequately Protect The Interests Of The Class.

Rule 23(a)(4) requires that "the representative parties fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  To determine adequacy, the Court must inquire as to whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." Brooklyn Ctr. for Independence of the Disabled v. Bloomberg, No. 11-6690, 2012 WL 5438849, at *8 (S.D.N.Y. Nov. 7, 2012) (quotation omitted).  Here, there is no indication that Plaintiffs, who enrolled in Energy Plus's service after receiving a solicitation from Energy Plus just like members of the Settlement Class (Complaint ¶¶ 5-6, 19-20), have any interests antagonistic to the Settlement Class.

To the contrary, Plaintiffs Angela Wise and Gideon Romm have been actively protecting the interests of the class.  They both engaged in the prosecution of this matter since its inception, having consistently conferred with their counsel, reviewed the various versions of the complaints, reviewed and signed their interrogatory responses, provided substantial documents (including the procurement of some documents not in their immediate possession), and consulted with their counsel regarding the propriety of the settlement.  Blankinship Dec. ¶ 16.  Moreover, Plaintiffs' attorneys are qualified, experienced and able to conduct the litigation.  Blankinship Dec. ¶¶ 17-20.

---

[5] See also Galvan v. KDI Distribution Inc., No. 08-0999, 2011 WL 5116585, at *10 (C.D. Cal. Oct. 25, 2011) ("[R]epresentations regarding price are material to a purchase"); F.T.C. v. Windward Mktg., Inc., No. 96-615, 1997 WL 33642380, at *10 (N.D. Ga. Sept. 30, 1997) ("[A]ny representations concerning the price of a product or service are presumptively material.").

5.     **Class Members Are Readily Identifiable And Ascertainable.**

Rule 23 also contains an "implicit requirement" that the class be precise and ascertainable. Guzman v. VLM, Inc., No. 07-1126, 2008 WL 597186, at *4 (E.D.N.Y. Mar. 2, 2008). Here, Defendant has identifying information for all of the customers to whom it provided electricity or natural gas, including their names, addresses, and the number of bills they received from Energy Plus. Blankinship Dec. ¶ 17. Energy Plus also has some forwarding addresses for past customers. Id. The Settlement Class is thus precise and readily identifiable.

**B.     The Settlement Class Satisfies Rule 23(b)(3).**

Rule 23(b)(3) provides that questions of law or fact common to class members must "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). In addition, Plaintiffs must demonstrate that "[a] class action is superior to other methods for fairly and efficiently adjudicating the controversy." Id.

1.     **Common Questions Predominate Over Individual Issues.**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997). Predominance thus requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 136 (2d Cir. 2001) (abrogated on other grounds). Here, Defendant's liability turns on whether its uniform representations regarding rates are deceptive and misleading and every class member's claim may be proven by the same set of facts. Moreover, determining whether Settlement Class members were injured will turn on common proof regarding the extent to which Energy Plus's rates are higher than competitive rates

otherwise available in the market.  In any event, when common questions of law or fact

predominate regarding liability, "the existence of individual questions as to damages is generally

unimportant."  Guzman v. VLM, Inc., No. 07-1126, 2008 WL 597186, at *8 (E.D.N.Y. Mar. 2,

2008).  In addition, the Settlement Class handily satisfies Rule 23(a)'s requirements, which "goes

a long way toward satisfying the Rule 23(b)(3) requirement of commonality."  Rossini v. Ogilvy

& Mather, Inc., 798 F.2d 590, 598 (2d Cir. 1986) (citation omitted).

### 2.   A Class Action Is A Fair And Efficient Method For Adjudicating This Controversy.

Rule 23(b)(3) also requires a determination as to whether a class action is the superior

means to adjudicate the class' claims.   The rule sets forth a list of relevant factors: class

members' interest in bringing individual actions; the extent of existing litigation by class

members; the desirability of concentrating the litigation in one forum; and potential issues with

managing a class action.  Fed. R. Civ. P. 23(b)(3)(A-D).  Plaintiffs' counsel is unaware of any

individual actions relating to this controversy, a strong indication that class members lack an

interest in bringing individual claims.  This is not surprising, as the amounts in controversy in

any such individual actions, while significant to consumers, would nonetheless be dwarfed by

the expense of bringing such an action.  It is well settled that a class action is the superior method

of adjudication where "the proposed class members are sufficiently numerous and seem to

possess relatively small claims unworthy of individual adjudication due to the amount at issue

. . . [and] there is reason to believe that class members may lack familiarity with the legal system,

discouraging them from pursuing individual claims."  Jankowski v. Castaldi, No. 01-0164, 2006

WL 118973, at *4 (E.D.N.Y. Jan. 13, 2006).  Certification of the Settlement Class will allow for

efficient adjudication of claims that would likely not be brought owing to prohibitive legal

expenses, while at the same time preserving scarce judicial resources. Therefore, a class action

is a superior method of adjudicating this case.

