UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANGELA WISE and GIDEON ROMM, on
behalf of themselves and all others similarly
situated,

              Plaintiffs,

     v.

ENERGY PLUS HOLDINGS LLC,

              Defendant.

Civil Action No. 11-7345-WHP

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
ATTORNEYS' FEES AND EXPENSES**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................... iii

I.     INTRODUCTION ............................................................................... 1

II.    BACKGROUND AND SUMMARY OF SETTLEMENT TERMS .................................... 2

III.   THE COURT SHOULD APPROVE THE REQUESTED AWARD OF
       ATTORNEYS' FEES TO BE PAID BY ENERGY PLUS TO CLASS COUNSEL .......... 2

       A.  Class Counsel Are Entitled To Compensation ............................................ 2

       B.  The Second Circuit Has Approved Both the Percentage Method and the
           Lodestar Method, but Percentage Method is Preferred .................................. 4

       C.  Energy Plus Will Pay Class Counsel's Fees At No Cost to the Class ..................... 4

       D.  The Requested Fee Is Justified Under the Percentage Method ............................. 8

           1.  The Full Value of The Settlement Fund Available Is Considered
               When Determining Attorneys' Fee .......................................................... 8

           2.  The Fee Award Is Supported by the Goldberger Factors ............................. 10

               a.  The Time and Labor Expended by Counsel ..................................... 11

               b.  The Magnitude and Complexity of the Litigation ........................... 12

               c.  The Risk of the Litigation ............................................................. 13

               d.  The Quality of Representation ....................................................... 15

               e.  The Requested Fee in Relation to the Settlement ........................... 16

               f.  Public Policy Considerations ........................................................ 20

       E.  The Fee Is Justified Under the Lodestar/Multiplier Method ........................ 22

       F.  The Reaction of the Class Is Overwhelmingly Favorable ........................... 24

IV.    THE EXPENSES INCURRED ARE REASONABLE AND
       WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED ...................... 25

i

# TABLE OF CONTENTS
## (Continued)

Page

V.     INCENTIVE AWARDS ................................................................................................26

CONCLUSION ..............................................................................................................................27

# TABLE OF AUTHORITIES

**Cases** **Page**

Anixter v. Home-Stake Prod. Co.,
   77 F.3d 1215 (10th Cir. 1996) ........................................................... 14

Aros v. United Rentals, Inc.,
   No. 10-73, 2012 WL 3060470 (D. Conn. July 26, 2012) ......................... 9

Beckman v. KeyBank, N.A.,
   No. 12-7836, 2013 WL 1803736 (S.D.N.Y. Apr. 29, 2013) .................... 16

Blessing v. Sirius XM Radio Inc.,
   No. 11-3696, 2012 WL 6684572 (2d Cir. 2012) ..................................... 7

Boeing Co. v. Van Gemert,
   444 U.S. 472 (1980) ............................................................. 2, 9, 10

Bricker v. Planet Hollywood New York, L.P.,
   No. 08-443 (WHP), 2009 WL 2603149 (S.D.N.Y. Aug. 13, 2009) ............... *passim*

Cavalieri v. General Elec. Co.,
   No. 06-315, 2009 WL 2426001 (N.D.N.Y. Aug. 6, 2009) ..................... 5, 7

Chin v. RCN Corp.,
   No. 08-7349, 2010 WL 3958794 (S.D.N.Y. Sept. 8, 2010) ..................... 24

Clark v. Ecolab Inc.,
   No. 07-8623, 2010 WL 1948198 (S.D.N.Y. May 11, 2010) .................... 17

Cohn v. Nelson,
   375 F. Supp. 2d 844 (E.D. Mo. 2005) ............................................. 6, 7

Collins v. Olin Corp.,
   No. 03-945, 2010 WL 1677764 (D. Conn. Apr. 21, 2010) ..................... 17

In re Comverse Tech., Inc. Sec. Litig.,
   No. 06-1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010) .................... 24

Dahingo v. Royal Caribbean Cruises, Ltd.,
   312 F. Supp. 2d 440 (S.D.N.Y.2004) ............................................... 9

deMunecas v. Bold Food, LLC,
   No. 09-00440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ............. 17, 23

Dennis v. Kellogg Co.,
    687 F.3d 1149 (9th Cir 2012) ............................................................... 10

Dennis v. Kellogg Co.,
    697 F.3d 858, (9th Cir. 2012) ............................................................... 10

Dornberger v. Metropolitan Life Ins. Co.,
    203 F.R.D. 118 (S.D.N.Y. 2001) ........................................................... 26

Duchene v. Michael Cetta, Inc.,
    No. 06-4576, 2009 WL 5841175 (S.D.N.Y. Sept. 10, 2009) ................... 17

Edmonds v. United States,
    658 F. Supp. 1126 (D.S.C. 1987) .......................................................... 15

Frank v. Eastman Kodak Co.,
    228 F.R.D. 174 (W.D.N.Y. 2005) ......................................................... 17

Goldberger v. Integrated Resources, Inc.,
    209 F.3d 43 (2d Cir. 2000) ................................................... 2, 4, 11, 22

Hanlon v. Chrysler Corp.,
    150 F.3d 1011 (9th Cir. 1998) ................................................................ 6

Hernandez v. Merrill Lynch & Co., Inc.,
    No. 11-8472, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013)............... 17, 23

Hicks v. Stanley,
    No. 01-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .......... *passim*

In re Abrams & Abrams, P.A.,
    605 F.3d 238 (4th Cir. 2010) ................................................................ 21

In re Alloy, Inc. Sec. Litig.,
    No. 03-1597(WHP), 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) .... 4, 19, 20

In re Apollo Group, Inc., Sec. Litig.,
    No. 04-2147, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008) ...... 14

In re Apple Computer, Inc., Deriv. Litig.,
    No. 06-4128, 2008 WL 4820784 (N.D. Cal. Nov. 5, 2008)....................... 6

In re Bisys Sec. Litig.,
    No. 04-3840, 2007 WL 2049726 (S.D.N.Y. July 16, 2007)..................... 18

In re Brown Co. Sec. Litig.,
    355 F. Supp. 574 (S.D.N.Y. 1973) ........................................................ 13

In re China Sunergy Sec. Litig.,
    No. 07-7895, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ............................................. 25, 26

In re Continental Ill. Sec. Litig.,
    962 F.2d 566 (7th Cir. 1992) ........................................................ 6

In re Excess Value Ins. Coverage Litig.,
    598 F. Supp. 2d 380 (S.D.N.Y. 2005) ........................................................ 10

In re Flag Telecom Holdings, Ltd. Sec. Litig.,
    No. 02-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .................................................. 21-25

In re JDS Uniphase Corp. Sec. Litig.,
    No. 02-1486, Slip op. (N.D. Cal. Nov. 22, 2007) ........................................................ 14

In re Marsh Erisa Litig.,
    265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................ 16

In re NASDAQ Mkt.-Makers Antitrust Litig.,
    187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................ 23

In re Polaroid,
    No. 03-8335 (WHP), 2007 WL 2116398 (S.D.N.Y. July 19, 2007) ................................ *passim*.

