# Exhibit A

**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONALD FAISTL, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ENERGY PLUS HOLDINGS, LLC, et al.,<br>Defendants. | Civil Action No. 12-2879 (JLL)<br><br><br>**OPINION** |

**LINARES,** District Judge.

This case involves allegations that certain third-party utility service providers lured potential customers by making exaggerated claims of energy savings. According to the Plaintiff, not only were any purported savings illusory, but consumers actually ended up paying substantially higher rates for their energy. Currently before the Court is Defendants' motion to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Defendants' motion to dismiss is **granted**. Counts One through Six of Plaintiff's Complaint are dismissed *without* prejudice.

1

# **BACKGROUND**[1]

1. *General Facts*

In 1999, legislation was signed in New Jersey permitting third party suppliers, such as Defendant Energy Plus, to sell electricity and natural gas directly to consumers. (Compl., ¶ 16).

The Complaint alleges that Energy Plus aggressively markets its purported energy savings in widely distributed marketing materials. (Compl., ¶ 20). Among the affirmative claims made by Energy Plus, generally, are the following:

- Save up to 10% - Energy Plus has a current supply rate for new customers that is up to 10% below your local utility.

- Enjoy the same service without risk, fees, or long-term commitment.

- When you choose Energy Plus, you'll receive the same energy service you've always had plus your choice of rewards – just for paying your energy bills. Energy Plus® is one of the fastest growing energy suppliers in the country and one of the only companies that offers valuable rewards to all of its customers just for paying their energy bills.

- Is there a cost to enroll? No. Energy Plus does not charge start-up fees of any kind and does not require any long-term contract/commitment before you start service. In some cases, your local utility company may charge a nominal fee to switch.

- The best part is that nothing about how your service is delivered will change. Your local utility will continue to deliver your energy, read your meter, handle service emergencies, and send your monthly statements. You'll be earning Cash Back while still enjoying the safety and reliability of your current service.

- Selecting Energy Plus to be your energy supplier is easy. There is no cost to enroll, no monthly fees associated with your account, and no cancellation charges.

---

[1] The Court accepts the following facts as true solely for purposes of the instant motion.

2

- Save on your bill — Energy Plus customers are currently saving with a competitive rate that is approximately 10% below your local utility company.

(Compl., ¶ 20).

2.    *Facts Relevant to Donald Faistl*

In or around August 2011, Plaintiff Donald Faistl received an advertisement from the Energy Plus entities[2] promising up to a 10% savings over his local utility and 17,500 miles from Continental Airlines if he enrolled in the Defendants' services.  (Compl., ¶ 3).    In particular, the advertisement provided that:

> Save up to 10% on your electricity bill* and enjoy these exclusive benefits when choosing Energy Plus as your electricity provider:
> - Earn 15,000 bonus miles after two months of service*
> - Earn 2,500 bonus miles after two months of natural gas service*
> - Earn three miles per $1 spent in supply charges*
> - Never pay a cancellation fee or be locked into a long-term commitment
> - Receive the same reliable delivery service from your local utility company

(Ex A to Def. Br.).[3]  Just below these statements, the "*" provided the terms of the offer:

---

[2] The Energy Plus entities are comprised of Defendant NRG Energy, Inc., the parent corporation of Defendant Energy Plus Holdings, LLC, as well as Defendant Energy Plus Natural Gas LP.

[3] The court may consider the e-mail advertisement attached as Exhibit A to Defendants' opposition brief without converting the motion into one for summary judgment because Plaintiff's claims are based on this document and Plaintiff has not disputed its authenticity. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993) ("We now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

3

> *Bonus offer only available to new Energy Plus customers. If enrolling an electric account, 15,000 bonus miles will be awarded to OnePass members after completing two months of active electric service with Energy Plus. If enrolling a natural gas account, 2,500 bonus miles will be awarded to OnePass members after completing two months of active gas service with Energy Plus. Active accounts are defined as those (i) that are billing more than $0 and (ii) for which Energy Plus has not received a request on behalf of the customer to discontinue their service. Please note, if you enroll both electric and gas accounts, it is possible your services will start on different dates, so your bonuses may be awarded on different dates. Members will earn three miles for every $1 spent on the supply portion of the monthly bill.