## VII.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL.

Meiselman, Packman, Nealon, Scialabba & Baker P.C. should be appointed as class

counsel. Rule 23(g) enumerates four factors for evaluating the adequacy of proposed counsel:

> (1) the work counsel has done in identifying or investigating
> potential claims in the action; (2) counsel's experience in handling
> class actions, other complex litigation, and types of claims of the
> type asserted in the action; (3) counsel's knowledge of the
> applicable law; and (4) the resources counsel will commit to
> representing the class.

Fed. R. Civ. P. 23(g)(1)(C)(i).[6]  All of these factors militate in favor of appointing Meiselman

Packman as class counsel. Meiselman Packman was the first to file claims against Energy Plus

(in the instant action) after extensive independent investigation. Meiselman Packman also

obtained an expert, Dr. Felder, who has extensive knowledge of energy markets and ESCOs in

particular. Blankinship Dec. ¶ 8. Meiselman Packman also has extensive experience in class

actions, particularly those involving alleged consumer frauds, as demonstrated by the numerous

times the firm has been appointed class counsel. Blankinship Dec. ¶¶ 21-22. Finally, Meiselman

Packman, an established law firm of more than thirty years that is currently litigating dozens of

cases in state and federal courts throughout the nation, has more than sufficient resources to

represent the class. Blankinship Dec. ¶ 20. Therefore, Plaintiffs respectfully ask that this Court

appoint their counsel as counsel for the class.

---

[6]  See also deMunecas v. Bold Food, LLC, No. 09-00440, 2010 WL 2399345, at *3 (S.D.N.Y. Apr. 19, 2010) ("The
work that [plaintiffs' counsel] has performed both in litigating and settling this case demonstrates their commitment
to the class and to representing the class's interests.").

## VIII.  THE PROPOSED CLASS NOTICE IS APPROPRIATE.

Rule 23(c)(2)(B) requires that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  The Rule also requires that any such notice clearly and concisely state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(b)(2)(B).

Here, Energy Plus has class members' names and addresses,  and Defendant has agreed to provide that information to the Settlement Administrator, who will send direct written notice in the form attached as Exhibit B (the "Short Form Notice") to each class member.  That notice provides all of the information required under Rule 23(b)(2)(B), and it "fairly apprise[s] the prospective members of the class of the pendency of the class action, the terms of the proposed settlement, and the options that are open to them in connection with the proceedings, including the option to withdraw from the settlement." Reade-Alvarez v. Eltman, Eltman & Cooper, P.C., 237 F.R.D. 26, 34 (E.D.N.Y. 2006).  The Short Form Notice also directs class members to an Internet website where they can find further information, including the "Long Form Notice" (in the form attached as Exhibit C).  The Short Form Notice also includes a phone number for class members who wish to request a copy of the Long Form Notice without using the Internet. Therefore, Plaintiffs respectfully request that the Court approve the forms of notice attached as Exhibit B and C.

## IX.   **CONCLUSION**

Plaintiffs respectfully request that the Court preliminarily approve the Settlement Agreement, conditionally certify the Settlement Class, appoint Plaintiffs' counsel as class counsel, approve the proposed notices of settlement, and enter the contemporaneously-filed Proposed Order.

Dated:     White Plains, New York
           March 8, 2013

                              MEISELMAN, PACKMAN, NEALON,
                              SCIALABBA & BAKER P.C.

                          By:     /s/ D. Greg Blankinship
                                  D. Greg Blankinship
                                  1311 Mamaroneck Avenue
                                  White Plains, New York 10605
                                  Tel: (914) 517-5000
                                  gblankinship@mpnsb.com

                                  *Attorneys for Plaintiffs*