In re Rite Aid Corp. Sec. Litig.,
    146 F. Supp. 2d 706 (E.D. Pa. 2001) ........................................................ 18

In re Rite Aid Corp. Sec. Litig.,
    396 F.3d 294 (3d Cir. 2005) ........................................................ 25

In re Sony SXRD Rear Projection Television Class Action Litig.,
    No. 06-5173, 2008 WL 1956267 (S.D.N.Y. May 1, 2008) .................................................. 5, 26

In re Sumitomo Copper Litig.,
    74 F. Supp. 2d 393 (S.D.N.Y. 1999) ........................................................ 3, 14

In re Telik, Inc. Sec. Litig.,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ........................................................ *passim*

In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.,,
    724 F. Supp. 160 (S.D.N.Y. 1989) ........................................................ 23

In re Veeco Instruments Inc. Sec. Litig.,
    No. 05-01695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ......................................... 3, 14, 26

In re Warnaco Group, Inc. Sec. Litig.,
    No. 00-6266, 2004 WL 1574690 (S.D.N.Y. July 13, 2004)............................................... 17, 18

In re Warner Chilcott Ltd. Sec. Litig.,
    No. 06-11515 (WHP), 2009 WL 2025160 (S.D.N.Y. July 10, 2009) ........................... 19, 20, 23

Ingram v. Coca-Cola Co.,
    200 F.R.D. 685 (N.D. Ga. 2001) ............................................................................................. 6

Johnston v. Comerica Mortgage Corp.,
    83 F.3d 241 (8th Cir. 1996) .................................................................................................... 8

Khait v. Whirlpool Corp.,
    No. 06-6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010).................................................... 17

In re Lloyd's Am. Trust Fund Litig.,
    No. 96-1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ................................................ 18

Lobatz v. U.S. W. Cellular of Cal., Inc.,
    222 F.3d 1142 (9th Cir. 2000) ................................................................................................. 6

M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,
    671 F. Supp. 819 (D. Mass. 1987).......................................................................................... 6

Malchman v. Davis,
    761 F.2d 893 (2d Cir. 1985) ............................................................................................. 5, 6, 7

Maley v. Del Global Techs. Corp.,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................................................ *passim*

Masters v. Wilhelmina Model Agency, Inc.,
    473 F.3d 423 (2d Cir. 2007) .......................................................................................... 3, 9, 10

McBean v. City of New York,
    233 F.R.D. 377 (S.D.N.Y. 2006)......................................................................................... 5, 7

McKinnie v. JP Morgan Chase Bank, N.A.,
    678 F. Supp. 2d 806 (E.D. Wis. 2009) .................................................................................. 10

McMahon v. Olivier Cheng Catering & Events, LLC,
    No. 08-8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010)..................................................... 17

In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,
   No. 02-1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ....................................................... 26

Missouri v. Jenkins,
   491 U.S. 274 (1989) ................................................................................................................. 23

Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,
   No. 06-4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) .................................................... 17

Parker v. Jekyll & Hyde Entm't Holdings, LLC,
   No. 08-7670, 2010 WL 532960 (S.D.N.Y. Feb. 2, 2010) ........................................................ 17

Prasker v. Asia Five Eight LLC,
   2010 WL 476009 (S.D.N.Y. Jan. 6, 2010) ............................................................................... 17

Ressler v. Jacobson,
   149 F.R.D. 651 (M.D. Fla. 1992) ............................................................................................. 24

Reyes v. Buddha-Bar NYC,
   No. 08-02494, 2009 WL 5841177 (S.D.N.Y. May 28, 2009) .................................................. 17

RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.,
   No. 94-5587, 2003 WL 21136726 (S.D.N.Y. May 15, 2003) .................................................. 17

Robbins v. Koger Props.,
   116 F.3d 1441 (11th Cir. 1997) ................................................................................................ 14

Spann v. AOL Time Warner, Inc.,
   No. 02-8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005) ...................................................... 17

Spicer v. Pier Sixty LLC,
   No. 08-10240, 2012 WL 4364503 (S.D.N.Y. Sept. 14, 2012) ................................................. 23

Stefaniak v. HSBC Bank USA, N.A.,
   No. 05-720, 2008 WL 7630102 (W.D.N.Y. June 28, 2008) .................................................... 17

Steinberg v. Nationwide Mut. Ins. Co.,
   612 F. Supp. 2d 219 (E.D.N.Y. 2009) ....................................................................................... 5

Steiner v. Williams,
   No. 99-101186, 2001 WL 604035 (S.D.N.Y. May 31, 2001) .................................................... 2

Stutman v. Chem. Bank,
   95 N.Y.2d 24, 731 N.E.2d 608 (2000) .................................................................................... 14

Taft v. Ackermans,
  No. 02-7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ....................................... 17

Torres v. Gristede's Operating Corp.,
  No. 12-3336, 2013 WL 2257859 (2d Cir. May 22, 2013) ...................................... 8, 9

Trustees v. Greenough,
  105 U.S. 527 (1881) .......................................................................................... 2

Velez v. Novartis Pharmaceuticals Corp.,
  No. 04-09194, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) .................................... 9

Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,
  396 F.3d 96 (2d Cir. 2005) ............................................................................. 3, 4

Waters v. Int'l Precious Metals Corp.,
  190 F.3d 1291 (11th Cir. 1999) .......................................................................... 9

Williams v. MGM-Pathe Communications Co.,
  129 F.3d 1026 (9th Cir.1997) ....................................................................... 9, 10

Willix v. Healthfirst, Inc.,
  07-1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ........................................... 17

## Rules

Fed. R. Civ. P. 23 ............................................................................................... 5

## Other Authorities

Manual for Complex Litigation, Fourth, § 21.71 p. 525 ............................................. 8

Newberg on Class Actions § *14:6,* p. 570 (4th ed. 2002)
  4 Alba Conte & Herbert B. Newberg ................................................................. 10

## I.    <u>INTRODUCTION</u>

After aggressively litigating this action for more than a year, Plaintiffs' counsel ("Class Counsel") succeeded in securing a settlement making available for Class members between $9,178,451.00 and $11,014,142.00, with an overall of between $12,478,451.00 and $14,314,142.00.  This significant result, obtained despite serious obstacles to recovery, is a credit to Class Counsel's vigorous prosecution of this action.  Class Counsel now respectfully moves this Court for an award of attorneys' fees and expenses in the amount of between 23% and 26.5% of the value of the Settlement, which correspondingly represents a modest lodestar multiplier of 2.1, both well within the range of awards commonly approved within this Circuit.

Defendant has agreed to pay an award the Court approves up to this requested amount, <u>which is separate and apart</u> from the benefit to be received by Class members and in no way diminishes their recovery.  Indeed, if the Court were to deny the requested award for fees and expenses, in whole or in part, none of the $3,300,000 million that Energy Plus has agreed to pay Class Counsel would be paid to the Class.  That money would just revert to Energy Plus.  Thus, barring Class Counsel from receiving the requested attorneys' fees and expenses would simply benefit Energy Plus, without any offsetting gain to the Class.

As the amount requested (i) has been agreed upon by the parties through arm's length negotiations; (ii) will not in any way diminish the recovery of the Class; and (iii) falls well within the range of attorneys' fees and expenses awarded by courts within this Circuit using either the percentage of the fund or lodestar methodology, this Court should approve the requested attorneys' fees and expenses to compensate Class Counsel for the outstanding result achieved.

## II.  BACKGROUND AND SUMMARY OF SETTLEMENT TERMS

Class Counsel hereby incorporates by references the background and summary of settlement terms described in Plaintiffs' Memorandum of Law in Support of Their Motion for Final Approval of the Class Action Settlement and the Declaration of D. Gregory Blankinship, both filed herewith.

## III.  THE COURT SHOULD APPROVE THE REQUESTED AWARD OF ATTORNEYS' FEES TO BE PAID BY ENERGY PLUS TO CLASS COUNSEL

Defendant has agreed to pay Class Counsel the three million, three hundred thousand dollars ($3,300,000) in attorneys' fees, costs and other litigation expenses that Class Counsel is requesting herein separate and apart from the benefit to be received by Class members.  Any reduction in the amount requested by Class Counsel will inure to the benefit of Defendant, the alleged wrongdoer.  As set forth more fully below, Class Counsel's proposed $3,300,000 award for fees and expenses merits approval.