> The initial rate that applies to your first month of service with Energy Plus will be FOR ELECTRIC: listed in the Rate section of the Terms of Service displayed on the application page as well as in your Welcome Confirmation (letter or email), and FOR NATURAL GAS: up to 10% lower than your utility's applicable rate, as described below. The Energy Plus rate is variable and therefore subject to change each billing cycle. Current and historical rates should not be taken as a guarantee of future rates, and Energy Plus makes no warranty, expressed or implied, regarding future savings.

(*Id.*).

Plaintiff alleges that, in reliance on the foregoing representations, he completed an online application on or about August 21, 2011. (Compl., ¶ 3). Plaintiff subsequently entered into an agreement with Energy Plus (hereinafter "Agreement") for the provision of electricity and natural gas. (Ex. B. to Defenant's Br.).[4] The Agreement provided, in relevant part:

> **Rate:** For natural Gas – Variable price each month will reflect the cost of natural gas commodity, capacity, storage, balancing, transportation to the Delivery Point, agency services; plus all

---

[4] The Court may consider the parties' Agreement without converting the motion into one for summary judgment inasmuch as (1) Plaintiff's claims are based on this Agreement, and (2) Plaintiff does not dispute its authenticity. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993).

> applicable taxes, fees, charges, costs, expenses and margins. The price may be lower or higher than your [local distribution utility]'s price. For Electricity – The initial rate that applies to your first month of service is listed below based on your account type and utility. . . . Variable price each month will reflect the cost of electricity, including energy, capacity, settlement, ancillaries, related transmission and distribution charges and other market-related factors; plus all applicable taxes, fees, charges, costs, expenses and margins. The price may be lower or higher than your [local distribution utility]'s price.

(Ex. B. to Def. Br.).  Pursuant to the parties' Agreement, Plaintiff began receiving electric and gas service from Energy Plus in October 2011. (Compl., ¶ 3).

Initially, Plaintiff did realize nominal savings; however, within a month, he began paying as much as 36% more for his Energy Plus electric service and over 10% more for his gas service. (*Id.*, ¶ 4).  In the months that followed, Plaintiff began paying significantly more for the new services as compared to what he would have paid based on Jersey Central Power & Light ("JCP&L), New Jersey Natural Gas ("NJNG") rates or the rates charged by other third party energy providers. (*Id.* at ¶ 4).

In light of the foregoing, Plaintiff commenced the instant cause of action individually and on behalf of all current or former Energy Plus customers that were allegedly injured as a result of Defendants' alleged deceptive marketing campaigns.[5]  Plaintiff's Complaint asserts the following claims for relief: (1) violation of the New Jersey Consumer Fraud Act, (2) common law fraud, (3) breach of contract, (4) breach of the covenant of good faith and fair dealing, and (5) unjust enrichment.   Defendants have filed a motion to dismiss each of the foregoing claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[5] This Court's jurisdiction is premised on 28 U.S.C. § 1332(d)(2) and (6) of the Class Action Fairness Act of 2005, and on 28 U.S.C. § 1367.

## LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S.Ct. at 1949. Thus, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truth. *Id.* at 1940; *In re Nice Sys., Ltd. Sec. Litig.*, 135 F. Supp. 2d 551, 565 (D.N.J. 2001). With this framework in mind, the Court turns now to Defendants' motion.

## ANALYSIS

1.    *Common Law Fraud Claim*

To state a claim for fraud under New Jersey law, a plaintiff must establish: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997). In addition, Federal Rule of Civil Procedure 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

6

Fed. R. Civ. P. 9(b). The purpose of the heightened pleading standards is to require the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007); *see also Seville Indus. Mach. Corp. v. Southmost Mach. Corp. .*, 742 F.2d 786, 791 (3d Cir. 1984). "To satisfy this heightened standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200. Plaintiff must also allege who made the purported misrepresentations and what specific misrepresentations were made. *See, e.g., Frederico v. Home Depot*, No. 05–5579, 2006 WL 624901, at *2 (D.N.J. March 10, 2006).