### A.  Class Counsel Are Entitled To Compensation

For more than a century, the Supreme Court has held that "where an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury," the attorney is entitled to a reasonable fee.  Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 47 (2d Cir. 2000) (citing Trustees v. Greenough, 105 U.S. 527 (1881); Boeing Co. v. Van Gemert, 444 U.S. 472 (1980)).  Awarding Class Counsel fees "serves the salutary purpose of encouraging counsel to pursue meritorious claims on behalf of a class of individuals who could not afford to litigate their individual claims." Steiner v. Williams, No. 99-101186, 2001 WL 604035, at *1 (S.D.N.Y. May 31, 2001).  Indeed, the contingency fee awarded to class counsel must be greater than the fees that the same attorneys would charge their clients in non-contingency cases.  "No one expects a lawyer whose compensation is contingent on success of

his services to charge, when successful, as little as he would charge a client who in advance has agreed to pay for his services, regardless of success." In re Sumitomo Copper Litig., 74 F. Supp. 2d 393, 396 (S.D.N.Y. 1999); In re Veeco Instruments Inc. Sec. Litig., No. 05-01695, 2007 WL 4115808, at *6 (S.D.N.Y. Nov. 7, 2007) (same).[1]

District courts in the Second Circuit are permitted to award attorneys' fees to prevailing class counsel using either a "percentage of the fund" or "lodestar" method to compute fees in common fund cases. See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005); In re Polaroid, No. 03-8335 (WHP), 2007 WL 2116398, at *2 (S.D.N.Y. July 19, 2007). However, "[t]he trend in this Circuit is toward the percentage method." Wal-Mart, 396 F.3d at 121; Polaroid, 2007 WL 2116398, at *2. In addition, the award must be based on "the total funds made available, whether claimed or not." Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 437 (2d Cir. 2007).[2]

Under either method, Class Counsel's proposed $3,300,000 award for fees and expenses representing between 23% and 26.5% of the value of the settlement merits approval and falls well within the range of class counsel fees approved in comparable cases using either method. See Polaroid, 2007 WL 2116398, at *2 (awarding 28%); Bricker v. Planet Hollywood New York, L.P., No. 08-443 (WHP), 2009 WL 2603149, at *2 (S.D.N.Y. Aug. 13, 2009) (awarding

---

[1] In re Telik, Inc. Sec. Litig., 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008) (citing Maley v. Del Global Techs. Corp., 186 F.Supp.2d 358, 369 (S.D.N.Y.2002)) ("Courts have also recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature.").

[2] Four state Attorneys General (the "State Attorneys General") State Attorneys General State Attorneys General appear to object to Class Counsel's fee request to the extent it is based on the total funds made available, whether claimed or not, which in this case is between $9,178,451.00 and $11,014,142.00. See State Attorneys General State Attorneys General Attorneys General Amicus Brief ("Amicus Brief") at 17. The State Attorneys General State Attorneys General position is in direct conflict with the Second Circuit precedent set forth in Masters, in addition to well reasoned precedent from throughout the country, as discussed more fully infra at Section III.D.1.

25%); and In re Alloy, Inc. Sec. Litig., No. 03-1597(WHP), 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) (awarding 24%).

### B. The Second Circuit Has Approved Both the Percentage Method and the Lodestar Method, but Percentage Method is Preferred

Courts have developed two distinct methods for awarding attorneys' fees in successful class actions: the percentage method and the lodestar/multiplier method. Maley v. Del Global Techs. Corp., 186 F.Supp.2d 358, 369 (S.D.N.Y. 2002). A court applying the percentage method "sets some percentage of the recovery as a fee." Goldberger, 209 F.3d at 47 (citation omitted). In doing so, the court considers six factors: (1) the time and labor expended by counsel; (2) the magnitude and complexity of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. Goldberger, 209 F.3d at 50 (internal citations and quotation marks omitted). Accord Polaroid, 2007 WL 2116398, at *2. Courts consider the same factors in applying the lodestar method. Id.[3] Here, the fee requested is plainly justified under either method.

### C. Energy Plus Will Pay Class Counsel's Fees At No Cost to the Class

Before applying either method, it is important to recognize that Energy Plus has agreed to pay Class Counsel's fees from its own resources. As a result, the fee award will have no impact whatsoever on the benefit afforded to the Class members.

When the settling defendant agrees to pay class counsel's fees from its corporate treasury, independent of the benefit obtained for the class, "the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class

---

[3] The Second Circuit has held that a district court may use either method. Id. However, the Second Circuit disfavors the lodestar method because it "create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits." Wal-Mart, 396 F.3d at 122 (internal citation omitted). The percentage method is considered preferable "because it reduces the incentive for counsel to drag the case out to increase the number of hours billed; also, fewer judicial resources will be spent in evaluating the fairness of the fee petition." Hicks v. Stanley, No. 01-10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) (citation omitted).

members." <u>McBean v. City of New York</u>, 233 F.R.D. 377, 392 (S.D.N.Y. 2006). Here, Energy Plus has agreed to pay Class Counsel's fees and expenses in an amount not to exceed $3,300,000. As a result, the fee award <u>will</u> <u>not</u> diminish the benefits provided to the Class members. "Thus regardless of the size of the fee award, class members . . . will receive the same benefit; the fee award does not reduce the recovery to the class. Under these circumstances, the danger of conflicts of interest between attorneys and class members is diminished." <u>In re Sony SXRD Rear Projection Television Class Action Litig.</u>, No. 06-5173, 2008 WL 1956267, at *15 (S.D.N.Y. May 1, 2008). Courts have approved the payment of class counsel fee awards by the defendant, rather than the Class members.[4]

Moreover, a fee negotiated between the parties is preferable because, as a market-set price resulting from opposing interests, it is the most accurate method of determining an appropriate fee. Defendants have an interest in minimizing the fee, the plaintiffs' counsel have an interest in maximizing it, and the negotiations are informed by the parties' knowledge of the work done and result achieved and their views on what the court may award if the matter were litigated.[5] In <u>Malchman v. Davis</u>, 761 F.2d 893 (2d Cir. 1985), the Court of Appeals for the Second Circuit concluded that courts should be hesitant to interfere in fee arrangements between the plaintiffs and the defendants when the defendants have agreed not to oppose the payment of fees up to a certain amount:

---

[4] <u>See</u> <u>e.g.</u>, <u>Steinberg v. Nationwide Mut. Ins. Co.</u>, 612 F. Supp. 2d 219, 224 (E.D.N.Y. 2009) (noting "with approval that the fee award will not be drawn from the common fund but will be paid directly by [defendant]. In this regard, the fee award, however substantial, will have no effect on the monetary relief afforded to class members."); <u>Cavalieri v. General Elec. Co.</u>, No. 06-315, 2009 WL 2426001, at *3 (N.D.N.Y. Aug. 6, 2009) (same).

[5] The Federal Rules of Civil Procedure expressly authorize the Court to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h); Fed. R. Civ. P. 23, 2003 Advisory Committee Notes ("[t]he agreement by a settling party not to oppose a fee application up to a certain amount, for example, is worthy of consideration. . .").

> [W]here ... the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that an agreement "not to oppose" an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged. It is difficult to see how this could be left entirely to the court for determination after the settlement.

Malchman, 761 F.2d at 905 n.5. Similarly, in In re Continental Ill. Sec. Litig., 962 F.2d 566 (7th Cir. 1992), Judge Posner of the Seventh Circuit endorsed a market-based approach to evaluating fee requests, stating "it is not the function of judges in fee litigation to determine the equivalent of the medieval just price," but rather "to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." Id. at 568.[6]

The free market was in full force here, as experienced counsel negotiated at arm's length to arrive at a proposed fee award that is appropriate, and that Energy Plus is willing to pay. Defendant's counsel had a keen interest in negotiating the smallest amount its client would have to pay in addition to the significant monetary and injunctive relief provided to the Class to redress the harm challenged by Plaintiffs' lawsuits. Class Counsel, on the other hand, after negotiating the best settlement that they could obtain for the Class, wished to receive full and fair compensation for undertaking a complex, lengthy litigation and devoting the substantial resources and skill necessary to achieve a favorable result.[7] Applying these principles, in

---

[6] See e.g., Lobatz v. U.S. W. Cellular of Cal., Inc., 222 F.3d 1142 (9th Cir. 2000) (affirming award of fees and expenses, where defendant had agreed not to oppose request for fees and expenses up to a negotiated ceiling and to be paid separately from class settlement benefits); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998) (upholding the district court's award of attorneys' fees where the court had approved attorneys' fees and costs of $5.2 million that were negotiated after the final settlement was achieved); M. Berenson Co. v. Faneuil Hall Marketplace, Inc., 671 F. Supp. 819, 829 (D. Mass. 1987) ("Whether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys' fees, ideally the parties will settle the amount of the fee between themselves.").