Plaintiff claims that Defendant made one particular affirmative misrepresentations in or around August 2011, namely, that he would receive "up to a 10% savings" over his local utility. (Compl., ¶ 3).[6] The alleged omission is the failure to disclose that the rates charged would rise in the future. (Compl., ¶ 21). According to Plaintiff, "these omissions and statements were made by Defendants with knowledge of their falsity and with the intent that Plaintiff and Class Members rely on them." (Compl., ¶ 42).

---

[6] To the extent Plaintiff attempts to base his fraud claim on the purported misrepresentations set forth in paragraph 20 of the Complaint, such statements fail to meet the pleading requirements of Rule 9(b) inasmuch as Plaintiff has failed to allege who made the purported representations, when they were made, how they were made, and/or to whom they were made. *See, e.g., Frederico v. Home Depot*, No. 05–5579, 2006 WL 624901, at *2 (D.N.J. March 10, 2006). Simply put, Plaintiff fails to allege with sufficient particularity the circumstances surrounding *any* of the representations set forth in paragraph 20 of the Complaint. *See, e.g., Klein v. General Nutrition Co., Inc.,* 186 F.3d 338, 345 (3d Cir. 1999) ("The complainant fails to attribute the statement to any specific member of GNC management. Fed.R.Civ.P. 9(b) requires, at a minimum, that the plaintiff identify the speaker of allegedly fraudulent statements."); *Granite State Ins. Co. v. UJEX, Inc.,* Civ. No. 03-1220, 2005 WL 1618792, at *8 (D.N.J. July 11, 2005) (dismissing fraud claim under Rule 9(b) where complaint was utterly devoid of the averments required by Rule 9(b), including the identity of the alleged speaker).

As a preliminary matter, the Court notes that Plaintiff has argued, in his opposition brief, that the parties' Agreement – or "confirmation email"—was misleading inasmuch as it should have warned customers that "they will **always** be charged a higher rate than their local utility after the first month." (Pl. Opp'n Br. at 1). This allegation is notably absent from Plaintiff's Complaint and therefore cannot form the basis of any of Plaintiff's claims. *See, e.g., Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir.1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

As to the alleged affirmative misrepresentation—that he would receive "up to a 10% savings" over his local utility provider—Plaintiff's common law fraud claim fails because Plaintiff fails to allege any particular statement made by Defendant that was, in fact, false. Plaintiff's claim of fraud is premised on the theory that the representation that he could "save up to 10%" by switching to Energy Plus was misleading inasmuch as his rates actually increased once he switched. (Compl., ¶ 24). But Plaintiff concedes that he did, initially, realize a savings in his monthly bill. *See* Compl., ¶ 4. Moreover, the phrase "save up to 10%" does not, without more, guarantee any particular percentage of savings, particularly when read in conjunction with (a) the bottom of the August 2011 e-mail which provided, *inter alia*, that "The Energy Plus rate is variable and therefore subject to change each billing cycle,"[7] and (b) the parties' Agreement which provided, *inter alia*, that "Variable price each month will reflect the cost of electricity, including energy, capacity, settlement, ancillaries, related transmission and distribution charges and other market-related factors . . ."[8]

---

[7] *See* Ex. A to Defendants' Motion, Docket Entry No. 14.

[8] *See* Ex. B to Defendants' Motion, Docket Entry No. 14.

As to the alleged omission[9]—failure to disclose that the rates charged would rise in the future—the actual terms of the parties' Agreement clearly indicates that, for both natural gas and electricity, the monthly rates would be "variable" and "may be lower or higher than your [local distribution utility]'s price." (Ex. B. to Def. Br.).   Thus, under either theory, Plaintiff has failed to plead a claim of fraud that is plausible on its face.