[7] Cf., Ingram v. Coca-Cola Co., 200 F.R.D. 685, 695 (N.D. Ga. 2001) (giving "substantial weight to a negotiated fee amount"); In re Apple Computer, Inc. Deriv. Litig., No. 06-4128, 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008) ("A court should refrain from substituting its own value for a properly bargained-for agreement"); Cohn v. Nelson,

Cavalieri, the court approved a fee request of $10 million as agreed between sophisticated parties, emphasizing that the fee was negotiated at arm's length by attorneys who were intimately familiar with the case, the risks, the amount and value of their time, and the nature of the result obtained for the class. The same factors and rationale for approving the market-driven fee amount apply here. Cavalieri, 2009 WL 2426001, at *3.[8]

In fact, just last year the Second Circuit rejected an objector's argument relating to a negotiate fee provision holding "that such provisions, without more, do not provide grounds for vacating the fee." Blessing v. Sirius XM Radio Inc., No. 11-3696, 2012 WL 6684572, at *2 (2d Cir. 2012). The Second Circuit found support for its position in the fact that the fee was not discussed until after the terms of the settlement were finalized (as was the case here), as well as the fact that the district court independently analyzed the fee request (an analysis that Class Counsel welcomes and always understood would occur in this case). See id. (endorsing the Second Circuit's decision in Malchman on "clear sailing" provisions).[9]

As such, Class Counsel respectfully submits that the fact that the fee was negotiated at arm's length, only after the terms of the settlement were finalized, and will in no way reduce the funds available for the Class, supports approving the requested fee.

---

375 F. Supp. 2d 844, 861 (E.D. Mo. 2005) ("[W]here, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference.") (citation omitted).

[8] Failing to recognize the case law both within and outside of this Circuit supporting the use of negotiated fee maximums, the State Attorneys General claim that Class Counsel has failed to adequately represent the Class by having negotiated what it terms a "smooth sailing" provision whereby Defendant has agreed not to oppose an award up to $3,300,000. Amicus Brief p. 16. The adequacy of Class Counsel's representation of the Class is addressed extensively both infra and in Plaintiff's Memorandum of Law in Support of Final Approval. Moreover, the State Attorneys General cite only out-of-Circuit case law for the proposition that the agreement of Defendant not to object to a certain fee request does not relieve this Court of its duty to assess the reasonableness of the fees. However, Class Counsel is not asking that this Court be relieved of its duty to assess the reasonableness of the fees, and in fact the opposite is true. Class Counsel welcomes this Court's analysis as to the reasonableness of its fees pursuant to Second Circuit precedent and persuasive district court decisions from within this Circuit, under which Class Counsel's fee request should be approved as it is imminently reasonable.

[9] Furthermore, the State Attorneys General fail to recognize that the fees in this case will be paid separate and apart from the benefit to the Class and the substantial case law that supports this approach "because there is no conflict of interest between attorneys and class members." McBean, 233 F.R.D. at 392.

**D.** **The Requested Fee Is Justified Under the Percentage Method**

    **1.** **The Full Value Of The Settlement Fund Available Is Considered When Determining Attorneys' Fees**

In evaluating class counsel fees where the defendant has agreed to pay the fees separate and apart from the consideration flowing to the Class, courts include the negotiated attorneys' fees to be paid to class counsel by the defendant in determining the size of the fund. See, e.g., Johnston v. Comerica Mortgage Corp., 83 F.3d 241, 246 (8th Cir. 1996) ("Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery."); Manual for Complex Litigation, Fourth, § 21.71 p. 525 ("If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees and expenses . . . the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class…").

Less than two months ago in Torres v. Gristede's Operating Corp., No. 12-3336, 2013 WL 2257859, at *3 (2d Cir. May 22, 2013), the Second Circuit recognized that courts combine attorneys' fees and the value of the settlement to arrive at the total amount "recovered by plaintiffs." Id. In Torres, the Second Circuit found the value of the settlement to be $7.39 million as calculated by adding the $3.86 million in fees and expenses (representing 52% of the entire recovery), to the $3.53 million in relief for the class. Id. Indeed, if courts did not factor into the common fund analysis amounts for settlement administration and attorneys' fees that, by agreement, are to be paid by the defendants, there would be no incentive for class counsels to negotiate for such terms and no incentive for the defendants to negotiate for the lowest possible fee award. In such circumstances, only the absent class members would suffer.

Moreover, as the Second Circuit has held, attorneys' fees awarded as a percentage of a common fund must take into consideration the entirety of the fund, not only that portion received

8

directly by the class members. See Masters, 473 F.3d at 437.  In Masters, the Second Circuit held

that: "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at

the instigation of the entire class.  An allocation of fees by percentage should therefore be

awarded on the basis of the total funds made available whether claimed or not.  We side with the

circuits that take this approach." Id. 473 F.3d at 437.[10]  The Court continued, "[o]ur own cases

refer to 'percentage *of the fund*,' and 'percentage *of the recovery*.'  We take these references to

be to the whole of the Fund." Id. (emphasis in original, citations omitted).  See also Torres, 2013

WL 2257859, at *3 (calculating fees "on the basis of the total funds made available."); Aros v.

United Rentals, Inc., No. 10-73, 2012 WL 3060470 (D. Conn. July 26, 2012) ("In applying the

common fund method, the Supreme Court, the Second Circuit, and other Circuit Courts, have

held that it is appropriate to award attorneys' fees as a percentage of the entire maximum gross

settlement fund, even where amounts to be paid to settlement class members who do not file

claims will revert to the Defendants.").[11]

---

[10] Citing Waters v. Int'l Precious Metals Corp., 190 F.3d 1291, 1295 (11th Cir. 1999) (approving district court's award of 33 1/3%, or $13,333,333 based "on a percentage of the total fund rather than the actual payments made to class members."); Williams v. MGM-Pathe Communications Co., 129 F.3d 1026 (9th Cir.1997) (per curiam) (reversing the district court award of 33% of the claimed fund and instead awarded attorneys' fees of $4.5 million or 33% of the total funds that were available to the class even though the actual payout only totaled approximately $10,000.).

[11] See, e.g., Boeing Co. v. Van Gemert, 444 U.S. 472 (1980) (the Supreme Court confirmed the permissibility of using the entire fund as the appropriate benchmark.); Velez v. Novartis Pharmaceuticals Corp., No. 04-09194, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) (quoting Masters, 473 F.3d at 437) ("this Circuit has ruled that '[a]n allocation of fees by percentage should therefore be awarded on the basis of total funds made available whether claimed or not.'"); Dahingo v. Royal Caribbean Cruises, Ltd., 312 F. Supp. 2d 440, 443 (S.D.N.Y.2004) (noting that attorneys' fees equivalent to one-third of common fund of $18.4 million was approved notwithstanding the fact that only $5.6 million of the $18.4 was claimed by class members with the remaining $11.8 million unclaimed and reverting to the defendants); McKinnie v. JP Morgan Chase Bank, N.A., 678 F. Supp. 2d 806, 815 (E.D. Wis. 2009) (awarding $625,000 of $2.1 million fund amount despite only $500,000 in claims); 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 14:6, p. 570 (4th ed. 2002) (stating that *Boeing* settled the issue of whether the benchmark common fund amount for fee award purposes is made up of the amount claimed by class members or the amount potentially available to class members by ruling that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed.).

While the State Attorneys General appear to object to the use of the total funds made available in this Settlement, they do not cite any authority to support their position, much less authority contrary to those cited above. Amicus Br. at 17.[12]

Here, the settlement provided for a benefit to the Class in the amount of between $12,478,451.00 and $14,314,142.00. As such, the attorneys' fees and expenses requested in this case represent between 23% and 26.5% of the value of the Settlement. Furthermore, in addition to the $14,314,142.000 in immediate benefits, the Settlement requires Energy Plus to sharply curtail its past marketing practices that spawned this litigation. When Energy Plus' changes in corporate policy are taken into account, the requested fee award amount of between 23% and 26.5% of the settlement's value can be viewed as even more reasonable. See, e.g., In re Excess Value Ins. Coverage Litig., 598 F. Supp. 2d 380, 388 (S.D.N.Y. 2005) ("rather than attempt to assign a specific dollar value to the Structural Changes, the Court is acknowledging that they do benefit the Class by awarding legal fees at the upper end (30%) of the Settlement Value commonly awarded under the percentage method").