Separate and apart from this deficiency, Plaintiff has failed to plead *any* facts that would allow this Court to draw the reasonable inference that any of the Defendants *knew* any representations they made, respectively, were in fact false.[10] *See generally In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 282 (3d Cir. 2006) ("[P]leading of scienter sufficient to satisfy Rule 9(b) 'may not rest on a bare inference that a defendant "must have had" knowledge of the facts' or 'must have known' of the fraud given his or her position in the company. "). Absent such factual content, generalized allegations that Defendant(s) made

---

[9] Plaintiff has alleged no facts to support the theory that Defendant had a duty to disclose any particular information concerning applicable rates. *See Lightning Lube, Inc. v. Witco Corp.* 4 F.3d 1153, 1185 (3d Cir. 1993) ("Where a claim for fraud is based on silence or concealment, New Jersey courts will not imply a duty to disclose, unless such disclosure is necessary to make a previous statement true or the parties share a "special relationship.").

[10] The Supreme Court, in *Iqbal,* made clear that:

> It is true that Rule 9(b) requires particularity when pleading "fraud or mistake," while allowing "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally." But "generally" is a relative term. In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake.   Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard.   It does not give him license to evade the less rigid—though still operative—strictures of Rule 8. And Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label "general allegation," and expect his complaint to survive a motion to dismiss.

*Iqbal*, 129 S.Ct. at 1954.

9

affirmative representations to the Plaintiff with "knowledge of their falsity" do not benefit from the presumption of truth. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 131 (3d Cir. 2010) ("We also disregard 'naked assertions devoid of further factual enhancement' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.' ") (citing *Iqbal*, 129 S.Ct. at 1949).

Defendants' motion to dismiss this claim is granted. Plaintiff's fraud claim is dismissed without prejudice.

2.   *New Jersey Consumer Fraud Act Claim*

To state a claim pursuant to the New Jersey Consumer Fraud Act ("CFA"), a plaintiff must allege three elements: (1) unlawful conduct, (2) an ascertainable loss, and (3) a causal relationship between the defendants' unlawful conduct and the plaintiffs ascertainable loss. *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1086 (N.J. 2007) (internal quotations omitted)

Additionally, to adequately state a claim under the CFA, not only must a plaintiff allege facts sufficient to establish the elements discussed above, but those allegations must be plead with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. *See Rait v. Sears, Roebuck and Co.*, No. 08-2461, 2009 WL 250309, at * 4 (D.N.J. Feb. 3, 2009); *Parker v. Howmedica Osteonics Corp.*, No. 07-2400, 2008 WL 141628, at *3 (D.N.J. Jan. 14, 2008). These requirements may be satisfied "by pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into [the] allegations of fraud." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (internal quotations omitted).

Based on the reasons that follow, Plaintiff's consumer fraud act claim must be dismissed because Plaintiff has failed to allege that Defendants engaged in an "unlawful practice" within the meaning of the Act. *See* N.J.S.A. § 56:8-2; *Federico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007). The CFA defines "unlawful practice" as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . .

N.J.S.A. § 56:8-2. This broad definition of unlawful practice covers affirmative acts and knowing omissions, as well as regulatory violations. *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994). However, while a "breach of warranty or contract is unfair to the non-breaching party," a breach of warranty alone is not a per se unlawful practice. *Id.* at 462. A claim under the CFA requires more; it requires that a plaintiff allege "substantial aggravating circumstances." *Suber v. Chrysler Corp.*, 104 F.3d 578, 587 (3d Cir. 1997); *Cox*, 647 A.2d at 462. To meet this standard, a plaintiff must demonstrate that the business behavior in question "stand[s] outside the norm of reasonable business practice in that it will victimize the average consumer." *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 139 N.J. 392, 416 (1995).