### 2. The Fee Award Is Supported by the Goldberger Factors

The 23% to 26.5% that Class Counsel are seeking and which Defendant has agreed to pay separate and apart from the Class recovery is at the middle of the spectrum of fee awards repeatedly approved by the Courts of this Circuit, with many cases awarding close to 33% of the settlement value, particularly where the case is not a mega fund case and injunctive relief is part

---

[12] The lone case cited by the State Attorneys General relating to the size of the attorneys fees in relation to the size of the Settlement is Dennis v. Kellogg, Co., 687 F.3d 1149 (9th Cir 2012). However, the decision cited by the State Attorneys General was withdrawn from publication. Assuming that the State Attorneys General meant to cite Dennis v. Kellogg Co., 697 F.3d 858 (9th Cir. 2012), this case lends no credence to the State Attorneys General arguments. There, the Ninth Circuit reversed "the district court's order approving the settlement and dismissing the case" and as such, it vacated the judgment and award of attorneys' fees that accompanied the settlement, noting that the court's "decision on the merits of the settlement renders moot the attorneys' fees issue." Dennis, 697 F.3d at 868 (9th Cir. 2012). Nowhere in Dennis did the Ninth Circuit discuss or purport to overrule its own precedent in Williams, 129 F.3d 1026 (supra fn.8), much less the controlling Second Circuit precedent in Masters.

of the settlement.  Moreover, the requested fee is eminently reasonable in light of the quality of the representation, the risk incurred by Class Counsel, and the other <u>Goldberger</u> factors.

### a.      The Time and Labor Expended by Counsel

The time and labor expended by Class Counsel and counsel in the other Energy Plus Lawsuits are set forth in detail in the Declarations filed herewith.  In general, counsel devoted more than 2,600 hours over a period of almost two years to prosecuting the actions.  Before bringing the instant action, Plaintiffs' counsel exhaustively investigated Plaintiffs' claims and independently obtained copies of the relevant contractual terms and conditions, as well as samples of Defendant's marketing materials.  Plaintiffs' counsel also identified the relevant energy markets and the rates available from local utilities and other independent ESCOs. Declaration of D. Greg Blankinship ("Blankinship Dec.") ¶ 3.  In addition, as set forth above, Class Counsel also engaged in more than eight months of sometimes contentious arm's length negotiations with Energy Plus' counsel, and reached agreement on all material terms of the settlement before negotiating the proposed fee award.

Significantly, Class Counsel is a relatively small firm comprising nine attorneys.   As a result, the time spent on this action in the hope of eventually obtaining a substantial verdict or settlement for the Class, and a fee for Class Counsel, was a significant commitment of the firm's resources.  <u>Id.</u>  While Meiselman Packman carefully screens its class action contingency matters to enhance its likelihood of success, there was absolutely no assurance that the extraordinary commitment of time and effort devoted to this action would result in the payment of any fee at all.  <u>Id.</u>  Moreover, the action was leanly staffed and efficiently managed, with two attorneys, Mr. Blankinship and Mr. Garber, accounting for nearly 90% of all time devoted to the case.  <u>Id.</u> Class Counsel should be amply compensated for the substantial time and labor invested to obtain

this outstanding settlement on behalf of the Class and should not be punished for its efficiency in achieving such a positive result.

### b.    The Magnitude and Complexity of the Litigation

The requested fee award is reasonable in light of the magnitude and complexity of the litigation.  The Class itself is large comprising of more than 400,000 current and former Energy Plus customers.  In dollar terms, moreover, the magnitude of the litigation is equally substantial. Energy Plus agreed to a settlement making available between $12,478,451.00 and $14,314,142.00.as a result of Energy Plus' sharp business practices.  By any measure, the magnitude of the case is substantial, fully justifying Class Counsel's investment of time and labor, and fully merits the requested fee award.  In the space of barely two years, Class Counsel reviewed a production comprised of almost 1 million electronic files, briefed complicated motions, and positioned the case for class certification and summary judgment.

In addition, the litigation involved a number of complex legal and factual issues.  The magnitude and complexity of this action was even greater because of the multiple states in which Energy Plus is operating, the differing disclosures that Energy Plus made in each state and the prevailing electric and gas rates at the times when these disclosures were made.  These were ever changing facts presenting unique challenges to Class Counsel.

If not for the Settlement, the need to research, brief, and develop factual submissions on class certification and summary judgment relating to these issues would have increased the expense, complexity, and duration of the litigation.  Assuming Plaintiffs' claims survived Energy Plus' opposition to class certification and its summary judgment motion, moreover, trial preparation would have required countless hours of additional work, including preparing fact and expert witnesses, identifying exhibits, preparing proposed jury instructions, and preparing cross-

examination outlines.  The trial itself would consume significant judicial resources, and would

engender additional motion practice (including evidentiary motions and any dispositive motions

filed during or at the close of trial).  Further, an appeal would have added to the complexity of

the litigation.  This is especially likely in view of the experience of defense counsel in litigating

consumer class actions.  See In re Brown Co. Sec. Litig., 355 F. Supp. 574, 592-93 (S.D.N.Y.

1973) (prestige of opposing counsel highlights complexity of litigation and challenges faced by

class counsel).  The magnitude and complexity of the litigation weigh heavily in favor of the

requested fee award.

### c.        The Risk of the Litigation

The Second Circuit has recognized that the risk involved in prosecuting a class action is

an important consideration in determining an appropriate fee award.  This factor is intended to

recognize that cases taken on a contingent fee basis entail risk of non-payment for the attorneys

that prosecute them, and it embodies an assumption that contingency work is entitled to greater

compensation than non-contingency work.  In re Telik, Inc. Sec. Litig., 576 F. Supp. 2d 570, 592

(S.D.N.Y. 2008).

The risks of a class action should not be viewed in retrospect, from the standpoint of a

settlement, but as they existed at the outset of the litigation.  In bringing this action, Class

Counsel faced several risks:  the risk of not obtaining class certification (or having the class

subsequently decertified); the risk of not prevailing on the merits; and the risk of not establishing

damages on behalf of the Class.  In light of similar uncertainties, courts have observed that

"Class counsel undertook a substantial risk of absolute non-payment in prosecuting this action,

for which they should be adequately compensated."  Maley, 186 F. Supp. 2d at 372; In re

Sumitomo, 74 F.Supp.2d at 399 (class counsel not only undertook risks of litigation, but

advanced their own funds and financed the litigation). The risks of successfully concluding this litigation are further detailed in Plaintiffs' Memorandum of Law in Support of Final Approval of the Settlement at pp. 13-23.

Of course, Class Counsel received no compensation while incurring the risks of the litigation. Moreover, there was no way to know whether Meiselman Packman would ever be compensated for its substantial commitment to this action. In fact, the case law is littered with unsuccessful class actions that provided no relief to the putative class and no fee for class counsel. See, e.g, In re Veeco Instruments Inc. Sec. Litig., 2007 WL 4115808, at *6 ("the risk of non-payment in complex cases, such as this one, is very real. There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. There is no guarantee of reaching trial, and even a victory at trial does not guarantee recovery.") (collecting cases); Stutman v. Chem. Bank, 95 N.Y.2d 24, 31, 731 N.E.2d 608, 613 (2000) (affirming grant of summary judgment to bank dismissing class' GBL § 349 claim).[4]

Class Counsel incurred 100% of the risk, devoting their time and labor to identifying Energy Plus' wrongdoing, evaluating Energy Plus' potential liability, analyzing potential legal theories, drafting the complaint, and engaging in several rounds of discovery. Throughout, there was no assurance of success or compensation. The requested fee award is entirely reasonable in light of the risks incurred by Meiselman Packman.

---

[4] In numerous class actions, counsel were awarded no fee despite investing thousands of hours in the litigation. See, e.g., In re Apollo Group, Inc. Sec. Litig., No. 04-2147, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008) (setting aside jury verdict of $277 million based on insufficient evidence); In re JDS Uniphase Corp. Sec. Litig., No. 02-1486, slip op. (N.D. Cal. Nov. 27, 2007); Robbins v. Koger Props., 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million and entering judgment entered for defendant); Anixter v. Home-Stake Prod. Co., 77 F.3d 1215 (10th Cir. 1996) (overturning verdict in favor of plaintiff class based on subsequent change in law).