The Complaint alleges two categories of unlawful practices: (1) misrepresentations, and (2) knowing omissions. (Compl., ¶¶ 37-38). The alleged misrepresentation is that Defendant represented in the form of an advertisement, in or around August 2011, that Plaintiff would receive "up to a 10% savings" over his local utility bill if he switched to Energy Plus. (Compl., ¶ 3). The alleged omission is Defendants' failure to disclose to the Plaintiff that the rates initially charged would rise in the future. (Compl., ¶ 21). According to the Plaintiff, Defendants'

11

actions—or inactions—in this regard have injured the Plaintiff by "artificially" inflating his energy bills. (Compl., ¶ 37).

"Whether a practice itself is unfair [for purposes of the New Jersey Consumer Fraud Act] is a classic jury question. However, where the claim is based on written statements, the court must make the legal determination of whether a practice can be said to be unfair in light of the written statements." *Hassler v. Sovereign Bank*, 374 Fed. Appx. 341, 344 (3d Cir. 2010) (citing *Rosenberg v. Wash. Mut. Bank, FA,* 369 N.J. Super. 456 (App. Div. 2004)). The terms of the parties' Agreement clearly provided for and explained the actions that Defendant(s) ultimately took—namely, the provision of gas and electric services at "variable" monthly rates.  The Agreement contained no guarantee that the monthly rate would, in fact, result in any percentage of savings over the local utility provider.  Thus, Plaintiff's claim that Defendants engaged in a "classic bait and switch scheme" whereby they lured potential customers in by making exaggerated claims of energy savings which ultimately proved "illusory," is undercut by the explicit language contained in the parties' Agreement that monthly rates would be "variable," based on a variety of external factors. *See* Ex. B. to Def. Br. ("**Rate:** For natural Gas – Variable price each month will reflect the cost of natural gas commodity, capacity, storage, balancing, transportation to the Delivery Point, agency services; plus all applicable taxes, fees, charges, costs, expenses and margins."). *See generally Rosenberg*, 369 N.J. Super. 456 (affirming dismissal of NJCFA claim because actions taken by bank were clearly set forth in disclosure documents).

Without more, such allegations do not rise to the level of "substantial aggravating circumstances" to constitute an unlawful practice worthy of protection under the New Jersey Consumer Fraud Act.   In other words, Plaintiffs' Complaint, as currently drafted, has not

"nudged" his NJCFA claim "across the line from conceivable to plausible." *Iqbal*, 129 S.Ct. at 1951 (citations omitted).   Defendants' motion to dismiss this claim is, therefore, granted. Plaintiff's NJCFA claim is dismissed without prejudice.

3.    *Breach of the Implied Covenant of Good Faith and Fair Dealing Claim*

Plaintiff's Complaint alleges that Defendants breached their implied duty to perform the parties' Agreement in good faith by failing to perform the contract in a fair manner. (Compl., ¶ 47).   The Complaint further alleges that this breach was done "arbitrarily" and/or "capriciously with the objective of preventing Plaintiff and the Class from receiving their reasonably expected fruits of the contract." (*Id.*).   Defendants move to dismiss this claim on the basis that Plaintiff has failed to allege any facts suggesting bad motive or intent.

Under New Jersey law, all contracts include an implied covenant that the parties to the contract will act in good faith. *See Sons of Thunder. Inc. v. Borden, Inc.*, 148 N.J. 396, 420 (1997). The covenant "mandates that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.' " *Seidenberg v. Summit Bank,* 348 N.J.Super. 243, 254 (App. Div. 2002) (quotations omitted). "A good faith performance doctrine may be said to permit the exercise of discretion for any purpose—including ordinary business purposes—reasonably within the contemplation of the parties.   It follows, then, that a contract thus would be breached by a failure to perform in good faith if a party uses its discretion for a reason outside the contemplated range—a reason beyond the risks assumed by the party claiming the breach." *Wilson v. Amerada Hess Corp.*, 168 N.J. 236 (2001).   Warning against overly broad constructions of the covenant of good faith, the New Jersey Supreme Court held that "an allegation of bad faith or unfair dealing should not be

13

permitted to be advanced in the abstract and absent an improper motive." *Brunswick Hills Racquet Club, Inc. v. Rte. 18 Shopping Ctr. Assoc.,* 182 N.J. 210, 231 (2005).