### d. The Quality of Representation

The quality of Class Counsel's representation is reflected in the reputation of Meiselman Packman; the experience of the attorneys principally involved in this case; and above all, the manner in which they prosecuted this case from the pleadings, through discovery, to the settlement negotiations and the instant motion for final approval. "[P]rosecution and management of a complex national class action requires unique legal skills and abilities." Edmonds v. United States, 658 F. Supp. 1126, 1137 (D.S.C. 1987). The Court has observed first-hand in this case the skills and abilities of Class Counsel, and Class Counsel enjoys a national reputation in the area of complex class action litigation. Blankinship Dec. ¶¶ 18-23.

The Settlement negotiated with Energy Plus is a highly favorable outcome for the Class, and is the direct result of the creativity, diligence, hard work, and skill brought to bear by Class Counsel at every stage of the proceedings. Moreover, this result was achieved without the assistance of any governmental enforcement action or other companion case to blaze the trail for Class Counsel. This is especially noteworthy because the theory of the case, while rooted in established contract and consumer law, was novel, in that no previous consumer class action has been adjudicated involving a claim of deceptive acts and practices relating to the marketing of electrical and gas rates. Throughout the litigation, moreover, Class Counsel put the best interests of the Class ahead of their own, negotiating the most favorable settlement terms possible before turning to the question of attorneys' fees, and then negotiating a fee to be paid by Energy Plus, rather than the Class, and which in no way diminishes or erodes the benefits received by Class members. Class Counsel's exemplary prosecution of this class action weighs strongly in favor of the proposed fee award.

The high quality of the opposition that Plaintiffs' counsel faced is a further testament to the quality of Plaintiffs' counsel's representation. Defendant is represented by skilled and highly regarded counsel from a prestigious firm with a well-deserved reputation for vigorous advocacy in the defense of complex civil cases. Courts have repeatedly recognized that the caliber of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality of the plaintiffs' counsel's performance, and in this case it supports approval of the requested fee. See, e.g., In re Marsh Erisa Litig., 265 F.R.D. 128, 148 (S.D.N.Y. 2010) (reasonableness of fee was supported by fact that defendants "were represented by first-rate attorneys who vigorously contested Lead Plaintiffs' claims and allegations").

### e. The Requested Fee in Relation to the Settlement

The federal courts have established that a standard fee in complex class action cases like this one, where the plaintiffs' counsel have achieved a good recovery for the class, ranges from 20 to 50 percent of the gross settlement benefit. In re Marsh Erisa Litig., 265 F.R.D. at 149 (collecting cases and awarding $11,665,500 or one-third of the recovery).

Plaintiffs are only requesting between 23% and 26.5% of the value of the settlement, and Plaintiffs secured Defendant's agreement to pay this amount separate and apart from the benefit obtained for the Class. On a percentage basis, the compensation requested here is plainly well within the range of percentage fee awards within the Second Circuit, particularly cases with similarly sized settlement funds. See, e.g., Beckman v. KeyBank, N.A., No. 12-7836, 2013 WL 1803736, at *12 (S.D.N.Y. Apr. 29, 2013) (awarding 33% of $4.9 million settlement holding "[t]his case does not require a 'sliding scale' approach to prevent a windfall because the requested amount is consistent with the norms of class litigation in this circuit."); Hernandez v. Merrill Lynch & Co., Inc., No. 11-8472, 2013 WL 1209563, at *8 (S.D.N.Y. Mar. 21, 2013)

(awarding "$2,310,000 which is 33% of the settlement fund."); Clark v. Ecolab Inc., No. 07-8623, 2010 WL 1948198, at *8 (S.D.N.Y. May 11, 2010) (awarding fees of 33% of $6 million settlement fund); Willix v. Healthfirst, Inc., 07-1143, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011) (awarding "$2,558,333 in attorneys' fees or one third (33 1/3%) of the Fund."); deMunecas v. Bold Food, LLC, No. 09-00440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010); McMahon v. Olivier Cheng Catering & Events, LLC, No. 08-8713, 2010 WL 2399328, at *9 (S.D.N.Y. Mar. 3, 2010) (awarding fees of 33% settlement fund) (awarding "thirty-three percent (33%) of the Fund."); Hicks, 2005 WL 27257792, at *9 (awarding 30% of $10 million settlement, plus expenditures); Maley, 186 F.Supp.2d at 370 (awarding 33 1/3% of fund valued at $11.5 million); In re Warnaco Group, Inc. Sec. Litig., No. 00-6266, 2004 WL 1574690, at *3 (S.D.N.Y. July 13, 2004) (30% of $12.85 million settlement); Spann v. AOL Time Warner, Inc., No. 02-8238, 2005 WL 1330937, at *8 (S.D.N.Y. June 7, 2005) (awarding 33.3% of settlement fund); Stefaniak v. HSBC Bank USA, N.A., No. 05-720, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of $2.9 million settlement fund, finding it "typical in class action settlements in the Second Circuit") (collecting cases).[13]

---

[13] See, e.g., Taft v. Ackermans, No. 02-7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (awarding 30%); Collins v. Olin Corp., No. 03-945, 2010 WL 1677764, at *6 (D. Conn. Apr. 21, 2010) (awarding one-third of settlement fund as attorneys' fees); Khait v. Whirlpool Corp., No. 06-6381, 2010 WL 2025106, at *8-*9 (E.D.N.Y. Jan. 20, 2010) (awarding fees of 33% settlement fund); Reyes v. Buddha-Bar NYC, No. 08-02494, 2009 WL 5841177, at *4 (S.D.N.Y. May 28, 2009) (awarding fees of 33% settlement fund); Frank v. Eastman Kodak Co., 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (awarding 40% of settlement fund, and noting that due to the relatively small settlement fund, the requested fee award was necessary to compensate counsel adequately); Parker v. Jekyll & Hyde Entm't Holdings, LLC, No. 08-7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 2, 2010) (awarding class counsel 33% of fund); Prasker v. Asia Five Eight LLC, 08-5811, 2010 WL 476009, at *6 (S.D.N.Y. Jan. 6, 2010) (awarding class counsel fees of 33% of fund); Duchene v. Michael Cetta, Inc., No. 06-4576, 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009) (awarding class counsel 32.2% of $3,150,000 fund); Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar, 06 CIV.4270 (PAC), 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009), 2009 WL 5851465, at *4–5 (awarding 33% of $3,265,000 fund); RMED Int'l, Inc. v. Sloan's Supermarkets, Inc., No. 94-5587, 2003 WL 21136726, at *2 (S.D.N.Y. May 15, 2003) (awarding 33 1/3% of $975,000 settlement plus expenses); In re Bisys Sec. Litig., No. 04-3840, 2007 WL 2049726, at * 2 (S.D.N.Y. July 16, 2007) (30% of $65.87 million settlement); In re Lloyd's Am. Trust Fund Litig., No. 96-1262, 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002) (awarding fee equivalent to 28% of settlement value and collecting common fund cases with awards of 1/3 or 33%).

In re Polaroid, 2007 WL 2116398 (S.D.N.Y. Jul. 19, 2007), a case decided by Your Honor, highlights the reasonableness of the percentage requested. In Polaroid, in determining the reasonableness of a 28% fee of a $15 million settlement, Your Honor noted that "fee request [of] 28% of the total amount of settlement amounting to $4.2 million . . . is reasonable." In re Polaroid, 2007 WL 2116398, at *3; see also In re Rite Aid Corp. Sec. Litig., 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (noting that in a study of 287 settlements ranging from less than $1 million to $50 million, "the median turns out to be one-third").[14] Here, despite the similar size settlement as compared to Polaroid, Class Counsel is asking for less than the 28% Your Honor awarded in Polaroid.