This claim must be dismissed because Plaintiff has alleged no facts whatsoever to support the theory that Defendants exercised their discretionary price-making authority in bad faith. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal,* 129 S.Ct. at 1949. Without such "factual content," the Court is unable to draw the reasonable inference that Defendants had a "bad motive" in exercising their discretionary price-making authority or that they otherwise acted "arbitrarily" or "capriciously"—as Plaintiff alleges—in carrying out their contractual obligations. *Id.; see generally Wilson,* 168 N.J. at 251 ("Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance."). Defendants' motion to dismiss this claim is therefore granted. Plaintiff's breach of the covenant of good faith and fair dealing claim is dismissed without prejudice. *See, e.g., Hassler,* 374 Fed. Appx. at 345 (dismissing breach of implied covenant of good faith and fair dealing claim where the "Complaint repeatedly asserts the unlawful nature of Sovereign's acts, but is silent on its intention in doing so—other than simply seeking profit.").

4.   *Breach of Contract Claim*

Plaintiff alleges that the parties entered into an Agreement and that Plaintiff was injured by virtue of Defendants' breach of said Agreement. To state a claim for breach of contract under New Jersey law, the plaintiff must allege facts demonstrating "(1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the [plaintiff] performed [his] own

contractual duties." *Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002). The plaintiff must also specifically identify the portions of the contract that were allegedly breached. *Skypala v. Mortgage Electronic Registration Systems, Inc.*, 655 F.Supp.2d 451, 459 (D.N.J. 2009) (dismissing breach of contract claim where "the Complaint does not identify the provisions Plaintiff asserts were breached"). Defendant moves to dismiss this claim on the basis that the Complaint contains no facts whatsoever to substantiate this claim. Based on the reasons that follow, this Court agrees that dismissal of this claim is warranted.

First, Plaintiff does not allege—much less with sufficient factual support—which particular Defendant (or Defendants) breached the parties' Agreement or even which particular provision of the parties' Agreement was breached. Moreover, Plaintiff's brief in opposition to Defendants' motion raises questions as to which particular agreement even forms the basis of this claim. For instance, Plaintiff argues—for the first time in his opposition brief—that he was never bound to the terms of the parties' Agreement, as defined above, because he never agreed to the terms contained therein; rather, Plaintiff argues—in opposition to Defendants' motion—that the only agreement by which the parties were bound was the August 2011 e-mail sent by Defendant and "accepted" by the Plaintiff. It is therefore unclear to the Court whether the alleged contract at issue in the breach of contract claim is the August 2011 e-mail or the Agreement, as defined above.

At the very least, it is clear that Plaintiff's breach of contract claim fails to meet the pleading requirements of Rule 8(a)(2) inasmuch as it fails to provide Defendants with sufficient notice of the legal and/or factual premise of this claim. Rule 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

15

Fed. R. Civ. P. 8(a)(2). Plaintiff's breach of contract claim, as currently pled, fails to meet this requirement and is therefore dismissed without prejudice.

5.    *Unjust Enrichment*

To state a claim for unjust enrichment under New Jersey law, a Plaintiff must establish that the "defendant received a benefit and that retention of that benefit without payment would be unjust" and that Plaintiff "expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554, 641 A.2d 519 (1994). Moreover, under New Jersey law, "recovery under unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the parties." *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir.1982).

Count Five of Plaintiff's Complaint alleges that Defendants received a benefit from Plaintiff in the form of money and that Plaintiff expected, in exchange, remuneration from Defendants in the form of "savings on future energy bills." (Compl., ¶¶ 53-54). It is further alleged that, "under the circumstances, the retention of the benefits by the Defendants is inequitable." (*Id.*).