Furthermore, in Polaroid, Your Honor noted that the case "required significant discovery, including the exchange and review of hundreds of thousands of pages of documents" with class counsel working "a total of approximately 16,245 hours, while supporting professionals worked approximately 5,118 hours." Id., at *3. Here, Class Counsel reviewed an ESI production containing close to 1 million electronic files, far exceeding the number in Polaroid, and counsel did so with remarkable efficiency. The total attorney hours in Polaroid totaled more than 16,000 and the total supporting professional time included an additional 5,000 hours. Here, Class Counsel was able to secure a settlement substantially similar in size while expending approximately 1/5 of the attorney time. See also Bricker (awarding 25% even though "risks in this litigation were not particularly high and the parties reached a tentative settlement less than ten months after the action was filed."); In re Alloy, Inc. Sec. Litig., 2004 WL 2750089, at *3 ("Plaintiffs' counsel has represented plaintiffs and the Settlement Class more than adequately,

---

[14] The fact that this settlement is not a mega-fund settlement warrants an award of attorneys' fees closer to the 33% awarded by the cases cited above than by the cases that award less.

and the a fee award of 24% of the Settlement Fund is commensurate with counsel's efforts and the nature of this action.").

Maley is also instructive. There, after less than one year of litigation, the parties reached a "relatively quick settlement" prior to the commencement of extensive discovery. See Maley, 186 F. Supp. 2d at 363-64. In awarding a fee of 33.3% of a similarly sized $11.5 million settlement that resulted in a lodestar cross-check multiplier of 4.65, the court held that "[i]n the context of a complex class action, early settlement has far reaching benefits in the judicial system." Id. at 373. Here, Class Counsel conducted more discovery than in Maley, litigated longer and harder, achieved a greater result, and Defendant will pay any awarded fees and expenses separate and apart from the Class recovery. Class counsel is nonetheless asking for 7%-10% less than the court awarded in Maley, and a much smaller multiplier.

In In re Warner Chilcott Ltd. Sec. Litig., No. 06-11515 (WHP), 2009 WL 2025160 (S.D.N.Y. July 10, 2009), Your Honor remarked that "[t]he 27.5% request is within the range of percentages awarded in this district." Id., at *4 (citing Hicks, 2005 WL 2757792, at *9 and Maley, 186 F. Supp. 2d at 363). While Your Honor reduced the requested 27.5% in that case to 18%, the reasons for the reduction in Warner, are not present here. In Warner, "the risk in th[e] litigation significantly depreciated when Defendants failed to move to dismiss and decreased even more when Defendants did not oppose class certification." Id., at *4. Here, Class Counsel not only had to defend against a motion to dismiss, Class Counsel had to navigate this litigation knowing that at the time of settlement, Energy Plus had been successful in obtaining dismissal of similar claims asserted in Faistl v. Energy Plus Holdings LLC, No. 8:12-cv-02355 (D.N.J.), a nearly identical case, and as such, the Class faced substantial obstacles on summary judgment. Moreover, here, Defendant intended to mount a furious assault against class certification,

pointing to the numerous variations in mailings received by each Class member and sent over different time periods. Needless to say, the risks here were substantial and far outweigh any risk faced in Warner.

Additionally, in reducing the requested fee in Warner, this Court took issue with the 7,400 hours spent by counsel to review approximately 1 million pages of discovery and hoped that by cutting the requested fee it would "encourages more efficient discovery practices." Id. Class Counsel undoubtedly heeded this Court's words and was able to review a similar number of pages of documents in less than one-third of the time. See Blankinship Decl. ¶¶ 6-8, 24.

As such, the reasons for reducing the requested fee in Warner are simply not present here, and this case more aligns with Your Honor's decision in Polaroid, Alloy, and Bricker, awarding 28%, 24%, and 25% respectively. In fact, in Bricker Your Honor awarded 25%, even though the case was "neither a complex matter, nor were the risks of establishing liability or damages particularly high." Bricker, at *2.

The $3,300,000 award for fees and expenses that Class Counsel has requested, and that Energy Plus has agreed to pay, is in line with awards from courts within this Circuit in similar circumstances and leans towards the lower end given the particular facts of this case and the size of the settlement.

### f.      Public Policy Considerations

Strong public policy supports rewarding counsel for bringing successful consumer fraud litigation. See, e.g., In re Flag Telecom Holdings, Ltd. Sec. Litig., No. 02-3400, 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010) (if the "important public policy [of enforcing consumer protection laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks

they undertook"); <u>Maley</u>, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing [consumer protection] laws must be considered."); <u>Hicks</u>, 2005 WL 2757792, at *9 ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.").

The settlement provides substantial benefits to the public as well as the individual Energy Plus consumers. First and foremost, the Settlement serves public policy – as embodied in state consumer fraud statues and the common law of contract – by compensating consumers, holding Energy Plus accountable for its allegedly misleading advertising, and deterring future deceptive practices by Energy Plus. This deterrent effect, moreover, should carry over to other ESCOs, which will be on notice that they will suffer unwanted cost, inconvenience, bad publicity, and legal exposure if they fail to accurately advertise the energy rates they intend to charge their customers. "Plaintiffs may find it difficult to obtain representation if attorneys know their reward for accepting a contingency case is merely payment at the same rate they could obtain risk-free for hourly work, while their downside is no payment whatsoever." <u>In re Abrams & Abrams, P.A.</u>, 605 F.3d 238, 246 (4th Cir. 2010).

Here, not a single Class member objected to Class Counsel's requested fee. Nor is this case a mega fund case and the requested 23% to 26.5% come nowhere near bestowing a windfall on Class Counsel (see lodestar cross-check <u>infra</u>). Therefore, the policy of awarding fees in a lower range to account for economies of scale and to prevent windfalls is not at issue here. Simply put, there is no reason to depart from the $3,300,000 that Defendant has agreed to pay as this amount falls squarely within the range of fees normally approved within this Circuit under either the percentage of the fund or lodestar methodology, and any reduction would be against public policy as it could only serve as a disincentive to future class counsel from bringing similar

cases and would reward the alleged wrongdoer for the benefit of neither the Class or the public at large.

Taking into account all the <u>Goldberger</u> factors, the $3,300,000 million award to Class Counsel comprises a reasonable percentage of the benefit bestowed on the Class, and it should be approved.

**E.      The Fee Is Justified Under the Lodestar/Multiplier Method**

Application of the lodestar method confirms the reasonableness of Class Counsel's request.  Despite its criticism of the lodestar method, the Second Circuit has advised that it remains potentially useful as a "cross-check" against the percentage method.  <u>Goldberger</u>, 209 F.3d at 50.  "Of course, where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized."  <u>Id.</u> (citation omitted).

Under the lodestar method, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rates, and then the court adjusts that lodestar figure (by applying a multiplier) "to reflect litigation risk, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."  <u>In re Flag Telecom Holdings, Ltd. Sec. Litig.</u>, 2010 WL 4537550, at *23.  <u>See also Maley</u>, 186 F. Supp. 2d at 370 (explaining that the lodestar "is typically enhanced by a multiplier to reflect consideration of a number of factors, including the contingent nature of success and the quality of the attorney's work") (citation omitted).  "In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court."  <u>In re Telik</u>, 576 F. Supp. 2d at 590 (a multiplier of 4 .65 was "well within the range awarded by courts in this Circuit and courts throughout the country") (<u>citing Maley</u>, 186 F. Supp. 2d at 369).[15]

---

[15] <u>See</u>, <u>e.g.</u>, <u>Hernandez v. Merrill Lynch & Co., Inc.</u>, 2013 WL 1209563, at *9 (Awarding lodestar multiplier of 3.8, holding it "well within the range of multipliers that have been granted by courts in this Circuit and elsewhere" and

The fee requested in this case is more than justified under the lodestar method.  Class

Counsel and counsel in the other Energy Plus Lawsuits that are encompassed within this

Settlement reasonably devoted in excess of 2,600 hours to this action, including time spent

researching the facts and the law, drafting the complaint, conducting discovery, motion practice,

negotiating the settlement, and responding to hundreds of class members' inquiries.  Applying

typical hourly rates,[16] which are reasonable and well within the range typically charged by

similarly well qualified counsel in this District, yields a lodestar of $1,544,892.70.

There is no question that Class Counsel's time was spent efficiently.  Blankinship Decl.

¶¶ 3-17, 24-26.  In cases of similar magnitude that resulted in similar sized settlements, class

counsel spent almost five times as many hours as were expended here.  See In re Polaroid, 2007

WL 2116398, at *3  (class counsel "worked a total of approximately 16,245 hours, while

supporting professionals worked approximately 5,118 hours" to secure $15 million settlement);

Warner, 2009 WL 2025160, at *4  (7,400 hours to review 1 million pages of documents and

secure $16.5 million settlement).