As a preliminary matter, Plaintiff admits that his relationship with the Defendants was governed by a "valid contract." (Compl., ¶ 49). *See generally Van Orman,* 680 F.2d at 310. Although Plaintiff is permitted to plead in the alternative, Plaintiff's Complaint admits that, in exchange for the payments made by Plaintiff, Defendant did, in fact, deliver the gas and electric services contracted for and that Plaintiff did, in fact, realize a "nominal initial savings." (Compl., ¶¶ 3-4). Plaintiff's Complaint fails to allege facts that would support the theory that Plaintiff

16

expected any *additional* remuneration from Defendants at the time such payments were made or

that Defendants were otherwise enriched beyond their contractual rights. *See, e.g., VRG Corp.*,

641 A.2d at 526 (explaining that the "unjust enrichment doctrine requires that plaintiff show that

it expected remuneration from the defendant at the time it performed or conferred a benefit on

defendant"). Because Plaintiff received the gas and electric services he paid for, Plaintiff has

failed to a state a claim for unjust enrichment that is plausible on its face. *See Iqbal*, 129 S.Ct. at

1949; *see, e.g., In re Toshiba Am. HD DVD Marketing and Sales Practices Litig.*, No. 08–939,

2009 WL 2940081, at *14 (D.N.J. Sept.11, 2009) (dismissing unjust enrichment claim where

"Plaintiffs paid for HD DVD Players capable of playing HD DVDs and that is exactly what they

received."). Defendants' motion to dismiss this claim is, therefore, granted.  Plaintiff's unjust

enrichment claim is dismissed without prejudice.


6.     *Equitable Relief*

Count Six of Plaintiff's Complaint contains a "claim" for "equitable relief."  Plaintiff's

request for the remedy of equitable relief—to the extent it should even be considered an

affirmative "claim"—necessarily depends on the existence of a cognizable cause of action.

Having found pleading deficiencies in each cause of action asserted in Plaintiff's Complaint, this

Count of Plaintiff's Complaint must likewise be dismissed without prejudice.


7.     *Claims Asserted Against Defendant NRG Energy, Inc.*

Defendants also seek dismissal of all claims asserted against NRG "because there are no

factual allegations regarding NRG which could possibly give rise to any claim." (Def. Br. at 20).

In particular, Defendants maintain that the sole allegation concerning NRG is that it is the parent corporation of Energy Plus Holdings, LLC. *See* Compl., ¶ 10.

Although the Court has already dismissed each Count of Plaintiff's Complaint based on various pleading deficiencies, the Court agrees, as a general matter, that Plaintiff's Complaint is devoid of any factual allegations suggesting that NRG was itself responsible for the purportedly unlawful conduct allegedly engaged in by its subsidiary, Energy Plus. *See generally Pearson v. Component Technology Corp.*, 247 F.3d 471, 484 (3d Cir. 2001) ("[M]ere ownership of a subsidiary does not justify the imposition of liability on the parent."); *Verni ex rel. Burstein v. Harry M. Stevens, Inc.*, 387 N.J. Super. 160, 199 (App. Div. 2006); *Portfolio Financial Servicing Co. ex rel. Jacom Computer Servs., Inc. v. Sharemax.com, Inc.*, 334 F. Supp. 2d 620, 626 (D.N.J. 2004). Thus, to the extent Plaintiff chooses to amend any claims and to reassert any such claims against NRG, Plaintiff's Complaint must be amended to include facts that would allow the Court to draw the reasonable inference that Defendant NRG is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949.

## CONCLUSION

Based on the reasons set forth above, Counts One through Six of Plaintiff's Complaint are dismissed without prejudice. To the extent the deficiencies in Plaintiff's claims can be cured by way of amendment, Plaintiff is granted leave to amend such claims. Failure to do so, **on or before October 5, 2012**, will result in dismissal of such claims *with* prejudice.

An appropriate Order accompanies this Opinion.

DATED: September 4, 2012           s/ Jose L. Linares
                                   Jose L. Linares
                                   United States District Judge

18