Moreover, Class Counsel has already factored potential inefficiencies into the lodestar,

cutting more than 150 hours of time for which Class Counsel and counsel in the other Energy

Plus Lawsuits and support staff actually billed.  This involved writing off the time of lawyers and

support staff that billed less than 20 hours to the Energy Plus Actions.  Class Counsel's use of

---

noting that "Courts regularly award lodestar multipliers of up to eight times lodestar, and in some cases, even higher multipliers.") (collecting cases); Spicer v. Pier Sixty LLC, No. 08-10240, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) ("[i]n contingent litigation, lodestar multiples of over 4 are routinely awarded by courts.") (quoting In re Telik, 576 F. Supp. 2d at 590); deMunecas v. Bold Food, LLC, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010) ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar.").

[16] The Supreme Court has approved the use of current hourly rates to compensate for inflation and loss of use of funds.  Missouri v. Jenkins, 491 U.S. 274, 284 (1989).  See also In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig., 724 F. Supp. 160, 163-64 (S.D.N.Y. 1989) (citing cases); In re NASDAQ Mkt.-Makers Antitrust Litig., 187 F.R.D. 465, 489, n.25 (S.D.N.Y. 1998)

billing judgment recommends against any further deduction in the lodestar used for the purposes of performing a cross-check.

Moreover, the hourly rates charged by counsel are reasonable, indeed modest, by comparison with other firms in the Southern Districts. "[T]he American Lawyer recently reported that the median billing rate for partners at many leading law firms exceeds $900/hour. In re Flag Telecom Holdings, Ltd. Sec. Litig., 2010 WL 4537550, at *26.[17]

Comparing the lodestar with the requested fee of $3,300,000, less the expenses of $45,292.04, yields a multiplier of 2.1 ($3,254,708.00 ÷ $1,544,892.70). That multiplier is unquestionably within the range of multipliers found reasonable by courts in this Circuit, and is fully justified in light of the effort undertaken, the recovery achieved, risks involved, and the efficiency with which this case was litigated. In sum, the 2.1 multiplier sought here is reasonable and within the range approved in past cases.

### F.     The Reaction of the Class Is Overwhelmingly Favorable

Courts give "great weight" to the reaction by members of the Class to a class action settlement. Maley, 186 F. Supp. 2d at 374 (citation omitted). Numerous courts have noted that the lack of objection from members of the class is one of the most important factors in determining the reasonableness of a requested fee. Id. See also Ressler v. Jacobson, 149 F.R.D. 651, 656 (M.D. Fla. 1992) (lack of objections is "strong evidence" of the reasonableness of the fee request). Here, the Class Notice approved by the Court was mailed to more than 400,000 Class members. The Class Notice informed the Class members that Class Counsel would seek

---

[17] See, e.g., Chin v. RCN Corp., No. 08-7349, 2010 WL 3958794, at *5-6 (S.D.N.Y. Sept. 8, 2010) (approving a "blended" hourly rate of approximately $605); In re Comverse Tech., Inc. Sec. Litig., No. 06-1825, 2010 WL 2653354, at *4 (E.D.N.Y. June 24, 2010) (hourly rates up to $880 were "not extraordinary for top New York law firms"); Telik, 576 F. Supp. 2d at 589-90 (noting that hourly rates of $700-$750 for partners were consistent with the rates charged by the defense bar for similar work, and that comparable rates have been found reasonable by other courts for class action work).

court approval of fees and expenses in an amount up to $3,300,000 and that Energy Plus had agreed to pay such fees and expenses separate and apart from the relief provided to the Class. Not a single Class member has objected to the fee request. This "overwhelmingly positive response to date by the Class attests to the approval of the Class with respect to both the Settlement and the fee and expense application." In re Flag Telecom Holdings, Ltd. Sec. Litig., 2010 WL 4537550, at *29; In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 305 (3d Cir. 2005) ("Notice of the fee request and the terms of the settlement were mailed to 300,000 class members, and only two objected. We agree with the District Court such a low level of objection is a 'rare phenomenon.'").

## IV. THE EXPENSES INCURRED ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Class Counsels' fee application includes a request for reimbursement of litigation expenses that were reasonably incurred and necessary to the prosecution of this Action. See Blankinship Dec. ¶ 28. These expenses are properly recovered by counsel. See In re China Sunergy Sec. Litig., No. 07-7895, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'"). As set forth in detail in the declarations filed herewith, Class Counsel and counsel in the other Energy Plus Lawsuits incurred $45,292.04 in litigation expenses on behalf of the Class in the prosecution of the Action. Id. Reimbursement of these expenses is fair and reasonable and the expenses are encompassed by the $3,300,000 request. See, e.g., Sony, 2010 WL 3422722, at *8-9 (approving flat payment covering fees and expenses).

All of the expenses were reasonable and necessary to the prosecution of this litigation, and are of the type that law firms typically bill to their clients and that courts typically approve for reimbursement.[18]

## V. INCENTIVE AWARDS

Class Counsel respectfully requests that the Court approve the payment of incentive awards of Plaintiffs Angela Wise and Gideon Romm in the amount of four thousand dollars ($4,000),[19] and awards of two thousand ($2,000) for the remaining named plaintiffs in the Energy Plus Lawsuits in recognition of their efforts on behalf of the Class. Pursuant to the Settlement Agreement, Energy Plus has agreed to pay these awards using its own resources, which means these payments will not reduce the benefits provided to the Class members. The requested payments are well deserved and fall well within the range of incentive awards approved in prior cases. Polaroid, 2007 WL 2116398, at *3 (citing Dornberger v. Metropolitan Life Ins. Co., 203 F.R.D. 118 (S.D.N.Y. 2001) (noting case law supports payments of between $2,500 and $85,000 to representative plaintiffs in class actions).

Plaintiffs reviewed, and discussed with Class Counsel, the pleadings, discovery demands, discovery responses and memoranda of law. Plaintiffs conferred with Class Counsel regarding the settlement negotiations, at all times encouraging Class Counsel to obtain the best possible result for the absent class members. In Bricker, 2009 WL 2603149, at *2, Your Honor awarded

---

[18] See, e.g., In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., No. 02-1484, 2007 WL 313474, at *24 (S.D.N.Y. Feb. 1, 2007) (awarding expenses incurred for "computer research, reproduction/duplication, secretarial overtime, phone/fax/postage, messenger/overnight delivery, local transportation/meals, filing fees and attorney services") (internal quotations omitted); Veeco, 2007 WL 4115808, at *10 (awarding expenses including "consultant and expert fees, photocopying of documents, mediation fees, court filing fees, deposition transcripts, fees for service of subpoenas to witnesses, on-line research, creation of a document database, messenger service, postage and next day delivery, long distance and facsimile expenses, transportation, [and] travel"); In re China Sunergy Sec. Litig., 2011 WL 1899715, at *6 (same).

[19] The proposed incentive awards for Plaintiffs Angela Wise and Gideon Romm are higher than the proposed awards for other plaintiffs because they were involved in the litigation for a longer period of time and because they participated in discovery.

incentive awards of between $5,000 to $7,500 for the plaintiffs who "reviewed documents, met with counsel on numerous occasions, and spoke to current and former employees about the case," similar functions to those performed by the Plaintiffs here.  Id.

## CONCLUSION

For all the foregoing reasons, Plaintiffs, the Class, and Class Counsel respectfully request that the Court grant final approval of the Settlement; enter the accompanying proposed Final Approval Order; and approve the requested attorneys' fees and incentive awards to be paid by Energy Plus.

Dated:      White Plains, New York
            July 1, 2013

                                   MEISELMAN, PACKMAN, NEALON,
                                   SCIALABBA & BAKER P.C.

                                   By:      /s/ D. Greg Blankinship
                                            D. Greg Blankinship
                                            Todd S. Garber
                                            1311 Mamaroneck Avenue
                                            White Plains, New York 10605
                                            Tel: (914) 517-5000
                                            gblankinship@mpnsb.com

                                            *Attorneys for Plaintiffs*